Matthew M. Lavin, Esq. (*pro hac vice forthcoming*)
Wendy A. Mitchell, Esq. (CA SBN 158553)
NAPOLI SHKOLNIK, PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CIGNA BEHAVIORAL HEALTH, Inc. a Minnesota Corporation, and VIANT, INC., a Nevada corporation,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED FOR ALL ISSUES SO TRIABLE** |

# TABLE OF CONTENTS

**Table of Contents**                                                                 i
**Introductory Statement**                                                            1

*Usual, Customary, and Reasonable Rate*                                               2
*Intensive Outpatient Program Treatment*                                             4
*Illegal Health Claim Re-Pricing*                                                     5
*The Alliance of Cigna and Viant*                                                     7

**Jurisdiction and Venue**                                                           12
**The Parties**                                                                      13
**General Allegations**                                                              14

*The Defendants' Roles and Responsibilities with Respect to Claims*                 14
*UCR Reimbursement of IOP Providers*                                                 15
*Cigna and Viant's Improper Pricing*                                                 17
*Cigna and Viant's False Representations of UCR Reimbursement*                       19
*The Viant Grift*                                                                    21
*The Harm Caused to the Plaintiffs and Class*                                        23
*Out of Network Providers*                                                           24
*Plaintffs' Allegations*                                                             26

    Westwind Recovery                                            26
    PCI Westlake Centers                                         28
    Bridging the Gaps                                            30
    Summit Estate Outpatient                                     32

**Class Action Allegations**                                                         34

*The Plaintiff Class*                                                                34
***Rule 23(a)***                                                                     34

    Numerosity                                                   34
    Commonality                                                  34
    Typicality                                                   36
    Adequacy                                                     36

***Rule 23(b)***                                                                     37
*The Cigna-Viant Enterprise*                                                         38

**CAUSES OF ACTION**                                                                 41

***I.a. Violation of California Business & Professions Code §§ 17200 et seq.***     41

***II.  Intentional Misrepresentation/Fraudulent Inducement***
*On Behalf Plaintiffs and the Class Against Cigna and Viant*                         45

***III. Negligent Misrepresentation***
*On Behalf Plaintiffs and the Class Against Cigna and Viant*                         47

***IV. Civil Conspiracy***
*On Behalf Plaintiffs and the Class Against Cigna and Viant*                         48

***V.  Breach of Oral and/or Implied Contract***
*On Behalf Plaintiffs and the Class Against Cigna*                                   49

i

*VI. Promissory Estoppel*
  *On Behalf Plaintiffs and the Class Against Cigna and Viant*                 51

*VII. Violations of RICO: 18 U.S.C. § 1962(c)*
  *On Behalf Plaintiffs and the Class Against Cigna and Viant*                 52

*VIII. Violations of Section One of the Sherman Act*
  *On Behalf Plaintiffs and the Class Against Cigna and Viant*                 58

**Jury Trial Demand**                                                         60

1

## CLASS ACTION COMPLAINT

Plaintiffs Pacific Recovery Solutions d/b/a Westwind Recovery, Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers, Bridging the Gaps, Inc., Summit Estate Inc. d/b/a Summit Estate Outpatient, bring this action on behalf of themselves and all other similarly situated out-of-network behavioral health providers (collectively, the "Plaintiffs") that provide Intensive Outpatient Program treatment ("IOP") in the United States, against defendants Cigna Behavioral Health, Inc., ("Cigna") and Viant, Inc. ("Viant") and allege the following:

## INTRODUCTORY STATEMENT

1.      Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery, Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers, Bridging the Gaps, Inc., Summit Estate Inc. d/b/a Summit Estate Outpatient, (collectively "Plaintiffs") file this class action on behalf of themselves and all those similarly situated out-of-network behavioral health providers that provide IOP treatment services in the United States (the "Plaintiff Class") and whose claims have been systematically underpriced and/or underpaid by Cigna and/or Viant.

2.      Each of the Plaintiffs is a behavioral healthcare provider that treats patients suffering from mental health and/or substance use disorder. Each of the Plaintiffs is a duly licensed, accredited provider in their respective state of residence. For every claim at issue, the patients possessed active policies of insurance that United sold, underwrote, and/or administered. Plaintiffs provided "Intensive Outpatient Program" ("IOP") treatment services to the patients. IOP services are widely recognized an essential, critical component of effective treatment of mental health and substance use disorder treatment.

3.      Prior to treatment, each of the Plaintiffs confirmed with United that the patient had active coverage and benefits for out of network IOP treatment services and that the claims would be paid at a specified rate. For all the claims at issue here, United represented that the claims would be paid at a percentage of the Usual, Customary, and Reasonable rate ("UCR" rate). In reliance upon that representation, Plaintiffs agreed to treat United's insureds and timely submitted accurate bills.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL BACKGROUND

### Usual, Customary, and Reasonable Rate

4.      UCR rates are a fixture of the managed care payment system in the United States. When doctors, hospitals or other healthcare providers are out of network and do not have contracts with health insurance companies, the insurers must decide how much to pay. Generally, private insurers claim to reimburse out-of-network providers at UCR rates.

5.      The United States' Centers for Medicare Services (CMS), defines UCR as: "[t]he amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service."[1]

6.      Insurance policies do not always cover services for out-of-network, non-contracting providers. Premiums for insurance plans that do provide out-of-network coverage, called Preferred Provider Organization (PPO) plans, are substantially more expensive than Health Maintenance Organization (HMO") or Point of Service (POS) plans that only reimburse in-network or contracting providers.

7.      Consumers choose to pay higher premiums for PPO plans because they value the freedom to choose their providers.

8.      Most commercial insurance companies claim their PPO policies will pay out of network providers UCR rates for covered services.

9.      Cigna provides two standard methodologies by which it claims to calculate its applicable UCR rates. defines as the Maximum Reimbursable Charge ("MRC"). Cigna either MRC I, or MRC II.

10.     Cigna describes MRC I reimbursement calculations as:

> [A] data base compiled by FAIR Health, Inc. (an independent non-profit company) is used to determine the billed charges made by health care professionals or facilities in the same geographic area for the same procedure codes using data. The maximum reimbursable amount is then determined by applying a percentile (typically the 70th or 80th percentile) of billed charges, based upon the FAIR Health, Inc. data. For example, if

---

[1] Healthcare.gov "Usual Customary or Reasonable" https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (accessed March 20, 2020)

the plan sponsor has selected the 80th percentile, then any portion of a charge that is in excess of the 80th percentile of charges billed for the particular service in the same relative geographic area (as determined using the FAIR Health, Inc. data) will not be considered in determining reimbursement and the patient will be fully responsible for such excess.[2]

11.     Cigna describes MRC II reimbursement calculations as:

a schedule of charges established using a methodology similar to that used by Medicare to determine allowable fees for services within a geographic market or at a particular facility. The schedule amount is then multiplied by a percentage (110%, 150% or 200%) selected by the plan sponsor to produce the MRC. In the limited situations where a Medicare-based amount is not available (e.g., a certain type of health care professional or procedure is not covered by Medicare or charges relate to covered services for which Medicare has not established a reimbursement rate), the MRC is determined based on the lesser of: the health care professional or facility's normal charge for a similar service or supply; or the MRC Option I methodology based on the 80th percentile of billed charges.[3]

12.     For each of the claims at issue here Cigna reported that it would reimburse patients and/or their assignees at either UCR rates under the MRC I or MRC II calculation methodologies, or based on rates charged by similar providers in a similar geographic area. In fact, Cigna relied on none of these methods. In the case of most mental health and substance use disorder IOP treatment, which does not have a correlating Medicare reimbursement rate, MRC I and MRC II pricing methodology are functionally the same.  For ease of reference, this complaint uses the term "UCR" to include both of Cigna's above reimbursement methodologies, because MRCI and MRCII are merely methods by which Cigna ultimately calculates UCR.  This complaint alleges that Cigna used neither purported methodology to calculate rates for any of the underlying patient claims at issue here.

13.     Insureds and beneficiaries depend on insurers' good faith calculation of UCR rates, because they are responsible for the difference between what their healthcare provider

---

[2] https://my.cigna.com/public/legal_disclaimer.html (last visited March 8, 2020)
[3] https://static.cigna.com/assets/chcp/resourceLibrary/clinicalReimbursementPayment/medicalClinicalReimburseO utOfNetwork.html (last visited March 9, 2020)

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

charges and what their insurance company pays for services. Where, as here, UCR calculation methodology leads to unreasonably low reimbursements to providers, they bear the expense of insurers' bad faith calculations.

*Intensive Outpatient Program Treatment*

14.     Intensive Outpatient Programs ("IOPs") are an important tool in traditional behavioral health treatment. IOP is a non-residential, semi-structured level of care that is typically rendered pursuant to a schedule that allows patients to reintegrate into society by returning to work, school, and other functions of daily life. Often, IOP programs are designed to be a support system for patients reintegrating into society from higher, more structured levels of care, such as residential inpatient treatment and partial hospitalization programs.

15.     Cigna describes Intensive Outpatient Program (IOP) services as those rendered in a structured treatment that teaches how to manage stress and cope with emotional and behavioral issue, including include group, individual, and family therapy. According to Cigna, IOP treatment involves frequent visits (usually three to five days per week), takes about three to four hours of treatment per day, and often lasts four to six weeks. Cigna states that IOP treatment is structured so patients can continue with their normal daily routines and provides support from the program and social support from other people in the program.[4]

16.     The American Society of Addiction Medicine ("ASAM"), classifies Intensive Outpatient Programs as ASAM Level of Care 2.1. Services may be delivered in any appropriate setting that meets state licensure or certification requirements. According to ASAM, IOP care is rendered by a team of appropriately credentialed addiction treatment professionals including counselors, psychologists, social workers, addiction-credentialed physicians, and program staff, many of whom have cross-training to aid in interpreting mental disorders and deliver intensive outpatient services. Services are typically offered for at least 9 hours per week. The goal of IOP treatment is to provide a support system including medical, psychological, psychiatric, laboratory, and toxicology. Elements of IOP treatment include counseling, educational groups,

---

[4] *See:* Cigna.com "Levels of Mental Health Care" https://www.cigna.com/individuals-families/health-wellness/mental-health-care, (Last accessed March 19, 2020);

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

occupational and recreational therapy, psychotherapy, Medication Assisted Treatment ("MAT"), motivational interviewing, enhancement and engagement strategies, family therapy, or other skilled treatment services.[5]

17.     The ASAM guidelines are widely recognized by addiction treatment professionals and courts as representative of industry best practices.[6] Plaintiffs render care pursuant to ASAM standards which include and surpass those required by Cigna.

*Illegal Health Claim Re-Pricing*

18.     Despite promising to pay rates based upon UCR, Cigna did not pay UCR amounts for any of the patient claims at issue in this litigation. Instead, Cigna engaged Viant, a third-party "repricer", to "negotiate" drastically reduced reimbursements. While Cigna issued, underwrote, and/or administered every health insurance plan at issue in the present litigation, Viant determined the reimbursement rate for every underpaid claim in the present litigation, and that rate was not derived from a calculation of UCR.

19.     Cigna then paid the claims at the reduced Viant amount. This reduced amount was not agreed to by any Plaintiff and does not reflect the UCR. Viant reduced the payment rates so much below the UCR rate that patients were often liable for more than ninety percent of the cost of their care.

20.     Cigna and Viant colluded to illegally withhold these out-of-network benefits. The difference between the amount Cigna should have paid and the amount that it did pay often ran into the tens, and sometimes hundreds, of thousands of dollars *per patient.* These are amounts that Cigna unjustly retained and used to pay a kick-back to Viant for its role in the underpayment enterprise. Consequently, Cigna and Viant unjustly retains tens of millions, or more despite Cigna's public commitment to "make honest commitments and consistently honor those commitments… [d]eliver on [their] promises... [to] have the courage to acknowledge mistakes and do whatever is needed to address them.[7]"

---

[5] *See:* Medicaid Innovation Accelerator Program, "Overview of Substance Use Disorder (SUD) Care Clinical Guidelines: A Resource for States Developing SUD Delivery System Reforms," pp 7, 8, April 2017;

[6]

[7] https://www.unitedhealthgroup.com/about/mission-values.html (last visited March 12, 2020)

21.     Every claim at issue in this litigation is for IOP behavioral health treatment, including mental health and/or substance use disorder services, that Cigna was required to pay at the UCR rate. Every patient policy provided coverage for out-of-network benefits for mental health and substance use disorder treatment at the UCR rate. All the claims were sent to Viant by Cigna for repricing instead of payment at the UCR rate. Every claim was subsequently arbitrarily, and capriciously underpriced by Viant using an improper and illegal methodology. Cigna provided financial incentives to Viant that encouraged the illegal and improper methodology and then underpaid the claims based on the illegal and improper methodology.

22.     This occurred because, after receiving treatment, Plaintiffs' claims for their patients' treatment were submitted to Cigna for payment according to the out of network rate as communicated to Plaintiffs in an initial Verification of Benefits ("VOB") call. It was communicated that Plaintiffs would be reimbursed at the UCR. Generally, Cigna describes UCR rates as "based on what other health care professionals in the relevant geographic areas or regions charge for their services.[8]"

23.     Cigna, however, does not use its own purported methodology to calculate reimbursement rates. Instead of paying UCR, Cigna contracted with Viant to "negotiate" reimbursement rates with providers. For years, Cigna and Viant have systematically failed to properly price the claims according to UCR and have systematically concealed this failure through misrepresentations about pricing and payment methods to their members.

24.     Essentially, United is attempting to recreate the Ingenix grift that resulted in the largest settlements the healthcare industry had ever seen. In that scam, insurers like Cigna contracted with Ingenix, using their systems and databases, to determine reimbursement rates that were found to be well below UCR and used deeply flawed methodologies. Andrew Cuomo, then New York's attorney general and now its governor, said of the Ingenix databases, "[t]he lack of accuracy, transparency, and independence surrounding Cigna's process for setting a 'reasonable and customary rate' is astounding… the inherent problems with the data it is using

---

[8] https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits (last visited March 9, 2020)

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

clearly demonstrate a broken reimbursement system designed to rip off patients and steer them towards in-network-doctors that cost the insurer less money.[9]"

25.     The Ingenix litigation resulted in a $350 million-dollar class settlement agreement for underpaid claims. It also required insurers to finance an objective database of reimbursements upon which patients and insurers nationally could rely on. The settlement required the insurance companies to underwrite the new database, the "Fair Health" database, with $95 million dollars, it did not require them to use it. Instead of using the FAIR health database for the IOP treatment services at issue here, Cigna replaced Ingenix with Viant.

26.     This drive is a direct result of Cigna's "cost containment" policies that have been in place since at least 2005. In or around 2005, Payment Accuracy Solutions, a division of Ingenix, secretly began targeting healthcare providers solely because they were out of network and had charges deemed to be too high by Cigna.

27.     After the Ingenix litigation, Cigna could no longer cheat out of network providers out of payments for claims as it had been doing and found a way to achieve indirectly what it could no longer do directly. It found Viant, a third party repricer.

*The Alliance of Cigna and Viant*

28.     Cigna is required to price and pay claims for mental health and substance abuse disorder treatment services in parity with medical services under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act"). The Final Rules adopted for the Parity Act state "[t]he Departments did not intend that plans and issuers could exclude intermediate levels of care covered under the plan from MHPAEA's parity requirements…Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications." 78 FR 68240 (November 13, 2013). The intensive outpatient program (IOP) treatment services at issue here

---

[9] New York State Office of the Attorney General, *Cuomo Announces Industry-wide Investigation in Health Insurers; Fraudulent Reimbursement Scheme*, February 13, 2008: https://ag.ny.gov/press-release/2008/cuomo-announces-industry-wide-investigation-health-insurers-fraudulent (last visited March 6, 2020).

are "intermediate services" under the Rule. *Id.* The MHPAEA's implementing regulations, conspicuously, do not permit plans to classify treatment settings strictly as hospital or non-hospital, in recognition of the existence of intermediate levels of care such as IOP.

29.     Here, Plaintiffs and Class members treated tens of thousands of patients suffering from addiction and mental illness with IOP treatment services. Each and every claim at issue in this litigation has not been paid in parity with medical services. Cigna and Viant refuse to even disclose what intermediate medical/surgical services equate to IOP for purposes of parity.

30.     For every claim at issue in this litigation, prior to accepting a patient for treatment, the Plaintiffs and Class members contacted Cigna at the number on the back of the members' health insurance cards, verified the patients' out-of-network benefits, asked and were told that these benefits were paid at UCR rates, and either obtained prior authorization or were told by Cigna that no prior authorization was required before rendering IOP services.

31.     Plaintiffs and the Class provided services based on these representations. Plaintiffs and the Class, as out of network facilities, relied on Cigna's representations of coverage in admitting patients. Cigna is now bound to honor these representations. Cigna has not done so. Cigna, through collusion with Viant, has violated these responsibilities and duties through the systematic underpricing of claims, and the systematic cover-up of their collusion.

32.     All of these claims are *payment* disputes; none of these claims are *coverage* disputes.

33.     Cigna is the largest health insurer in the country, and each year processes hundreds of thousands, or more, of claims. Cigna employs Viant to "reprice" claims from providers who are "out-of-network."

34.     While not every claim submitted by a patient is repriced by Viant, there is a disturbing increase in Cigna's use of Viant to reprice IOP claims using Viant across the country at rates that are a fraction of those that Cigna had previously been paying for out-of-network IOP services.

35.     Every claim at issue here was sent by Cigna to Viant for Viant, a third party, to reprice at a substantially lower rate than Cigna had been paying. No Plaintiff has an agreement

of any sort with Viant that permits Viant to determine their reimbursement rate.

36.     During the VOB call, none of the Plaintiffs were told by Cigna that their claims could be subject to third-party pricing by Viant. Plaintiffs relied on this representation in choosing to admit their patients.

37.     The IOP pricing and payment rates that Viant "offered" to Plaintiffs is no more than a con. Cigna directs the pricing that Viant "offers" as a "negotiation" for payment and states to both patients and providers that the offered amount is based on UCR rates.

38.     In reality, Cigna has hidden "cost containment" policies that underlie its contracts with Viant and provide financial incentives for Viant to "negotiate" at rates well below the UCR rate.

39.     The rates that Viant offers in its "negotiations" for IOP treatment are determined with no relationship to the UCR rate. For instance, there is no reimbursement variation based on provider location. During the "negotiation," Viant claims that the rate it offers is based on the UCR for the provider's geographic location; however, it beggars belief that the UCR for Silicon Valley, CA is the same as it is, for example, in Altoona, PA and Paris, TX.

40.     While purporting to consider geographic area, Viant is, in fact, "negotiating" at the essentially the same flat, low rate across the entire country. Despite having access to a wealth of charge data for hundreds of thousands, or more, of claims, Cigna and Viant do not price and pay IOP claims according to legitimate UCR calculation methodologies.

41.     Instead, Cigna has made the financial decision that claims are to be paid at levels designed to drive out-of-network providers out of business. Cigna does this because out-of-network providers cost Cigna more.

42.     Viant is employed by Cigna, not the Plaintiffs, the Class, or any individual provider receiving IOP services. They receive financial incentives that are essentially kick-backs for every dollar they "save" Cigna from paying on IOP claims.

43.     Cigna does not transmit plan terms or language to Viant when it has Viant reprice out-of-network claims. Cigna's contract with Viant is independent of individual members' plans and blind and ignorant as to any individual plan or plan terms.

44.     Viant has no defense or excuse for claiming to "negotiate" on behalf of the Plaintiffs and the Class *when it has no knowledge of the actual plans' terms.* Cigna, the drafter of the plans, chooses not to send the plan terms to Viant.

45.     Cigna never told the Plaintiffs or their patients that their claims were subject to third party repricing until *after* they entered into a binding contract in reliance on Cigna's representations during the VOB call. Cigna and Viant's caused underpayments to Plaintiffs that often amounted to tens of thousands of dollars, or more, *per patient.*

46.     Viant is the face of these "negotiations" and the tool for Cigna's underpayment. When patients or providers contact Viant seeking UCR, Viant claims it *has* offered UCR. It has not offered UCR, it has offered an amount it represents as UCR that is actually the product of a secret, proprietary database and/or pricing method.

47.     Viant refuses to provide any transparency into the methodology used to arrive at their UCR. This refusal is because the rates are not based on UCR.

48.     Upon information and belief, Viant receives a base rate and maximum rate from Cigna for IOP treatment when Cigna transfers a claim to Viant. This base rate is well below UCR and is applied, with minimal variation, nationwide. The maximum rate is the small amount that Cigna permits Viant to 'negotiate' up to.

49.     Upon information and belief, Viant does not receive any plan terms or language when Cigna transmits a claim to it for repricing.

50.     Upon information and belief, Viant earns its profits from Cigna by paying no more than the initial rate or as little as possible over it because if Viant were 'settle' at the 'up to' amount, it would earn nothing for that claim. Cigna then uses Viant's 'negotiated' rate to underpay for treatment, and Viant gets its cut of the graft.

51.     Cigna and Viant both know that they are not offering and/or paying the UCR rates as required under the terms of Patients' insurance policies. Cigna and Viant are aware that the costs of underpayment are borne by the very patients from whom Cigna collects inflated premiums.

52.     Viant, through written and oral correspondence, represents to IOP providers that

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

it has authority to negotiate on behalf of the Patients. When Viant does this, it has no knowledge of the patients' plan terms or language and has no knowledge of the agreement between the provider and the patient.

53.     Despite having no access to plan terms, Viant represents to providers that it has authority to negotiate with them based on plan terms. Further, the providers have no way to contest Viant's assertions with Cigna as Cigna no longer handles or processes the claim once it has sent the claim to Viant.

54.     While the exact number of patients who have relapsed and providers who have been forced out of business as a result of these practices is unknown, a substantial number of lives and livelihoods have been lost in furtherance of corporate profits and executive bonuses.

55.     Cigna and Viant both know that they are not offering and/or paying the UCR as required and that the Plaintiffs and Class are being underpaid for IOP services. Cigna and Viant have both made false representations regarding UCR and payment of claims through the United States mail and wire services to the Plaintiffs, the Class, and the patients.

56.     United and Viant have fraudulently represented that they accurately and appropriately offered and paid the UCR as the actual amount owed by them for the IOP services provided.

57.     Viant, through written and oral correspondence, represented to Plaintiffs that it was authorized to negotiate on the patient's behalf. When Viant does this, it has no knowledge of the patient's plan's terms or language, and has no knowledge of the agreement between the provider and the patient. Despite having none of this information, Viant still represented to the Plaintiffs that it had authority to negotiate with them. Further, the Plaintiffs had no way to contest Viant's assertions with Cigna as Cigna no longer handled or processed the claim once it had sent the claim to Viant.

58.     The contractual arrangement Viant has is with Cigna and Viant is paid for every dollar it "saves" Cigna, even if those "saved" dollars are at the expense of treatment providers.

59.     Cigna and Viant each represent to the provider that the other is responsible for reimbursement rates, claiming that there is some mythical, proprietary database that determines

11

the UCR for the IOP claims. These claims are represented as being in "parity" with their corresponding medical/surgical claims. However, no information regarding this database is ever provided, and the "parity" medical/surgical procedures are never disclosed. There is a reason Cigna and Viant refuse to discuss details of the database: it does not exist. In fact, Cigna and Viant use references to the "database" as a smokescreen to hide the fact that the sole consideration in claims pricing is profit.

60.     Cigna's unreasonably low payments leave patients, who are recovering drug addicts and mentally ill persons, with liability for the cost of care the reasonably believe is covered. Plaintiffs make every effort to recover unpaid amounts, first from Cigna, then from patients. As a result of Cigna and Viant's collusion, however, the Plaintiffs and those similarly situated are left bearing the cost of the care they provide. Meanwhile, Cigna and Viant reap the benefits of shirking their responsibilities to pay fair reimbursements.

61.     IOP providers across the country, including the named Plaintiffs, have been harmed by the Cigna's failure to properly pay for IOP services that were provided to Cigna's members.

## JURISDICTION AND VENUE

62.     Plaintiffs are residents of diverse jurisdictions, and the amount in controversy exceeds $5,000,000. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action where at least one member of a class of plaintiffs is a citizen of a State different from any defendant.

63.     The claims asserted involve matters of interstate and national interest, and the claims at issue arise under Federal Law.

64.     This court has personal jurisdiction over Defendants because Cigna and/or its subsidiaries maintain offices and transact business across the State of California, including at corporate offices within this jurisdiction. Cigna transacts business in California in such volume that it is at home in this jurisdiction, and subject to the personal jurisdiction of this court.

65.     This court has personal jurisdiction over Viant because Viant and/or its

subsidiaries transact business so frequently and with such regularity in Northern California that they avail themselves to the protections of California's laws, are at home in this jurisdiction, and subject to the personal jurisdiction of this court.

66.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), and 18 U.S.C. § 1965, because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and because one or more of the Defendants conducts a substantial amount of business in this Judicial District.

## THE PARTIES

67.    Plaintiff, Pacific Recovery Solutions d/b/a Westwind Recovery ("Westwind"), is a California Limited Liability Company and a duly licensed behavioral health treatment provider with a primary place of business at 7966 Beverly Blvd Suite 200, Los Angeles, CA 90048.

68.    Plaintiff, Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers ("PCI Westlake"), is a California corporation and a duly licensed behavioral health treatment provider with a primary place of business 37794 La Baya Dr. # 201, Westlake Village, CA 91362.

69.    Plaintiff Bridging the Gaps, Inc. ("BTG"), is Virginia corporation and a duly licensed behavioral health treatment provider with a primary place of business at 31 South Braddock Street, Winchester, VA 22601.

70.    Plaintiff, Summit Estate Inc. d/b/a Summit Estate Outpatient ("Summit"), is a California corporation and duly licensed behavioral health treatment provider with a primary place of business at 20640 3rd Street suite 350, Saratoga, CA 95070.

71.    Defendant Cigna is a Minnesota corporation with its principal place of business at 11095 Viking Drive, Suite 350, Eden Prairie, MN 55344.

72.    Cigna manages behavioral health services for Cigna Corporation. It is responsible for administration and payment of claims for behavioral services covered under health plans Cigna underwrites and administers.

73.    Defendant Viant is a Nevada corporation with its principle place of business located at 535 East Diehl Road Suite 100 Naperville, IL 60563.

13

74.     Defendant Viant is a wholly owned subsidiary of Viant Holdings, Inc. Viant Holdings, Inc. is a wholly owned subsidiary Multiplan, Inc. Multiplan Inc., is a New York Corporation with its principle place of business located at 115 5th Avenue, New York, NY 10003.

75.     The true names and capacities of the defendants sued herein as Does are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such defendants by such fictitious names. Plaintiffs are informed and believe that the Does are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiffs for the services they have provided, as alleged herein. The Complaint will be amended to allege the Does' true names and capacities when they have been ascertained.

76.     Plaintiffs are unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants Does 1 through 25, inclusive, and therefore sues such defendants by fictitious names. Patients will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

## GENERAL ALLEGATIONS

*The Defendants' Roles and Responsibilities with Respect to Claims*

77.     United is one of the nation's largest health insurers. As a health insurer, Cigna, is responsible for administering and issuing payments for healthcare services provided to their members.

78.     Every claim at issue in this litigation has been underpaid by Cigna and overpaid by the Plaintiffs and the Class.

79.     None of the claims have been denied. As none of the claims have been denied, the issue presented here is one of *payment* and not one of *coverage.*

80.     Every plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate. The UCR for IOP services should reflect the prevailing charge amongst similar providers in a similar geographic area.

81.     Every plan at issue in this litigation that requires the UCR rate to reflect the prevailing charge among similar providers in a similar geographic area.

14

82.     Cigna has contracted with Viant without receiving the approval or consent of any patient or provider. Cigna contracts with Viant solely to lower the amount that Cigna pays for out-of-network IOP claims.

83.     No Plaintiff or class member is a party to this agreement or privy to its terms.

84.     The payment owed for each claim at issue is the objectively calculated UCR rate for IOP services in the relevant geographic area, plus interest.

85.     An agreement to pay and accept payment based upon UCR is established to between Plaintiffs, the Class, and Cigna prior to any services being rendered to the patients.

86.     Cigna has contracted with Viant for the purpose of underpaying claims.

87.     Viant does not have a contract or agreement with any Plaintiff or Class member relating to the payment of IOP claims for Cigna.

88.     Viant does not have any independent agreement or contract with any patient that authorizes Viant to negotiate on their behalf, interfere with the contract between a patient and a provider, and that would allow Viant incur a balance bill on the patient's behalf.

89.     Cigna and Viant have never made the terms of their agreement known to any Plaintiff or Class member.

90.     Upon information and belief, Cigna pays Viant for every dollar that it "saves" Cigna.

91.     Upon information and belief, Viant's representatives that "negotiate" with providers receive compensation that is directly tied to the amount of money that is 'saved' for each claim.

92.     Cigna does not and has not disclosed its relationship with Viant to any Plaintiff or Class member prior to a patient receiving IOP services.

*UCR Reimbursement of IOP Providers*

93.     In this litigation, every patients' plan covered the treatment they received. The issue is of *underpayment* of benefits, not *coverage* of claims for benefits.

94.     Plaintiffs and the Class do not have contractual relationships with Cigna. They are out of network providers.

95.     Plans which offer coverage for out-of-network services, including IOP services, are marketed to prospective members and groups as benefiting them with the freedom and flexibility to choose their health care providers regardless of network status. These plans charge members higher premiums or contributions in exchange for this purported freedom of choice.

96.     Cigna has received out-of-network IOP claims for many years, providing a wealth of data more than sufficient to make a reasonably informed determination of UCR rates.

97.     Cigna purports to use standardized, empirically determined, pricing methodologies to arrive at UCR amounts. Yet, Cigna ignores this data and uses Viant to set arbitrary, capricious and unreasonably low reimbursement rates. This practice is even more baffling given the legacy of the Ingenix litigation. Cigna employs Viant to deceive patients and providers and underpay claims.

98.     Similarly, Viant receives the billed charges amount from Cigna, other insurers, and/or the Plaintiffs and the Class, and has done so for many years, acquiring a wealth of charge data that would allow it to see the prevailing rates of and charges for IOP services within the same geographical market at around the same time.

99.     For every claim at issue in this litigation, Cigna has represented to the Plaintiffs and the Class that the patients' IOP treatment will be paid at the UCR. This representation was a lie.

100.    For decades, commercial payors, including Cigna, have purported to reimburse for out-of-network services according to the UCR rates. Reimbursement at UCR rates is so well-established that some states, including California, require certain health plans to reimburse out-of-network services at rates using criteria that parallel the industry-standard for determining UCR. *See, e.g.*, 28 C.C.R. § 1300.71(a)(3)(B) (referring to prevailing provider rates **charged** in the general geographic area in which the services were rendered); Fla. Stat. Ann. § 641.513(5) (referring to "usual and customary provider **charges**" for similar services in the community where the services were provided). Because the industry standard traditionally has been for reimbursement according to the UCR, out-of-network providers and their patients reasonably expect claims to be reimbursed based on UCR.

16

101.    This understanding and usage was further confirmed during the initial VOB and authorization calls between Plaintiffs and Cigna.

*Cigna and Viant's Improper Pricing*

102.    Cigna has contracted with Viant to systematically underpay IOP claims at rates well below the UCR.

103.    Cigna and Viant systematically concealed and continue to conceal their underpayment scheme, including through material misrepresentations, omissions, and misleading statements about pricing and payment methods.

104.    Despite both Cigna's and Viant's access to a wealth of provider charge data, Cigna and Viant arrive at reimbursement rates based solely on arbitrary, profit-oriented rate setting practices.

105.    Upon information and belief, Cigna provides Viant with a benchmark maximum reimbursement rate. Each day, Viant representatives are tasked with sealing a negotiation for the lowest possible percentage of that rate. The lowest rate achieved is then shared amongst all Viant representatives, to act as the replacement benchmark. Viant's compensation is a function of how little they agree to pay as a percentage of Cigna's provide ceiling rate.

106.    This arbitrary, competitive underpricing bears no resemblance to the methods of claims pricing that Cigna claims to use. Instead, Cigna's and Viant's scheme deprives plan participants of meaningful insurance coverage for the IOP services received, in direct contravention of the terms of their insurance plans.

107.    It is arbitrary, capricious, and improper for Cigna and Viant to use any method for establishing reimbursement rates other than the UCR methodologies specified in Plaintiffs' plans.

108.    Cigna has a duty to pay Plaintiffs' claims at a legitimate UCR rate.

109.    Despite this duty, for every claim at issue, when Cigna receives the claim requesting payment, Cigna sends the claim to Viant via an Electronic Data Interchange ("EDI") instead of issuing payment as is its duty under the terms of the policy.

110.    The EDI provides an automated transfer of data in a specific format between

17

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

Cigna and Viant that Cigna sends to Viant for third party repricing and negotiations.

111.    Upon information and belief, Viant receives no individual plan terms or language in the EDI process or at any other time from Cigna.

112.    Upon information and belief, Cigna sends a repriced rate in the EDI that represents the maximum that Viant is authorized to negotiate *up to* in the repricing and negotiation process.

113.    The rate is not revealed or told by Cigna to Patients, providers, or plan sponsors.

114.    Upon information and belief, after receiving the EDI, Viant sends a proposed payment for claims it receives to the provider who rendered the services that are the subject of the claim.

115.    This was the start of Viant's "negotiation" with Plaintiffs.

116.    Viant, in its correspondence, reports that the payment offer is based on UCR rates, plan terms, or other independent bases. This representation, as Viant and Cigna well know, is false.

117.    Upon information and belief, the payment offer, as derived from Viant's "facility review program" is actually the lowest payment amount that a Viant representative convinced a provider accept the previous day.

118.    Upon information and belief, when Viant made their "offers" to Plaintiffs, they also sent a "patient advocacy letter" ("PAD" letter) to the patient, claiming to represent the patient in a negotiation to reduce the billed amount.

119.    This PAD letter is not treated by either Cigna or Viant as an EOB and does not comply with the requirements of an EOB under ERISA and its implementing legislation.

120.    When Plaintiffs or patients attempted to contact Cigna to dispute or challenge Viant's unreasonable reimbursement rates, Cigna refused to further handle or process the claim.

121.    Neither Viant nor Cigna treated these claims, disputes of underpayment, as "appeals" of an adverse benefit determination.

122.    Upon information and belief, Viant's contract with Cigna provides a small amount that Viant is permitted to offer over and above the initial underpayment (the "*up to*");

however, Viant's compensation is directly tied to the amount *below* this authorized amount that they are able to compel provider to accept in satisfaction of services the patients received.

123.    Upon information and belief, Viant receives *no* compensation from Cigna for negotiations that settle at the "*up to*" amount.

124.    Neither Viant nor Cigna will affirmatively disclose how the rate that they offer to pay is determined, claiming various, unsupported and undocumented privileges.

125.    Viant although in contractual privity with Cigna, can point to no document that permits it to "negotiate" *on behalf of the Patients* and to interfere with the contract between the Plaintiffs and Cigna and the contract between Plaintiffs and their patients.

126.    Viant cannot do so because it does not possess authority from the patients to represent them.

127.    It is clear that neither Cigna or Viant's methods are based on a review of the prevailing or competitive charges for similar healthcare services by similar types of providers within the same geographical area at the time.

128.    It is arbitrary, capricious, improper, and a breach of plan terms for Cigna to pay reimbursement rates other than a true UCR arrived at under a fair methodology.

*Cigna and Viant's False Representations of UCR Reimbursement*

129.    Provider Plaintiffs and the Class have provided out-of-network IOP treatment services to patients with insurance plans administered by Cigna all of which have out-of-network benefits that require Cigna to pay claims at the UCR.

130.    Prior to providing any treatment services to patients, the Plaintiffs and the Class contacted Cigna to verify benefits, verify that benefits will be paid at UCR rates, and obtain any authorizations necessary to provide treatment.

131.    Plaintiffs and the Class were not in possession of any individual patient's policy when these calls were made and relied upon the representations of Cigna's agents in their decision to provide treatment.

132.    The harms being inflicted on Plaintiffs by Cigna and Viant are typical of those being suffered by members of the Class.

133.    Patients treated by the Plaintiffs and the Class expected their health plans to accurately and appropriately pay for their treatment based on UCR rates.

134.    Prior to admitting any patient, or providing any service, Plaintiffs contacted Cigna via the number on the back of the prospective patient's insurance card.

135.    On that phone call, Plaintiffs verified that active coverage, out of network benefits, and that claims will be reimbursed at UCR rates.

136.    Plaintiffs have no additional information to rely on when making admissions decisions. They are wholly dependent upon accurate representations from Cigna.

137.    In response to Plaintiffs inquiries about benefits and payment for out-of-network IOP services, Cigna, in each claim at issue here, verified the member's out-of-network benefits and stated that the benefits were paid at UCR rates.

138.    In reliance on Cigna's misrepresentations, Plaintiffs admitted Cigna's insureds for treatment, provided treatment, and timely submitted bills.

139.    At all relevant times, Plaintiffs submitted the appropriate claim forms for payment to Cigna. The claim forms include information such as the type of service, the coding for the service, the fact that Plaintiffs are assignees of the member benefits, and other information by which the claim can be processed and paid. The claim form also includes Plaintiffs' billed charges. These bills are submitted on industry standard forms, commonly known as Uniform Billing ("UB") forms.

140.    For Alcohol and other substance abuse IOPs, the HCPCS 2016 code is H0015 described as "Alcohol and/or drug services; intensive outpatient (treatment program that operates at least 3 hours/day and at least 3 days/week and is based on an individualized treatment plan), including assessment, counseling; crisis intervention, and activity therapies or education." One unit of service equals three hours of therapy in a single day, and appropriate clinical documentation is usually required. The four-digit revenue code 0906 for intensive outpatient services, chemical dependency is used for billing purposes.

141.    For mental health IOPs, the HCPCS 2016 code for mental health IOP sessions is S9480, described as "Intensive outpatient psychiatric services, per diem." For this service, a

billing code of 0905 for intensive outpatient psychiatric services is used.

142.   For each claim at issue here, Plaintiffs submitted compliant, clean claims in keeping with industry practices for the services provided.

143.   After processing Plaintiffs' claims, Cigna should have issued payment to Plaintiffs.

144.   Cigna did not follow this well-established industry procedure in processing the claims at issue.

145.   Instead, having entered a "cost containment" contract with Viant, unknown to the Plaintiffs, Cigna sent the claims to Viant knowing and intending that they would underpay the claims at rates well below the UCR rate.

*The Viant Grift*

146.   Despite being told that their claims would be paid at UCR rates and were not subject to third party repricing, Plaintiffs were underpaid at well below UCR rates from Cigna based on Viant's underpricing of claims.

147.   The Plaintiffs only become aware of Viant's involvement in their claims after IOP services had been provided and they were notified by Viant that they would be negotiating the patients' bills.

148.   Nowhere in correspondence from Viant to Plaintiffs does it state or show that Viant was authorized to negotiate on the patient's behalf.

149.   Despite being asked thousands of times, or more, by Plaintiffs and others, no Viant representative has ever been able to point to any document that allows Viant to negotiate on behalf of patients.

150.   Viant's contract is with Cigna. Their contract provides monetary incentives for Viant to reduce the amount Cigna pays on out-of-network claims. These incentives in no way consider the balance bills that the patients subsequently face and that many of those balance bills remain unpaid.

151.   These unpaid balances are monies that Cigna has unjustly retained and shared with Viant as a kick-back.

152.    Viant makes affirmative representations in its correspondence purporting to show that Plaintiffs accepted the "negotiated" payment amount despite none of the Plaintiffs in this litigation having done so.

153.    None of the Plaintiffs accepted Viant's unreasonably low payment offers and did not agree to waive the patient's responsibility.

154.    All Viant's correspondence is made without Viant being in possession of any patient's plan terms or language.

155.    Viant, without authority, interferes with the contractual agreements between Plaintiffs and their patients as well as the contractual agreement between patients and Cigna to which they are a third-party beneficiary.

156.    Every IOP provider relevant to this litigation is a non-participating, out-of-network provider with Cigna.

157.    Every IOP provider entered into a contract with their patients prior to admission whereby each patient agreed to be liable for the difference between the amount the treating provider billed, and the amount Cigna reimbursed.

158.    Both the providers and the patients entered into their bilateral contract and were induced to do so based Cigna's representation that is would pay providers at the UCR rate.

159.    Viant has and had no right or authority to intervene as a third-party to this contract.

160.    Further, when the Plaintiffs did eventually receive an EOB from Cigna, the EOB did not show that it was an adverse benefit determination. The only indication of the underpayment on the EOB is in the remark code section that mentions, but does not explain, that Viant was used to reprice the claim.

161.    Refusing to accept Viant's 'negotiation,' Plaintiffs had no alternative but to balance bill their patients for the amounts that they are owed as the result of the massive underpayment.

162.    Should providers fail to balance bill, Cigna would like claim that they were no longer responsible for payment of the claims as the Plaintiffs waived the bill.

163.    Even though the providers do not accept the low "negotiated" amounts, this is

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

still the amount paid by Cigna. Viant still receives payment when the amount paid by Cigna is below the "*up to*" amount given by Cigna.

*The Harm Caused to the Plaintiffs and Class*

164.    All the claims at issue here were underpaid to Plaintiffs and the Class. These are all claims for which out-of-network benefits for IOPs are meant to be paid at amounts based on the UCR rate. It is a breach of Cigna's contractual and statutory obligations for Cigna and/or Viant to calculate out-of-network benefits using any method that does not adequately compare charges of similarly situated providers in the same geographic area at the time.

165.    Cigna and Viant are required to use fair and transparent procedures in pricing and paying out-of-network IOP claims. As described *supra*, the do not.

166.    As a result, Cigna has systematically underpaid the Plaintiffs and the Class since the beginning of the claims period for the present litigation.

167.    UCR calculations are supposed to be based on the neutral, objective, and transparent methodology as set forth in Cigna's own explanation of its reimbursement policies.

168.    Cigna and Viant did not base pricing and payments based on comparable providers' IOP charges, or upon any other objective, neutral or reasonable calculation rate.

169.    Cigna contracted with Viant to proffer a justification for systematic underpayment. As a result, the Cigna and Viant drastically underpriced and underpaid the claims to the detriment of the Plaintiffs.

170.    Cigna intentionally led Plaintiffs and the Class to believe that benefits were determined based on a UCR rate.

171.    As alleged above, when Plaintiffs contacted Cigna to verify out-of-network benefits during the pre-admission VOB calls, Cigna routinely represented that benefits were available at a UCR rate and never stated that the claims would be subject to repricing by Viant.

172.    Plaintiffs then agreed to provide services and receive payment from Cigna at the UCR rate.

173.    Despite Cigna's representations during this process, Cigna failed to pay Plaintiffs at the UCR rate, and instead improperly priced the Plaintiffs' claims using Viant based on

arbitrary, capricious, and improper methodologies.

174.    Furthermore, the communications from Cigna and Viant represented that benefits were in fact determined based on the UCR rate are clear lies to the Plaintiffs, the patients, and, when applicable, to plan sponsors.

175.    At no point have Cigna or Viant disclosed their pricing methodologies and continue to refuse to do so as they are not based on a proper calculation of UCR.

176.    At all relevant times, Cigna and Viant used improper methodologies to systematically underprice and underpay the true market rates of services rendered by Plaintiffs.

177.    These improper methodologies were not disclosed by Cigna or Viant prior to treatment services being rendered. Their details were deliberately kept off limits to their own members and the Plaintiffs who provided healthcare services. This has caused harm to both Plaintiffs and their patients.

178.    Plaintiffs suffered direct harm by incurring expenses to provide services and are forced into the position of incurring further expenses seeking correct reimbursement from Cigna and Viant.

179.    Plaintiffs and their patients reasonably expected that Cigna's health insurance, which allegedly gave patients the freedom to choose out-of-network providers, would properly calculate and pay out-of-network benefits in a meaningful way.

180.    When Cigna and Viant breached their obligations to cause claims to be paid fairly, patients were suddenly saddled with financial liability for tens of thousands of dollars in unexpected, unjustified medical expenses.

181.    For all of the claims at issue in this litigation, the patients were unable pay Cigna's shortfall and left Plaintiffs to effectively subsidize Cigna and Viant's enterprise.

182.    In this way, Plaintiffs and the Class are harmed by having to bear the cost of the undercompensated care.

*Out of Network Providers*

183.    The Plaintiffs are "out-of-network" or "non-participating" providers who had no preferred provider contracts or other "in-network" or "participating provider" written contracts

24

with Cigna or Viant.

184.    A large percentage of behavioral healthcare providers in this country are out-of-network when compared to other types of healthcare providers.

185.    Recent studies have indicated that the proportion of outpatient facility services for behavioral healthcare that are provided out-of-network are up to 5.8 times higher than those for medical or surgical services.[10]

186.    The reasons for this are two-fold. First, with many payors/insurers, including Cigna, the contracted rates offered to behavioral healthcare providers are so meager that many, like the Plaintiffs herein, cannot afford to offer services at the rates set by payors. While there are advantages that can attach to being an in-network provider, simple economics dictate that providers cannot afford to offer services for rates that are significantly below the costs required to provide them.  For illustration, in-network primary care medical providers are often paid as much as 22% higher rates than behavioral healthcare providers.[11]

187.    Second, behavioral healthcare providers are often told that the "network is full" and that they cannot join a network, even if they are willing to accept rates that sometimes pay less than Medicaid rates. The massive increase in need for behavioral services as a result of the current opioid and mental health crises has created a large increase in claims. Insurers, including Cigna, have attempted to limit their claims experience by denying providers entry to their preferred networks, thereby reducing the number of claims they receive, particularly from subscribers with in-network managed care health plans, such as HMO's.

188.    This creates a dearth of in-network behavioral health providers, particularly for mental health and addiction services, where available in-network resources are often difficult or impossible to find when needed.

189.    For providers that can go in-network, the tradeoff for reduced payments is the

---

[10] Stephen P. Melek, Daniel Perlman, & Stoddard Davenport, Addiction and mental health vs. physical health: Analyzing disparities in network use and provider reimbursement rates, Milliman Research Report (Dec. 2013), https://www.milliman.com/uploadedFiles/insight/2017/NQTLDisparityAnalysis.pdf

[11] Milliman Research Report, *supra*.

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

steering of patients to their practices or facilities by the payors and payment within specified contractual timeframes. The Plaintiffs here were given no such advantages.

190.    Since no other relationship exists between out-of-network providers and insurers, to properly determine whether to provide behavioral health services to a patient, the practice of out-of-network providers is to obtain a prior oral promise and assurance of payment at a specific rate from the insurance company before delivering services.  This happens during verification of benefits calls between the provider and the payor.  Based upon the representations regarding payment on that call, the provider either agrees or declines to render services to the patient.

191.    Where the terms of payment quoted by the insurer are unsatisfactory, a behavioral healthcare provider will make other payment arrangements with the patient assist the patient in seeking services elsewhere.

*Plaintffs' Allegations*

192.    The following are specific allegations relating to the manner in which Cigna improperly engaged with Viant to cause improper pricing and payment of services provided by Plaintiffs to Cigna's insureds:

Westwind Recovery

193.    Plaintiff, Westwind, was established in 2016 and is licensed to provide IOP behavioral health treatment, and other related services, by the California Department of Healthcare Services, and is accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO").

194.    Westwind has treated more than 10 patients for whom claims for payment of IOP services were repriced by Viant.  Prior to the admission of each of these patients, to determine the rate of payment and decide whether to provide treatment, Westwind followed identical procedures.  For each of these patients, Westwind verified that the patient had active coverage by contacting Cigna at the number listed on the back of the patient's insurance ID card. For all patients whose claims are at issue here, Cigna's representative stated that the patient's benefits paid 70% - 90% of UCR for out of network IOP services until the patients' out of pocket cost sharing responsibilities had been met. Once these amounts, which included the patient's

26

deductible and co-insurance, were met, Cigna would pay claims at 100% of UCR.  Based upon these promises of payments at the quoted rates, Westwind admitted the patients into IOP treatment.  In practically every instance, to assure payment at the maximum amount of 100% of UCR, all patients satisfied their out of pocket cost-sharing responsibilities soon upon admission to treatment, so all claims should have been paid at 100% of UCR.

195.    Cigna never mentioned that these patient claims would be subject to re-pricing by Viant. In fact, Cigna represented the exact opposite.  Westwind was told specifically on the above-mentioned verification call that the patient's claims would not be subject to repricing by Viant.  Westwind, and the behavioral health industry as a whole, have been aware of Cigna's and Viant's illegal repricing grift for some time, and know to ask about it on verification calls and to avoid patients with claims that might be subject to repricing by Viant, and to help those patients find other treatment options. For every patient relevant, Westwind was told that Viant would not be involved in pricing these patient claims. Westwind cannot afford to provide services to patients at the below market rates priced by Viant. Westwind would not have admitted patients to treatment whose claims were subject to Viant pricing.

196.    At the time of admission of every patient relevant, both Westwind and Cigna understood that Westwind was offering to treat the patient in exchange for reimbursement at nothing less than the rates quoted on the verification call. Westwind and Cigna understood that UCR rates were traditionally equivalent to 100% of Westwind's billed charges. This is because Westwind determines billed charges based on prevailing industry prices in the geographic area where Westwind's facility is located.  Westwind has a well-established reputation in the community for providing high levels of care and charged for services on par with other behavioral healthcare providers in the same area of expertise.  Cigna patient claims that are not sent to Viant typically pay 100% of billed charges.

197.    After providing IOP treatment, Westwind submitted timely claims for reimbursement to Cigna. To Westwind's surprise, in direct contradiction to what Westwind had been promised on the verification call, Cigna did not pay the claims according to the rates agreed to on the verification call. Instead, the claims were suddenly and without warning routed by

Cigna to Viant.  Despite Westwind's immediate protest and objection and refusal to accept any payment less than what was quoted on the verification call, Viant's pricing resulted in electronic partial payments that, in sum, averaged only 11% of billed charges.  Westwind has not been paid the remaining 89% of the billed amounts owed to them.  Westwind is now forced to send substantial balance bills to behavioral health patients, most of whom are attempting to rebuild lives after years of addiction. Few, if any, of the balance bills are ever paid by patients, leaving Westwind damaged in the amount of 89% of its billed charges.

198.    Cigna and Viant's scheme has left Westwind unpaid for years' worth of IOP services. Cigna and Viant have caused Westwind to be underpaid at least $177,317.45.

199.    Westwind has exhausted all administrative remedies available, including more than two appeals, and has made all reasonable efforts to receive proper payment or have the claims reprocessed by Cigna and properly paid. None of these efforts have been successful.

<u>PCI Westlake Centers</u>

200.    Plaintiff, PCI Westlake, was established in 2015. PCI Westlake is licensed to provide IOP behavioral health treatment, and other related services, by the California Department of Healthcare Services of, and is accredited by JCAHO.

201.    Since 2015, PCI Westlake has treated more than 9 Cigna patients for whom claims for payment of IOP services were repriced by Viant. Prior to the admission of each of these patients, to determine the rate of payment and decide whether to provide treatment, PCI Westlake followed identical procedures.  For each of these patients, PCI Westlake verified that the patient had active coverage by contacting Cigna at the number listed on the back of the patient's insurance ID card. For all patients whose claims are at issue here, Cigna's representative stated that the patient's benefits paid 70% - 90% of UCR for out of network IOP services until the patients' out of pocket cost sharing responsibilities had been met. Once these amounts, which included the patient's deductible and co-insurance, were met, Cigna would pay claims at 100% of UCR.  Based upon these promises of payments at the quoted rates, PCI Westlake admitted the patients into IOP treatment. In practically every instance, to assure payment at the maximum amount of 100% of UCR, all patients satisfied their out of pocket cost-sharing responsibilities

soon upon admission to treatment, so all claims should have been paid at 100% of UCR.

202.     Cigna never mentioned that these patient claims would be subject to re-pricing by Viant.  In fact, Cigna represented the exact opposite.  PCI Westlake was told specifically on the above-mentioned verification call that the patient's claims would not be subject to repricing by Viant.  PCI Westlake, and the behavioral health industry as a whole, have been aware of Cigna's and Viant's illegal repricing grift for some time, and know to ask about it on verification calls and to avoid patients with claims that might be subject to repricing by Viant, and to help those patients find other treatment options.  For every patient relevant, PCI Westlake was told that Viant would not be involved in pricing these patient claims. PCI Westlake cannot afford to provide services to patients at the below market rates priced by Viant.  PCI Westlake would not have admitted patients to treatment whose claims were subject to Viant pricing.

203.     At the time of admission of every patient relevant, both PCI Westlake and Cigna understood that PCI Westlake was offering to treat the patient in exchange for reimbursement at nothing less than the rates quoted on the verification call. PCI Westlake and Cigna understood that UCR rates were traditionally equivalent to 100% of PCI Westlake's billed charges. This is because PCI Westlake determines billed charges based on prevailing industry prices in the geographic area where PCI Westlake's facility is located.  PCI Westlake has a well-established reputation in the community for providing high levels of care and charged for services on par with other behavioral healthcare providers in the same area of expertise.  Cigna patient claims that are not sent to Viant typically pay 100% of billed charges.

204.     After providing IOP treatment, PCI Westlake submitted timely claims for reimbursement to Cigna. To PCI Westlake's surprise, in direct contradiction to what PCI Westlake had been promised on the verification call, Cigna did not pay the claims according to the rates agreed to on the verification call. Instead, the claims were suddenly and without warning routed by Cigna to Viant.  Despite PCI Westlake's immediate protest and objection and refusal to accept any payment less than what was quoted on the verification call, Viant's pricing resulted in electronic partial payments that, in sum, averaged only 14% of billed charges.  PCI Westlake has not been paid the remaining 86% of the billed amounts owed to them.  PCI Westlake is now

forced to send substantial balance bills to behavioral health patients, most of whom are attempting to rebuild lives after years of addiction.  Few, if any, of the balance bills are ever paid by patients, leaving PCI Westlake damaged in the amount of 86% of its billed charges.

205.    Cigna and Viant's scheme has left PCI Westlake unpaid for years' worth of IOP services. Over the years, Cigna and Viant have caused PCI Westlake to be unpaid at least $238,108.22.

206.    PCI Westlake has exhausted all administrative remedies available, including more than two appeals, and has made all reasonable efforts to receive proper payment or have the claims reprocessed by Cigna and properly paid. None of these efforts have been successful.

<u>Bridging the Gaps</u>

207.    Plaintiff, BTG, was established in 2001. BTG is licensed to provide IOP behavioral health treatment, and other related services, by the California Department of Healthcare Services, and is accredited by JCAHO.

208.    Since 2015, BTG has treated more than 21 patients for whom claims for payment of IOP services were repriced by Viant.  Prior to the admission of each of these patients, to determine the rate of payment and decide whether to provide treatment, BTG followed identical procedures.  For each of these patients, BTG verified that the patient had active coverage by contacting Cigna at the number listed on the back of the patient's insurance ID card. For all patients whose claims are at issue here, Cigna's representative stated that the patient's benefits paid 70% - 90% of UCR for out of network IOP services until the patients' out of pocket cost sharing responsibilities had been met. Once these amounts, which included the patient's deductible and co-insurance, were met, Cigna would pay claims at 100% of UCR.  Based upon these promises of payments at the quoted rates, BTG admitted the patients into IOP treatment. In practically every instance, to assure payment at the maximum amount of 100% of UCR, all patients satisfied their out of pocket cost-sharing responsibilities soon upon admission to treatment, so all claims should have been paid at 100% of UCR.

209.    Cigna never mentioned that these patient claims would be subject to re-pricing by Viant.  In fact, Cigna represented the exact opposite.  BTG was told specifically on the above-

mentioned verification call that the patient's claims would not be subject to repricing by Viant. BTG, and the behavioral health industry as a whole, have been aware of Cigna's and Viant's illegal repricing grift for some time, and know to ask about it on verification calls and to avoid patients with claims that might be subject to repricing by Viant, and to help those patients find other treatment options.  For every patient relevant, BTG was told that Viant would not be involved in pricing these patient claims. BTG cannot afford to provide services to patients at the below market rates priced by Viant.  BTG would not have admitted patients to treatment whose claims were subject to Viant pricing.

210.   At the time of admission of every patient relevant, both BTG and Cigna understood that BTG was offering to treat the patient in exchange for reimbursement at nothing less than the rates quoted on the verification call. BTG and Cigna understood that UCR rates were traditionally equivalent to 100% of BTG's billed charges. This is because BTG determines billed charges based on prevailing industry prices in the geographic area where BTG's facility is located.  BTG has a well-established reputation in the community for providing high levels of care and charged for services on par with other behavioral healthcare providers in the same area of expertise. Cigna patient claims that are not sent to Viant typically pay 100% of billed charges.

211.   After providing IOP treatment, BTG submitted timely claims for reimbursement to Cigna. To BTG's surprise, in direct contradiction to what BTG had been promised on the verification call, Cigna did not pay the claims according to the rates agreed to on the verification call. Instead, the claims were suddenly and without warning routed by Cigna to Viant.  Despite BTG's immediate protest and objection and refusal to accept any payment less than what was quoted on the verification call, Viant's pricing resulted in electronic partial payments that, in sum, averaged only 14% of billed charges.  BTG has not been paid the remaining 86% of the billed amounts owed to them.  BTG is now forced to send substantial balance bills to behavioral health patients, most of whom are attempting to rebuild lives after years of addiction.  Few, if any, of the balance bills are ever paid by patients, leaving BTG damaged in the amount of 86% of its billed charges.

212.   Cigna and Viant's scheme has left BTG unpaid for years' worth of IOP services.

Cigna and Viant have caused BTG to be underpaid at least $736,998.47.

213.    BTG has exhausted all administrative remedies available, including more than two appeals, and has made all reasonable efforts to receive proper payment or have the claims reprocessed by Cigna and properly paid. None of these efforts have been successful.

Summit Estate Outpatient

214.    Plaintiff, Summit Estate Summit, was established in 2017.  Summit is licensed to provide IOP behavioral health treatment, and other related services, by the California Department of Healthcare Services and is accredited by JCAHO.

215.    Since 2017, Summit has treated more than 10 Cigna patients for whom claims for payment of IOP services were repriced by Viant.  Prior to the admission of each of these patients, to determine the rate of payment and decide whether to provide treatment, Summit followed identical procedures.  For each of these patients, Summit verified that the patient had active coverage by contacting Cigna at the number listed on the back of the patient's insurance ID card. For all patients whose claims are at issue here, Cigna's representative stated that the patient's benefits paid 70% - 90% of UCR for out of network IOP services until the patients' out of pocket cost sharing responsibilities had been met. Once these amounts, which included the patient's deductible and co-insurance, were met, Cigna would pay claims at 100% of UCR.  Based upon these promises of payments at the quoted rates, Summit admitted the patients into IOP treatment. In practically every instance, to assure payment at the maximum amount of 100% of UCR, all patients satisfied their out of pocket cost-sharing responsibilities soon upon admission to treatment, so all claims should have been paid at 100% of UCR.

216.    Cigna never mentioned that these patient claims would be subject to re-pricing by Viant.  In fact, Cigna represented the exact opposite.  Summit was told specifically on the above-mentioned verification call that the patient's claims would not be subject to repricing by Viant.  Summit, and the behavioral health industry as a whole, have been aware of Cigna's and Viant's illegal repricing grift for some time, and know to ask about it on verification calls and to avoid patients with claims that might be subject to repricing by Viant, and to help those patients find other treatment options.  For every patient relevant, Summit was told that Viant would not

be involved in pricing these patient claims. Summit cannot afford to provide services to patients at the below market rates priced by Viant.  Summit would not have admitted patients to treatment whose claims were subject to Viant pricing.

217.    At the time of admission of every patient relevant, both Summit and Cigna understood that Summit was offering to treat the patient in exchange for reimbursement at nothing less than the rates quoted on the verification call. Summit and Cigna understood that UCR rates were traditionally equivalent to 100% of Summit's billed charges. This is because Summit determines billed charges based on prevailing industry prices in the geographic area where Summit's facility is located.  Summit has a well-established reputation in the community for providing high levels of care and charged for services on par with other behavioral healthcare providers in the same area of expertise.  Cigna patient claims that are not sent to Viant typically pay 100% of billed charges.

218.    After providing IOP treatment, Summit submitted timely claims for reimbursement to Cigna. To Summit's surprise, in direct contradiction to what Summit had been promised on the verification call, Cigna did not pay the claims according to the rates agreed to on the verification call. Instead, the claims were suddenly and without warning routed by Cigna to Viant.  Despite Summit's immediate protest and objection and refusal to accept any payment less than what was quoted on the verification call, Viant's pricing resulted in electronic partial payments that, in sum, averaged only 15% of billed charges.  Summit has not been paid the remaining 85% of the billed amounts owed to them.  Summit is now forced to send substantial balance bills to behavioral health patients, most of whom are attempting to rebuild lives after years of addiction.  Few, if any, of the balance bills are ever paid by patients, leaving Summit damaged in the amount of 85% of its billed charges.

219.    Cigna and Viant's scheme has left Summit unpaid for years' worth of IOP services. Cigna and Viant have caused Summit to be overpaid at least $325,000.00.

220.    Summit has exhausted all administrative remedies available, including more than two appeals, and has made all reasonable efforts to receive proper payment or have the claims reprocessed by Cigna and properly paid. None of these efforts have been successful

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

1

## CLASS ACTION ALLEGATIONS

*THE PLAINTIFF CLASS*

221.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. The requirements of subparts 23(a) and (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are satisfied in this case.

222.    Plaintiffs bring this class action on behalf of the Plaintiff Class, defined as:

All out-of-network behavioral health treatment providers in the United States who provided IOP services to any patient whose healthcare benefits were either insured or administered by Cigna and whose claims for reimbursement of those services were underpaid due to Cigna's use of Viant, during the class period.

### *Rule 23(a)*

#### Numerosity

223.    This putative plaintiff class includes thousands of mental health and substance use disorder treatment providers throughout the United States and is therefore so large as to make joinder of all members impracticable within the meaning of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

#### Commonality

224.    Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, there are questions of law or fact common to all class members, including, but not limited to, the following:

      a.    Whether the Defendants have underpaid the Plaintiff Class for out-of-network mental health and substance use disorder services based upon improper methodologies for pricing UCR rates;

      b.    Whether Defendants made false representations to the Plaintiff Class as to how claims for out-of-network mental health and substance use disorder services would be paid;

      c.    Whether the Defendants falsely representing the method that was used to pay the claims for out-of-network mental health and substance use disorder

34

services at the time such claims were paid;

d.   Whether the Defendants falsely represented the method that was used to pay the claims for out-of-network mental health and substance use disorder at the time such claims were appealed;

e.   Whether the Defendants falsely represented that the members owed the Plaintiffs and Class amounts which should have been paid by the Defendants, and are not the financial liability of the members;

f.   Whether the improper methodologies and systematic misrepresentations employed by the Defendants made it futile for the Plaintiffs and Class to appeal the claims;

g.   Whether interest should be added to the payment of unpaid benefits;

h.   Whether Defendants' conduct in California violates California Business and Professions Code § 17200 *et seq.*;

i.   Whether Defendants conduct violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA);

j.   Whether Cigna conduct violated their duty of faith and fair dealing to the Plaintiffs and Class in employing Viant to 'negotiate' claims;

k.   Whether Viant falsely represented to members that they represented them.

l.   Whether Viant caused members to receive inappropriate 'balance' bills for mental health and substance use disorder services;

m.   Whether Viant was the 'agent' of any plan member who received mental health and substance use disorder services from Plaintiffs and the Class;

n.   What process and data Viant used in payment determinations;

o.   Whether Viant made fraudulent to representations to Plaintiffs and the Class as to the Provider and Class' claims for mental health and substance use disorder services provided to members;

p.   Whether Defendants engaged in pre-authorization conversations with

35

Plaintiffs and Class prior to the member receiving treatment;

q.    What level of treatment Defendants authorized prior to Provider and Class providing mental health and substance use disorder services and in subsequent Utilization Review conversations;

r.    Whether Cigna authorized treatment at UCR rates in such conversations.

s.    Whether Cigna revealed the involvement or probable involvement of Viant in claims handling, processing, and/or payment determinations;

t.    Whether Viant received any appeals from Plaintiffs, Class, or members following benefit determinations;

u.    What level of treatment was provided to members;

v.    What payments were made to the Plaintiffs and Class;

w.    Whether Viant's methodology adequately and/or accurately applies the relevant UCR in determining benefit amounts;

x.    Whether Viant's pricing data accurately reflect the relevant UCR in the relevant geographical area;

y.    Whether Viant's repricing actions constitute inappropriate kickbacks

z.    Whether Cigna delayed processing appeals.

<u>Typicality</u>

225.    The claims of Provider plaintiffs are typical of the claims of the defined plaintiff class, within the meaning of Rule 23(a)(3) of the Federal Rules of Civil Procedure, and are based on and arise out of the same uniform and standard illegal practices of the Defendants, as alleged herein by the Plaintiffs. The proposed class representatives state claims for which relief can be granted that are typical of the claims of absent class members. If litigated individually, the claims of each class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

<u>Adequacy</u>

226.    Provider plaintiffs are committed to pursuing this action and are prepared to serve the proposed class in a representative capacity with all of the obligations and duties material

36

thereto. They will fairly and adequately represent the interests of the members of the proposed class within the meaning of Rule 23(a)(4) of the Federal Rules of Civil Procedure, and will not have any interests adverse to, or that directly and irrevocably conflict with, the interests of the other class members.

227.    Plaintiffs have retained competent counsel experienced in class action litigation, which will adequately prosecute this action, and will assert, protect and otherwise well represent the named Class representatives and absent class members.

### *Rule 23(b)*

228.    The prosecution of separate actions by individual class members would create a risk of adjudication with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to this action, or could substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

229.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible rights within the Plaintiff Class. Fed. R. Civ. P. 23(b)(1)(A).

230.    Cigna's and Viant's actions are generally applicable to the class as a whole, and Plaintiffs seek equitable remedies with respect to the class as a whole, within the meaning of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

231.    The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure. Common or general proof will be used for each member of the class to establish each element of their claims, as identified above. Additionally, proceeding as a class action is superior to other available methods of adjudication. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

*The Cigna-Viant Enterprise*

232.    Cigna's and Viant's claims pricing practices are essentially a nationwide enterprise of graft deliberately hidden from the Plaintiffs, patients, plan sponsors, the public, and the enforcement agencies that took Cigna to task for the Ingenix scheme.

233.    During the initial VOB call, the Plaintiffs and the Class specifically asked Cigna's representatives if the patient's claims were subject to third party repricing.

234.    Despite asking this at the outset and being told that they were not subject to third party repricing, for each of the claims at issue in this litigation Cigna and Viant have repriced and underpaid the claims to subsistence rates.

235.    The Plaintiffs only become aware of Viant's involvement after IOP services have been provided to the patients and they receive communication from Viant that they will be negotiating the billed charges on behalf of the patient.

236.    Viant has not obtained power of attorney or other authority from any patient that would allow them to act as the patient's agent in billing and payment negotiations with these out of network Plaintiffs.

237.    Viant does have a contract with Cigna. This contract provides monetary incentives for Viant to reduce the amount paid on claims. These incentives in no way consider the balance bill that the patients face.

238.    The Viant representatives or "negotiators" are paid as described *supra* where their payment is directly tied to the amount below the "allowed" number they can have a provider accept.

239.    This lowest, below-market rate becomes the standard and base rate offered by Viant the following day.

240.    Viant representatives do not have the authority or ability to return a claim to Cigna when the Provider rejects their "offer" despite their statements to Plaintiffs that the UCR is determined by Cigna.

241.    Although communications from Viant contain language that, on its face, appears beneficial to the patients (the patient advocacy or "PAD," letter mentioned *supra*), stating that

38

Viant effectively eliminates any patient liability; this language is both disingenuous and in no way permitted under the terms of the patient's policy. No reasonable provider will accept less than 10% of billed charges when told to expect reimbursement at UCR rates. None of the Plaintiffs in the present litigation or class members have ever accepted such an offer from Viant.

242. Viant is interfering, without authority, with the contractual agreement between the Patient and the IOP treatment Provider, by reporting to modify parties' rights and responsibilities under that contract.

243. Every IOP Provider and class member in this litigation is an out-of-network provider, without a pre-existing written contract to accept specific rates for services. Every Provider and Class Member enters in to written contracts with admitting patients whereby patients agree to pay the balance due after insurance payments are received. Viant has no right or authority to intervene as a third-party to this contract.

244. Viant also has no authority to actually transmit acceptance of rate negotiations for to Cigna for payment when a provider has become suitably exhausted and ground down by the scheme and is coerced to accept the underpayment. In such situations, agreements are illegally coerced and unconscionable.

245. When Cigna does issue the underpayment, in whatever amount it chooses, the EOB will contain a remark code that states the payment was made subject to Viant's repricing.

246. This repricing and its consequences are not explained to the patient and basing the allowable amount on Viant's Facility Review Program is in direct conflict with Cigna's obligations to pay out of network benefits based on the UCR.

247. The Plaintiffs are forced to balance bill the patients for the amounts that they are owed as the result of the massive underpayment that is now the difference between the "Facility Review Program" and the billed charges.

248. Should the Plaintiffs fail to balance bill the patients, Cigna will then assert that it has no further payment responsibilities and that it is not obligated to pay any additional amounts on claims where the facility has waived any patient responsibility.

249. The payment that IOP providers have been receiving across the country hovers

around $260. This amount is less than 10% of the approximate median billed charges amongst a broad sample of providers.

250.    There is no justification or reasonable basis for finding that the UCR is both uniform across the country and less than 20% of billed charges.

251.    Viant's parent company, Multiplan Inc., which claims to use the same or substantially the same pricing methodology, and which possesses approximately identical contracts with Cigna, routinely prices claims at a rate ten times larger than the rates reimbursed by Viant.

252.    This is absurd on its face.

253.    Plaintiffs have been told varied and multiple lies by Viant when enquiring into the payment amount that they are "offered."

254.    Viant claims that the amount is determined by a "proprietary database" but refuses to provide any insight or information on their black box of numbers.

255.    Viant refuses to even state how their database has similarities or differences with publicly available, open databases such as FairHealth.[12]

256.    None of Viant or Cigna's agents have ever stated what CMS or other code(s) are used to determine the reimbursement amount paid to Plaintiffs even when they claim that those same codes are the basis for the reimbursement amount.

257.    Despite the Parity Act's requirements as to mental health and medical benefits, neither Viant nor Cigna has ever stated what CMS codes are in parity with IOP services. They have been asked to do repeatedly on lines that they themselves recorded.

258.    Cigna does not issue an EOB showing that they have made an adverse benefit determination to either the providers or their members.

259.    The providers are then left with a Hobson's choice of pursuing a balance bill against a newly recovering patient because without issuing a balance bill, Cigna will assert that the Provider waived the charge and they have no further obligations to pay.

---

[12] https://www.fairhealthconsumer.org/

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

260.    This litigation seeks to hold Cigna and Viant accountable for their reprehensible conduct, have them pay what they actually owe, and prohibit them from continuing their scam.

### CAUSES OF ACTION

**I.a.    Violation of California Business & Professions Code §§ 17200 *et seq*.**
*On Behalf of Plaintiffs and the Class against Cigna*

261.    The General and Class Allegations are hereby repeated as if fully set forth herein.

262.    This cause of action is brought pursuant to California law.

263.    Defendant, Cigna, has engaged in unfair and unlawful business acts and practices by, *inter alia*:

a.    using arbitrary, capricious and improper methods to improperly and intentionally underprice and underpay out-of-network IOP mental health and substance use disorder claims;

b.    employing Viant as a third-party repricing entity without disclosing this agreement to Plaintiffs during the VOB process or at any time prior to IOP treatment being rendered;

c.    employing Viant as a third-party repricing entity without a contract or agreement with Plaintiffs, the Class, and/or patients, permitting them to do so for the underpaid claims at issue;

d.    concealing and/or omitting material information in EOBs, ERAs, and other correspondence concerning the manner in which Cigna and Viant determine the reimbursement amount for IOP out-of-network claims;

e.    representing to Plaintiffs and the Class that Cigna would pay IOP services at the UCR, when in fact Cigna disregarded the UCR and paid arbitrarily low rates for IOP services;

f.    paying arbitrarily low rates for IOP services uniformly across the country in disregard of the prevailing charges in the community;

g.    misrepresenting the reasonable and customary rates of out-of-network IOP

41

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

to Plaintiffs and the Class;

h.      causing IOP patients to incur and be responsible for substantial 'balance bills' to Plaintiffs and the Class;

i.      failing to correctly and accurately apply the criteria used to calculate UCR rates as set forth in Title 28 of the California Code of Regulations, section 1300.71(a)(3)(B), and by failing to comply with California Health and Safety Code § 1371 and 28 C.C.R. § 1300.71 by knowingly, among other things, engaging in an "unfair payment pattern," including, but not limited to, delaying payment of claims, reducing the amount of payment, failing on a repeated basis to pay uncontested portions of claims within the time period specified in Health and Safety Code §§ 1371 et seq., and not paying reasonable and customary rates.

264.    This conduct by Cigna constitutes illegal and unfair business practices under California Business and Professions Code § 17200, *et seq*. As a result of their acts of unfair competition, Cigna has and continues to receive and retain monies that rightfully belong to Plaintiffs and the Class as compensation for rendering covered, medically necessary IOP services.

265.    Additionally, Cigna's unfair competition practices are likely to continue and/or increase absent judicial intervention. This conduct threatens not only the economic well-being and future viability of the Plaintiffs and the Class, but the health of the public in midst of a nationwide opioid crisis.

266.    California Business and Professions Code § 17203 provides that any court of competent jurisdiction may enjoin any person from engaging in unfair competition and restore to any person who is a victim of that unfair competition any money acquired thereby. Plaintiffs seek, on behalf of themselves and the Class, restitution of an amount to be proved at trial, plus applicable statutory interest, which is the amount that the Cigna is obligated to pay the Plaintiffs and the Class for the IOP services they provided.

267.    Cigna should be specifically ordered to disgorge amounts which represent the difference between what Cigna underpaid the Plaintiffs and Class using an arbitrarily low

payment rate and total billed charges on past claims, which appropriately represent the UCR.

268.    Plaintiffs seek, on behalf of themselves and the Class, an injunction prohibiting Cigna's ongoing conduct in using or engaging Viant and/or any third-party repricing entity for IOP out-of-network claims. Furthermore, the injunction should force Cigna to correctly price past and future out-of-network IOP claims by determining UCR based on appropriate data.

269.    The legal remedies of the Plaintiffs and Class are inadequate in that Cigna's unfair and unlawful conduct is ongoing and repeated litigation to correct its ongoing actions is inefficient for the parties and the Court.

**I.b.    Violation of California Business & Professions Code §§ 17200 *et seq*.**
*On Behalf of Plaintiffs and the Class against Viant*

270.    The General and Class Allegations are hereby repeated as if fully set forth herein.

271.    This cause of action is brought pursuant to California law.

272.    Defendant, Viant, has engaged in unfair and unlawful business acts and practices by, *inter alia*:

a.    using arbitrary, capricious and improper methods to improperly underprice out-of-network IOP claims;

b.    improperly representing that the proposed payment amount reflects the UCR;

c.    improperly representing that Viant has the authority to negotiate *on behalf of the patient*;

d.    improperly representing that Viant is negotiating *on behalf of the patient*, despite the clear conflict of interest and financial incentives to the contrary provided in the agreement(s) between Cigna and Viant;

e.    Makings such material misrepresentations on PADs and other correspondence sent to the Plaintiffs, the class, and the patients;

f.    causing IOP patients to incur unnecessarily large balance bills for IOP treatment;

g.      interfering with the contract between the Plaintiffs, the Class, and their Patients;

h.      interfering with the contract between the Plaintiffs, the Class, and Cigna,

i.      colluding with Cigna to uniformly underpay IOP services across the country;

j.      failing to disclose to Plaintiffs and the Class that they have no actual authority to negotiate on behalf of patients;

k.      failing to disclose to Plaintiffs and the Class that the proposed payment rates are arbitrarily set by Cigna and misrepresenting those fraudulent rates to Plaintiffs and the Class as UCR rates;

l.      preventing the timely and full payment of IOP claims;

m.      preventing Plaintiffs and the Class from appealing the underpayment;

n.      refusing to disclose the methodology by which IOP claims are priced;

o.      concealing and/or omitting material information in written and wire communications with Plaintiffs and the Class;

p.      Causing patients to incur substantial 'balance bills' to Plaintiffs and the Class;

q.      entering into agreement(s) with Cigna that constituted illegal "kick-backs" or "rebates" in exchange for underpayment of Plaintiffs and the Class at rates well below the UCR.

273.    This conduct by Viant constitutes illegal and unfair business practices under California Business and Professions Code § 17200, *et seq*. As a result of their acts of unfair competition, Viant has and continues to receive and retain monies that rightfully belong to Plaintiffs and the Class as compensation for rendering covered, medically necessary IOP services.

274.    Additionally, Viant's unfair competition practices are likely to continue and/or increase absent judicial intervention. This conduct threatens not only the economic well-being and future viability of the Plaintiffs and the Class, but the health of the public in midst of a nationwide opioid crisis.

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

275.    California Business and Professions Code § 17203 provides that any court of competent jurisdiction may enjoin any person from engaging in unfair competition and restore to any person who is a victim of that unfair competition any money acquired thereby. Plaintiffs seek, on behalf of themselves and the Class, restitution of an amount to be proved at trial, plus applicable statutory interest, which is the UCR that the Plaintiffs and the Class should have been paid and underpayment they received for the IOP services provided.

276.    Viant should be specifically ordered to disgorge amounts that it received as "kick-backs," "rebates," or other unlawful incentives and payments it received in exchange for its "cost containment" of IOP claims for Cigna.

277.    Plaintiffs seek, on behalf of themselves and the Class, an injunction prohibiting Viant's ongoing conduct interfering with the agreements between Plaintiffs, the Class, and patients and the agreements between Plaintiffs, the Class, and Cigna, under the guise of negotiating on behalf of the patient. Viant should be prohibited from contacting or otherwise engaging with the Plaintiffs and/or the Class on the payment of IOP claims.

278.    The legal remedies of the Plaintiffs and Class are inadequate in that Viant's unfair and unlawful conduct is ongoing and repeated litigation to correct its ongoing actions is inefficient for the parties and the Court.

**II.    Intentional Misrepresentation/Fraudulent Inducement**
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

279.    Plaintiffs re-allege and incorporate the General and Class action allegations above, as though such allegations were fully stated herein.

280.    Plaintiffs bring this Count under the Federal and State common law causes of action for Intentional Misrepresentation.

281.    The elements of fraudulent inducement are: (1) misrepresentation; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *See, e.g., Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019). The elements of Intentional Misrepresentation are the same. *See, for example, Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).

45

282.    As the communications between Plaintiffs and Cigna during the initial phone calls, the communications between the Plaintiffs and Viant following the submission of claims, and the written statements sent to Plaintiffs and patients following claim submissions show, Cigna and Viant represented that Plaintiffs and the Class were being compensated at the UCR as agreed to and required.

283.    Plaintiffs followed all Cigna and Viant's policies and procedures when trying to obtain payment at the agreed upon rate, the UCR.

284.    Plaintiffs followed Viant's policies and procedures as well as Cigna's despite Viant having no actual authority to "negotiate" the claims at issue and having no ability to issue a payment to Plaintiffs or issue any payment at all.

285.    The Plaintiffs would not have continued to admit Cigna's patients had they known that Cigna intended to employ Viant to reprice the IOP claims after services were provided.

286.    The Plaintiffs would not have continued to attempt to resolve the underpayment of their claims with Viant if they had known that Viant was negotiating in bad faith, without any authority, and based on a fraudulent "UCR" that bore no actual relationship to a true and accurate UCR.

287.    Given the pattern, practice, and scale of these misrepresentations Viant's and Cigna's practices cannot have been other than intentional, following the well-established legal principle that "if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck." *People ex rel. Lockyer v. Pac. Gaming Techs.*, 82 Cal. App. 4th 699, 701 (2000).

288.    Cigna and Viant's 'duck' is fraud and conspiracy. Cigna knew that their insureds would still receive IOP treatment when they verified benefits and gave payment terms, Viant knew that the more money it fraudulently "saved" Cigna, the more money it would make, Cigna knew it would keep money that had been paid and entrusted to it for patients' treatment, and both Cigna and Viant knew that they were deceiving the Plaintiffs as to a true and accurate UCR.

289.    Cigna also knew that it would be pushing the more expensive, out-of-network providers out of business despite charging larger premiums for plans that contained such purported benefits.

46

290.    All of this was done to induce reliance by the Plaintiffs to provide IOP treatment services and preclude means of effective challenge to the underpayment of Plaintiffs.

291.    Cigna did not pay Plaintiffs the UCR as it represented it would. Viant had no authority or ability to issue any payment to Plaintiffs despite its represented ability to "negotiate" with them.

292.    This tort claim is not precluded by the economic loss rule and it is predicated upon fraud, conspiracy, and criminal acts. Claims for fraudulent inducement are recognized as an exception to the economic loss rule as they arise from conduct that is intentional and intended to harm. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

293.    Cigna and Viant's conduct clearly goes beyond 'useful business practices' and are independent of the breach of contract in this action.

294.    Plaintiffs and the Class are entitled to damages in an amount to be proven at trial for the underpayment of claims.

### III.    Negligent Misrepresentation
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

295.    Plaintiffs re-allege and incorporate the General and Class action allegations above, as though such allegations were fully stated herein.

296.    Plaintiffs bring this Count under the Federal and State common law cause of action for Negligent Misrepresentation.

297.    Plaintiffs' verification of patients' eligibility, benefits, and payment at UCR for IOP services was a representation that Cigna would cover each patient's IOP treatment and this representation was not true.

298.    Cigna did not intend to pay UCR for IOP services.

299.    Similarly, Viant did not intend to "negotiate" in an amount equivalent to the actual UCR rate as doing so would preclude Viant from receiving any payments from Cigna.

300.    It was the intent of Cigna and Viant that the Plaintiffs would rely on the representations made to them.

301.    As a result of Cigna's and Viant's misrepresentations, the Plaintiffs and the Class

47

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

have been damaged in the amount that they were underpaid for IOP services in an amount to be determined at trial.

### IV.    Civil Conspiracy
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

302.    Plaintiffs re-allege and incorporate the General and Class action allegations above, as though such allegations were fully stated herein.

303.    Plaintiffs bring this Count pursuant to the Federal and State common law cause of action for civil conspiracy.

304.    The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages.

305.    As described at length in the General Allegations, Class Action Allegations, and Counts I through VI *supra*, the elements are clearly met.

306.    The allegations of Counts I through VI are incorporated as if fully set forth herein.

307.    As to the first element, Cigna and Viant are the parties that conspired together.

308.    They engaged in a common plan to illegally underpay the claims at issue and to do so by deceptive, dishonest, and fraudulent means.

309.    Counts III through VI all clearly set forth a common plan to commit tortious acts.

310.    Count III, Violations of RICO, alleges all the elements required for Civil Conspiracy as well.

311.    The General Allegations, Class Action Allegations, and Counts I through VI set forth numerous wrongful acts that Cigna and Viant committed pursuant to their agreement and in furtherance of the conspiracy.

312.    The violations of California Business & Professions Code §§ 17200 *et seq.* as set out in Count I.a and I.b. *supra* set forth in detail many of the wrongful acts committed by Cigna and Viant in furtherance of the conspiracy.

313.    The element of damages is likewise described in detail *supra*.

314.    The conspiracy between Cigna and Viant caused Plaintiffs to be underpaid tens

of millions, or more, of dollars while Cigna was unjustly enriched by this amount and kicked back a portion of the illicit proceeds to Viant to reward them for their participation in the conspiracy.

### V. Breach of Oral *and/or Implied Contract*
#### On Behalf Plaintiffs and the Class Against Cigna

315.    Plaintiffs re-allege and incorporate the General and Class action allegations above, as though such allegations were fully stated herein.

316.    Plaintiffs bring this Count under the Federal and State common law cause of action for Breach of Oral and/or Implied Contract.

317.    Based on the facts alleged *supra*, including Cigna verifying insurance coverage to Plaintiffs through detailed calls, verifying/stating the payment rate Plaintiffs would receive relative to the UCR and/or billed charges through detailed calls, the Plaintiffs and Cigna entered into enforceable oral and/or implied contracts whereby the Plaintiffs would provide IOP treatment and would be paid as agreed.

318.    As described above in the General Allegations and Class Action Allegation, numerous oral representations were made by Cigna to Plaintiff and there were continued actions and course of dealings such that an oral and/or implied contract was formed.

319.    The detailed calls described above constitute the oral representations made between the parties. The lengthy course of conduct and dealing between the parties shows sufficient predicate that Plaintiffs and the Class relied on Cigna's prior conduct.

320.    All of the calls and representations followed an identical format and resulted in identical promises and representations by Cigna.

321.    The Plaintiffs fully and substantially complied with all their obligations formed under the oral and/or implied contract between the parties.

322.    The Plaintiffs rendered IOP treatment to Cigna's insureds at a rate agreed to between them, the UCR.

323.    At no time did the Plaintiffs breach the terms of their contracts with Cigna.

324.    Any breaches by Plaintiffs were minor and not material.

49

325.    After rendering the IOP treatment services, the Plaintiffs properly and timely invoiced Cigna for the care they provided using the appropriate authorization numbers, revenue codes, and procedure codes.

326.    Cigna breached their agreements with Plaintiffs by not paying UCR and instead sending the claims to be "negotiated" by Viant as described *supra.*

327.    Cigna's actions in employing Viant have resulted in the gross underpayment of all claims at issue in the present litigation.

328.    Breach of a contract consists of four elements: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages.

329.    As to the first element, as set forth above, detailed verification of benefits calls, including an agreement to payment at UCR were conducted between the parties. The Plaintiffs and the Class also had an extended course of dealing with Cigna wherein they reasonably could rely on their representations of payment rate and UCR.

330.    In the bargained for exchange, the Plaintiffs provided IOP services and Cigna was to pay for the services at an accurate, appropriate, UCR rate. This rate was understood by both parties to be consistent with Cigna's published definition of UCR rates.

331.    Therefore, the requisite meeting of the minds occurred, and a contract was formed between the parties.

332.    As to the second element, performance by the plaintiff or excuse for nonperformance, the Plaintiffs rendered the IOP treatment services. Only reimbursement claims for IOP treatment services that were actually rendered to patients were submitted for payment on the appropriate claim forms to Cigna.

333.    As to the third element, breach by the defendant, Cigna underpaid Plaintiffs and the Class for IOP services that were provided.

334.    The fourth element, damages, is the direct consequence of Cigna's breach. Cigna underpaid the Plaintiffs and the Class and rates demonstrably below a fair and accurate UCR rate.

335.    Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

**VI.    Promissory Estoppel**
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

336.    Plaintiffs re-allege and incorporate the General and Class action allegations above, as though such allegations were fully stated herein.

337.    Plaintiffs bring this Count under the Federal and State common law cause of action for Promissory Estoppel.

338.    The elements of promissory estoppel are (1) a clear promise, (2) reasonable reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed.

339.    Cigna made the clear promise to pay UCR for IOP services.

340.    Viant made the clear promise that it had the authority to negotiate with Plaintiffs and that its "offers" reflected the UCR for IOP services.

341.    Plaintiffs reasonably relied on the promises of both Cigna and Viant.

342.    It is Unites and Viant's promise to pay the UCR that is the specific promise that forms the basis of this promissory estoppel claim.

343.    As to the second element, reasonable reliance, there was a well-established course of conduct where Plaintiffs had been promised reimbursement at the UCR rate and had received payment at the UCR rate; therefore, reliance was reasonable.

344.    The third element, substantial detriment, is clear. Plaintiffs were greatly underpaid paid for the claims at issue here because they were paid at a fake, low "UCR." The failure to pay at a true and accurate UCR shows Plaintiffs' and the Class' substantial detriment.

345.    The fourth element, damages 'measured by the extent of the obligation assumed and not performed' is met as Plaintiffs were promised reimbursement at UCR rates for the IOP services Plaintiffs rendered, subject to any co-insurance or deductible amounts for which the patient is responsible.

346.    All IOP services at issue in this litigation were vastly underpaid.

347.    Cigna incurred the obligation to pay for IOP services at the UCR. Cigna's contract

51

with Viant and Viant's interjection into the payment process likewise bound them to this obligation.

348.    In fact, Viant never had authority to issue a payment or negotiate on behalf of the patients and Cigna underpaid every claim.

349.    As such, Plaintiffs and the Class are entitled to damages resulting from the underpayment in an amount to be proven at trial.

**VII.    Violations of RICO: 18 U.S.C. § 1962(c)**
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

350.    Plaintiffs and the Class hereby repeat and reassert the General and Class allegations as if fully set forth herein.

351.    The object of civil Racketeer Influenced and Corrupt Organizations Act (RICO) is not merely to compensate victims but to turn them into prosecutors, that is, private attorneys general, dedicated to eliminating racketeering activity. 18 U.S.C.A. § 1961 *et seq.*

352.    Plaintiffs' and the Class' RICO claim is not precluded by the McCarran–Ferguson Act, § 2(b), 15 U.S.C. § 1012(b) as "RICO is not a law that 'specifically relates to the business of insurance'" and where, as here, the claims at issue do not "invalidate, impair, or supersede" any relevant state laws regulating insurance. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). Defendants can comply with both RICO and relevant state laws governing insurance and Plaintiffs' RICO claim is not precluded.

353.    The elements of a RICO claim under 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996).

354.    Cigna and Viant acted as an "enterprise" under 18 U.S.C. § 1961(4), have engaged in acts of racketeering activity, namely violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), committing "Federal Health offenses" per 18 U.S.C. § 24 that include violations of 18 U.S.C. § 1027, 18 U.S.C. § 1343, and 18 U.S.C. § 1345.

355.    Cigna indisputably provides a "health care benefit program[13]" to its members.

356.    A "Federal health offense" is defined as "a violation, or a criminal conspiracy to violate… [18 U.S.C. §] 1027[14], section 501 of the Employee Retirement Income Security Act of 1974" section 501 of the Employee Retirement Income Security Act of 1974" 18 U.S.C. § 24.

357.    Cigna and Viant's action, as alleged *supra*, are criminal acts under 18 U.S.C. § 1027 that states, "[w]hoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published,… of any employee welfare benefit plan… makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title…shall be fined under this title, or imprisoned not more than five years, or both."

358.    Cigna, under ERISA, is required to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." (29 U.S.C. § 1133). Under ERISA, a notification of any adverse benefit determination must communicate, "in a manner calculated to be understood by the claimant ... [t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503–1(g)(1)–(g)(1)(i). The notification must also make "[r]eference to the specific plan provisions on which the determination is based," 29 C.F.R. § 2560.503–1(g)(1)(ii), and it must describe "the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 C.F.R. § 2560.503–1(g)(1)(iv).

359.    Cigna and Viant's actions, as alleged *supra*, are criminal acts under 18 U.S.C. § 1035 that makes it a crime "in any matter involving a health care benefit program" to "knowingly

---

[13] " 'health care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C.A. § 24(b).

[14] § 1027. False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974

and willfully" make "any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services." *Id.*

360.    Cigna and Viant's actions, as alleged *supra*, are criminal acts under 18 U.S.C. § 1343 that makes it a crime for:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.
> 18 U.S.C. § 1343

361.    During the initial VOB and Provider calls, the Plaintiffs and Class were lied to by Cigna's agents. When Cigna was making representations to the Plaintiffs and the Class that benefits were available and paid based on the UCR, Cigna already had in place a contract with Viant to reprice and underpay the claims when they were submitted.

362.    Cigna makes these same false representations in EOB's that are sent to Plaintiffs and patients.

363.    Cigna thus obtained the value of the Plaintiffs' and Class' services for the patients, services paid for with policy premiums, and retained those benefits illegally.

364.    Viant, based on its contract with Cigna, is paid based on the amount below the "target" that it "saves" Cigna for each claim. Viant makes false representations to the Plaintiffs as to their authority to negotiate, and the source of their "offered" payment amounts. Cigna then pays Viant the money paid to it by the plan members, money that should be used for their treatment and care, and gives the money to Viant.

365.    Viant's false representations are made by wire and US mail to the Plaintiffs, the Class, and to the individual plan members.

366.    Thus, Cigna and Viant are engaged in an illegal "kick-back" scheme where Cigna and Viant take funds given to them by plan members and retain them illegally for their own

54

benefit. The more effective the fraud, the larger the kick-back.

367.    This sort of behavior is of the exact nature and character that RICO was designed to prosecute.

368.    Plaintiffs have RICO standing to bring these claims.

369.    To allege civil RICO standing under 18 U.S.C. § 1964(c), a "plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

370.    The massive underpayment to the Plaintiffs is a clear harm to their business. The excessive balance bills that Plaintiffs are forced to issue is a clear harm to the patients as they are now owe large sums that were properly Cigna's responsibility to pay.

371.    This harm is "by reason of" the RICO violation. Without the RICO activity engaged in by Cigna and Viant, these harms would not have arisen as the Plaintiffs would have received payment at true UCR rates for IOP services.

372.    At all relevant times, Cigna and Viant were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

373.    At all relevant times, and as described in this Complaint, Cigna and Viant carried out their underpayment scheme in connection with the conduct of an association-in-fact "enterprise," within the meaning of 18 U.S.C. § 1961(4), comprised of Cigna and Viant.

374.    Cigna through the Enterprise described above and in conspiracy with Viant, undertook a fraudulent scheme to underpay Plaintiffs for the IOP services.

375.    At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of RICO, 18 U.S.C. § 1962(c).

376.    The Cigna-Viant Enterprise was at all relevant times a continuing unit involving Cigna and Viant functioning with a common purpose of underpaying for IOP services and increasing the profits the Enterprise participants and their Co-Conspirators.

377.    Throughout the class period, Cigna and Viant remained members of the Enterprise undertaking countless and nearly constant acts of mail and wire fraud for their

common purpose described above.

378.    Their fraudulent and deceptive acts further constitute criminal activity as described *supra.*

379.    The Enterprise was used to create a mechanism or vehicle by which Cigna could reduce payments to Plaintiffs and Class using a deceptive, flawed process that could not be challenged effectively, including by appeal.

380.    Through their roles in the Enterprise and the scheme, Viant benefited directly earning increased fees for every dollar they 'saved' Cigna. Every dollar 'saved' is a dollar that should have been paid and is now the responsibility of the patient in the form of a balance bill.

381.    During the Class Period, Cigna participated in the conduct of the Enterprise in order to shift the costs of IOP treatment from Cigna to Provider, the Class, and its insureds, causing Plaintiffs to be liable for the cost of treatment where patients could not bear the expense of tens of thousands of dollars in surprise balance bills.

382.    Using U.S. mail and interstate wire facilities, Cigna and Viant both provided false and misleading information to Plaintiffs, the Class, and the individual insureds to convert those withheld funds for the Enterprise's own direct and indirect financial gain, to discourage its members from using out-of-network healthcare providers, and to push out-of-network healthcare providers out of business.

383.    Through its wrongful conduct as alleged herein, Cigna, in violation of 18 U.S.C. § 1962(c), conducted and participated in the conduct of the Enterprise's affairs, directly and indirectly, through a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

384.    These acts of racketeering activity have continued throughout the Class Period to the present.

385.    Cigna and Viant acting through their officers, agents, employees and affiliates, have committed numerous predicate acts of "racketeering activity," as defined in 18 U.S.C. § 1961(5), prior to and during the Class Period, and continue to commit such predicate acts, in furtherance of their underpayment scheme.

386.    These acts include (a) mail fraud, in violation of 18 U.S.C. § 1341, and (b) wire

fraud, in violation of 18 U.S.C. § 1343. Each use of the mail or wire in furtherance of the fraudulent scheme described above is a predicate act of mail and wire fraud. These predicate acts have been described in detail *supra*.

387.    In furtherance of its underpayment scheme, Cigna, in violation of 18 U.S.C. §§ 1341, 1343, 1961 and 1962, repeatedly and regularly used the U.S. mail and interstate wire facilities to further all aspects of the intentional underpayment scheme. Each use of the mail or wire in furtherance of the scheme was a violation of the above statutes.

388.    Each such use of the U.S. mail and interstate wire facilities in furtherance of the scheme alleged in this Complaint constitutes a separate and distinct predicate act of "racketeering activity" and, collectively, constituted a "pattern of racketeering activity."

389.    The above-described pattern of racketeering activity is related because it involves the same fraudulent scheme, common persons, common claims processing practices, common results impacting common victims, and is continuous because it occurred over several years, and constitutes the usual practice of Cigna and the Enterprise, such that it amounts to and poses a threat of continued racketeering activity.

390.    Cigna's and Viant's scheme to defraud is open-ended and on-going.

391.    The direct and intended victims of the pattern of racketeering activity described previously herein are the Plaintiffs and Class, whom Cigna has underpaid for IOP services.

392.    As a result of Cigna's fraudulent scheme, Plaintiffs the Class were injured in their business or property by reason of Cigna's RICO violations because they were underpaid for IOP services rendered to Cigna's insureds.

393.    Cigna and Viant have further deprived Plaintiffs, the Class, and insureds of the knowledge necessary to discover or challenge the underpayments.

394.    Plaintiffs' and the Class' injuries were proximately caused by Cigna's and Viant's violations of 18 U.S.C. § 1962(c) because these injuries were the foreseeable, direct, intended and natural consequence of the aforementioned RICO violations (and commission of underlying predicate acts) and, but for the RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

395.    Pursuant to Section 1964(c) of RICO, 18 U.S.C. § 1964(c), Plaintiffs and the Class are entitled to recover threefold their damages, costs and attorneys' fees from Cigna and Viant and other appropriate relief.

## VIII.    Violations of Section One of the Sherman Act
*On Behalf Plaintiffs and the Class Against Cigna and Viant*

396.    Plaintiffs hereby incorporate herein by reference each of the allegations contained in the General Allegations and Class Action Allegation in the preceding paragraphs this Complaint.

397.    Beginning at least as early as January 1, 2014, and continuing through the present, Defendants and their Co-Conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C. §1.700.

398.    The combination or conspiracy alleged in this Complaint consisted of a continuing agreement, understanding or concert of action by Cigna, Viant and their other Co-Conspirators, the substantial terms of which were to create an impenetrable scheme to underpay Plaintiffs and the Class for treatment services provided nationwide and to produce artificially low rates masquerading as legitimate UCR rates for reimbursement of out-of-network IOP treatment services.

399.    The conspiracy was intended to directly affect the Plaintiffs, Class, and patients. The intent, purpose and effect of the conspiracy was to cause under-reimbursement for IOP out-of-network services, and thereby minimize payments made on such claims.

400.    Cigna and Viant have conspired and/or agreed with one another, and/or with unnamed Co-Conspirators, to unreasonably restrain trade in *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1.

401.    Cigna and Viant combined, conspired and/or agreed with its Co-Conspirators in a horizontal price fixing conspiracy that sought, and was able, to artificially lower, fix or maintain the price paid to Plaintiffs the Class by Cigna as "UCR."

402.    The above agreement and/or conspiracy to fix prices is a per se violation of Section 1 of the Sherman Act, which operates at the expense of Plaintiffs and the Class resulting

in significantly lower rates of payment for IOP services.

403.   The above agreement and conspiracy illegally restrains competition in a number of ways, including:

a.   Fixing the price of "UCR" for IOP services at levels far below the level that would exist in a truly competitive market;

b.   Accomplishing this price fixing by arbitrarily setting the UCR at an internal, arbitrarily low amount;

c.   Putting extreme additional competitive pressure on Plaintiffs and the Class to accept these fixed rates for payment;

404.   The above "price fixing" scheme has reduced the amount Plaintiffs and the Class are paid for their services to well below competitive levels.

405.   Because of the overwhelming market power that Cigna and Viant maintain in the market, a there is no way to avoid interaction with the conspiracy.

406.   Because of this conspiracy, Cigna, Viant and their Co-Conspirators reduce payments for IOP treatment services to Plaintiffs and the Class to unconscionably low levels.

407.   All of the aforementioned agreements and/or conspiracies affect interstate commerce and have resulted in antitrust injury to the Plaintiffs and the Class.

408.   Plaintiffs and Class are entitled to damages under 15 U.S.C. § 15, *et seq*.

409.   As a result of the illegal agreements and/or conspiracies, Cigna and Viant have caused the Plaintiffs and the Class to suffer financial loss by paying at fraudulent "UCR" for IOP that are set at unconscionably low and uncompetitive levels.

410.   Because of Cigna and Viant's illegal agreements and/or conspiracies, Plaintiffs and the Class have suffered and will continue to suffer financial loss and have been injured and will continue to be injured in their business of providing IOP services.

411.   Through the conspiracy, Cigna, Viant, and their Co-Conspirators have in fact caused a decrease in reimbursement or payments for out-of-network IOP services but for their anticompetitive conduct.

412.   As the result of the wrongful conduct alleged herein, Plaintiffs and the Class were

underpaid for IOP claims and incurred significant additional expenses in seeking proper payment.

413.    Cigna's members incurred liability for illegally inflated out-of-pocket payments for out-of-network IOP services than they would have paid but for Cigna, Viant, and their Co-Conspirators' anticompetitive conduct, have been injured in their business or property, and have suffered damages in an amount to be determined at trial.

414.    The conduct of Cigna, Viant, and their Co-Conspirators constitutes a violation of §1 of the Sherman Act, 15 U.S.C. §1.

415.    Plaintiffs and the Class are entitled to recover all damages and treble damages allowed under §1 of the Sherman Act against Cigna and Viant, jointly and severally, together with their costs of suit, including reasonable attorneys' fees, as well as any necessary injunctions to bar and/or abate Defendants' anticompetitive acts.

**JURY TRIAL DEMAND**

Plaintiffs, on their own behalf and on behalf of the Class, demand a jury trial for all claims so triable.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for judgment against the Defendants as follows:

1.    Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

2.    Appointing the Plaintiffs as Class Representatives for the Class;

3.    Designating Matthew M. Lavin, Esq. and Paul J. Napoli, Esq. of Napoli Shkolnik, PLLC, as counsel for the Class;

4.    For general, special, restitutionary and compensatory damages in an amount according to proof.

5.    For treble damages for those claims arising under the Federal RICO and Sherman Acts;

6.    For prejudgment interest on amounts benefits wrongfully withheld.

7.    Injunctive and equitable relief enjoining Defendants from the conduct alleged herein and/or other appropriate equitable relief;

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT

8.      Declaring that Cigna's payments were improper underpayments,

9.      Declaring that Cigna's payment methodologies were and are improper;

10.     Declaring that Viant's benefit determination and negotiation methodologies are improper;

11.     Declaring that Cigna and Viant have engaged in an illegal, prohibited, RICO enterprise;

12.     Ordering Cigna to reprocess all underpaid claims using an appropriate methodology;

13.     Ordering Cigna and Viant to provide transparency as to the methodology applied in reprocessing claims and that the methodology be approved by the Court;

14.     For attorney's fees and costs pursuant to statute;

15.     and such other and further relief as the Court may deem appropriate, including but not limited to awarding a surcharge, disgorging Defendants unjust enrichments from their wrongful conduct.


Dated: April 2, 2020                **NAPOLI SHKOLNIK, PLLC**


By:   /s/ Wendy A. Mitchell
Wendy A. Mitchell, Esq. (CA SBN 158553)
Matthew M. Lavin, Esq. (*pro hac vice forthcoming*)

*Attorneys for Plaintiffs and the Putative Class*

*PRS, et al. v. Cigna, et al.* – CLASS ACTION COMPLAINT