1  **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
   MOE KESHAVARZI, SBN 223759
2    E-Mail: mkeshavarzi@sheppardmullin.com
   DAVID DWORSKY, SBN 272167
3    E-Mail: ddworsky@sheppardmullin.com
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071
   Telephone: 213.620.1780
5  Facsimile: 213.620.1398

6  ERROL J. KING, JR. (*pro hac vice application pending*)
   Errol.King@phelps.com
7  **PHELPS DUNBAR LLP**
   II City Plaza
8  400 Convention Street, Suite 1100
   Baton Rouge, Louisiana 70802
9  Telephone:  (225) 376-0207
   Fax:  (225) 381-9197

10
   Attorneys for Defendants,
11 Viant, Inc.

12             **UNITED STATES DISTRICT COURT**

13   **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE COURTHOUSE**

14

15 | PACIFIC RECOVERY SOLUTIONS d/b/a | Case No. 5:20-cv-02251-EJD
   WESTWIND RECOVERY, MIRIAM
16 HAMIDEH PHD CLINICAL | (Hon. Edward J. Davila)
   PSYCHOLOGIST INC. d/b/a PCI
17 WESTLAKE CENTERS, BRIDGING THE | **VIANT, INC.'S NOTICE OF MOTION**
   GAPS, INC., SUMMIT ESTATE INC. d/b/a | **AND MOTION TO DISMISS PURSUANT**
18 SUMMIT ESTATE OUTPATIENT, on | **TO FED. R. CIV. P. 9(b) AND 12(b)(6);**
   behalf of themselves and all others similarly | **MEMORANDUM OF POINTS AND**
19 situated, | **AUTHORITIES**

20                Plaintiffs,

21        vs.                                | **[Fed. R. Civ. P. 9(b) and 12(b)(6)]**

22 CIGNA BEHAVIORAL HEALTH, INC., a | Complaint Filed: April 2, 2020
   Minnesota corporation, and VIANT, INC., a | Trial Date:       None Set
23 Nevada corporation,
                                              | Hearing Date:   August 6, 2020
24                Defendants.                 | Hearing Time:   9:00 a.m.
                                              | Courtroom:      4
25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on August 6, 2020, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Edward J. Davila in Courtroom 4 on the 5th Floor of the Robert F. Peckham Federal Building & United States Courthouse, located at 280 South 1st Street, San Jose, California 95113, Defendant, Viant, Inc. ("Viant"), will and hereby does move the Court for an Order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Class Action Complaint ("Complaint") filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery, et al. ("Plaintiffs"), on the following grounds:

1.    All of Plaintiffs' state law causes of action against Viant are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

2.    All of Plaintiffs' causes of action against Viant fail to state claims against Viant upon which relief can be granted.

Pursuant to L.R. 7-2(b)(3), Viant requests that the Court dismiss the Complaint in its entirety with prejudice.  This Motion is based on this Notice of Motion, Motion, and the Memorandum of Points and Authorities attached, filed concurrently herewith, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.

DATED:  June 4, 2020

By:  _____
Moe Keshavarzi
David Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA  90071
Telephone: (213) 620-1780
Fax:  (213) 620-1398

and

Errol J. King, Jr. (*pro hac vice application pending*)
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone:  (225) 376-0207
Fax:  (225) 381-9197
Attorneys for Defendant, Viant, Inc.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED .....................................1

BACKGROUND...........................................................................................................................2

I.     Procedural History............................................................................................................2

II.    Plaintiffs' Allegations .......................................................................................................2

ARGUMENT ...............................................................................................................................4

I.     Plaintiffs' State Law Claims Are Completely Preempted By ERISA, § 502. ......................4

II.    Plaintiffs' Claims Are Also Conflict Preempted By ERISA, § 514............................................5

III.   Plaintiffs' State Law And RICO Claims Are Insufficiently Pled. .........................................6

       A.     Plaintiffs Consistently Fail To Satisfy The Strictures Of Fed. R. Civ. P. 9(b)
              With Respect To The Pleading Of Their Fraud-Based Claims. ................................6

       B.     Plaintiffs Fail To State A Claim For Statutory Unfair Competition. .......................7

       C.     Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or
              Fraudulent Inducement...................................................................................................9

       D.     Plaintiffs Fail To State A Claim For Negligent Misrepresentation...........................11

       E.     Plaintiffs Fail To State A Claim For Civil Conspiracy. ...........................................12

       F.     Plaintiffs Fail To State A Claim For Promissory Estoppel. ....................................13

       G.     Plaintiffs Fail To State A Civil RICO Claim. .........................................................13

       H.     Plaintiffs Fail To State A Civil Claim Under The Sherman Act.............................17

CONCLUSION .................................................................................................................................23

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*
2019 U.S. Dist. LEXIS 168445 (C.D. Cal. June 14, 2019).........................................................8

5

*In re Aetna UCR Litigation*
6  2015 WL 3970168 (D. N.J. June 30, 2015) ...........................................................................19

7  *Anza v. Ideal Steal Supply Corp.*
547 U.S. 451 (2006) ..................................................................................................................17
8

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
9  7 Cal. 4th 503 (1994)................................................................................................................12

10  *Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................................................................10
11

12  *Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*
241 F.3d 696 (9th Cir. 2001).............................................................................................21, 22
13

*Bell Atl. Corp. v. Twombly*
14  550 U.S. 544 ..............................................................................................................................10

15  *Bias v. Wells Fargo & Co.*
942 F. Supp. 2d 915 (N.D. Cal. 2013) .....................................................................................16
16

17  *Brantley v. NBC Universal, Inc.*
675 F.3d 1192 (9th Cir. 2012)...................................................................................................20
18

19  *Cansino v. Bank of Am.*
224 Cal. App. 4th 1462 (2014)..................................................................................................11
20

21  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*
68 Cal. App. 4th 445 (1998)......................................................................................................10

22  *Cleghorn v. Blue Shield of Cal.*
408 F.3d 1222 (9th Cir. 2005)..................................................................................................4, 5
23

24  *In re Crazy Eddie Secs. Litig.*
714 F. Supp. 1285 (E.D.N.Y.1989)..........................................................................................15

25  *Daugherty v. American Honda Motor Co., Inc.*
144 Cal. App. 4th 824 (2006).....................................................................................................8
26

27  *Davilla v. Aetna Health*
542 U.S. 200..............................................................................................................................4, 5

28

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*
   523 F.3d 1116 (9th Cir.2008)................................................................21

*Diaz v. Gates*
   420 F.3d 897 (9 Cir. 2005) (en banc) ...................................................17

*Diediker v. Peelle Financial Corp*.
   60 Cal. App. 4th 288 (1997)..................................................................11

*Disney Enter., Inc. v. Vidangel, Inc.*
   2017 WL 6883685 (C.D. Cal. Aug. 10, 2017) .......................................20

*Dooley v. Crab Boat Owners Ass'n*
   2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ..........................................14

*Eastman v. Quest Diagnostics Inc.*
   2016 WL 1640465 (N.D. Cal. April 26, 2016) .......................................21

*Ellis v. J.P. Morgan Chase & Co.*
   2015 WL 78190 (N.D. Cal. January 6, 2015)*, aff'd,* 752 Fed. App'x 380 (9th
   Cir. 2018) ..............................................................................................16

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*
   2013 U.S. Dist. LEXIS 190703 (C.D. Cal. Mar. 12, 2013) .....................4

*FTC v. Advocate Health Care Network*
   841 F.3d 460 (7th Cir. 2016)..................................................................19

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*
   2013 U.S. Dist. LEXIS 53401 (C.D. Cal. Apr. 10, 2013)........................13

*Gens v. Colonia Savings, F.A.*
   2013 WL 1120503 (N.D. Cal. March 18, 2013) .....................................14

*Gilbert v. Bank of America*
   2014 WL 12644028 (N.D. Cal. Sept. 23, 2014)......................................17

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*
   352 F.3d 367 (9th Cir. 2003)..................................................................20

*Gomez v. Guthy–Renker, LLC*
   2015 WL 427004 (C.D. Cal. July 13, 2015) ..........................................17

*Gonzales v. Lloyds TSB Bank*
   532 F. Supp. 2d 1200 (C.D. Cal. June 7, 2006) ....................................12

*Hansen v. Marin Gen. Hosp.*
   2018 WL 4638606 (N.D. Cal. Sept. 24, 2018)........................................18

*Heldt v. Guardian Life Ins. Co. of Am.*
    2017 U.S. Dist. LEXIS 36490 (S.D. Cal. Mar. 13, 2017)................................5

*Hopkins v. American Home Mortgage Servicing, Inc.*
    2014 WL 580769 (N.D. Cal. Feb. 13, 2014)...........................................16

*Jacobsen v. Katzer*
    2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) ..........................................21

*Kendall v. Visa U.S.A., Inc.*
    518 F.3d 1042 (9th Cir. 2008)..........................................................18

*Khoury v. Maly's of Cal., Inc.*
    14 Cal. App. 4th 612 (1993)..............................................................8

*Kingray, Inc. v. NBA, Inc.*
    188 F. Supp. 2d 1177 (S.D. Cal. 2002) .................................................20

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*
    551 U.S. 877 (2007) ...................................................................18

*Leonard v. Metlife Ins. Co.*
    2013 U.S. Dist. LEXIS 200342 (C.D. Cal. Feb. 25, 2013) .............................5

*Mangindin v. Wash. Mut. Bank*
    637 F. Supp. 2d 700 (N.D. Cal. 2009) .................................................12

*Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*
    661 F.2d 776 (9th Cir.1981)............................................................15

*Misic v. Building Service Employees Health & Welfare Plan*
    789 F.2d 1374 (9th Cir. 1986)...........................................................4

*Morgan v. AT&T Wireless Servs., Inc.*
    177 Cal. App. 4th 1235 (2009)...........................................................9

*Moss v. Infinity Ins. Co.*
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ..............................................7, 8

*In re Musical Instruments & Equip. Antitrust Litig.*
    798 F.3d 1186 (9th Cir. 2015)..........................................................18

*Newcal Indus., Inc. v. Ikon Office Solution*
    513 F.3d 1038 (9th Cir. 2008).......................................................18, 19

*NorthBay Healthcare Group v. Kaiser Foundation Health Plan, Inc.*
    2018 WL 4096399 (N.D. Cal. August 28, 2018) .....................................22

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007) (en banc) ...............................................14

*Orcilla v. Big Sur, Inc.*
    244 Cal. App. 4th 982 (2016)...................................................................................10

*Pac. Bay Recovery*,
    12 Cal. App. 5th at 204, 215 n.6 .............................................................................13

*Paulsen v. CNF Inc.*
    559 F.3d 1061 (9th Cir. 2009)...................................................................................5

*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*
    2017 U.S. Dist. LEXIS 162863 (E.D. Cal. Sept. 29, 2017) .....................................8

*Ragland v. U.S. Bank National Assn.*
    209 Cal. App. 4th 182 (2012) ..................................................................................11

*Richardson v. Dallas R. Hall & Associates*
    1996 WL 308261 (N.D. Cal. May 23, 1996) ..........................................................15

*RJ, et al. v. Cigna Behavioral Health, Inc. et al.*
    Case No. 5:20-2255-EJD..........................................................................................23

*Saniefar v. Moore*
    2017 WL 5972747 (E.D. Cal. Dec. 1, 2017)...........................................................15

*Smith v. Ayres*
    845 F.2d 1360 (5th Cir. 1988)................................................................................15

*Smith v. City and County of San Francisco*
    225 Cal. App. 3d 38 (1990) .....................................................................................13

*Solyndra Residual Trust by and through Neilson v. Suntech Power Holdings Co., Ltd.*
    62 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................................19

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*
    171 F.3d 912 (3d Cir. 1999)....................................................................................21

*Stitt v. Citibank, N.A.*
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir. 2018)...................................................................................................................16, 17

*Sugarman v. Muddy Waters Capital LLC*
    2020 WL 633596 (N.D. Cal. Feb. 3, 2020) ...........................................................14

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*
    2017 U.S. Dist. LEXIS 167462, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017)...................9, 13

*Synopsis, Inc. v. Ubiquiti Networks, Inc.*
    313 F.Supp.3d 1056 (N.D. Cal. 2018) ...................................................................14

*Tanaka v. Univ. of Southern Cal.*
   252 F.3d 1059 (9th Cir. 2001) .................................................................19

*Texaco Inc. v. Dagher*
   547 U.S. 1 (2006) .............................................................................20

*United States v. Garrido*
   713 F.3d 985 (9th Cir. 2013) .................................................................15

*United States v. Miller*
   953 F.3d 1095 (9th Cir. 2020) ...............................................................15

*United States v. Woody's Trucking, LLC*
   2018 WL 443454 (D. Mont. Jan. 16, 2018) .................................................14

*Urenia v. Pub. Storage*
   2014 WL 5781250 (C.D. Cal. Nov. 6, 2014) ...............................................15

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
   2013 WL 12130034 (C.D. Cal. July 19, 2013) ............................................17

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
   865 F.Supp.2d 1002 (C.D. Cal. 2012) ......................................................19

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
   903 F.Supp.2d 880 (C.D. Cal. 2012) ...................................................14, 22

*Wise v. Verizon Commc'ns Inc.*
   600 F.3d 1180 (9th Cir. 2010) .................................................................6

*Woodell v. Expedia Inc.*
   2019 WL 3287896 (W.D. Wash. July 22, 2019) ...........................................16

*Yaralian v. Fastovsky*
   2016 U.S. Dist. LEXIS 17161 (C.D. Cal. Feb. 10, 2016) ...............................4, 5

<u>Statutes</u>

18 U.S.C. § 24 ..............................................................................................14

18 U.S.C. § 1341 ..........................................................................................14

18 U.S.C. § 1343 ..........................................................................................14

18 U.S.C. § 1961(1) ......................................................................................14

29 U.S.C. § 502(a) ........................................................................................6

29 U.S.C. § 1132(a) ......................................................................................6

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................*Passim*

Clayton Act § 4 (15 U.S.C. § 15) ..............................................................................17, 21

Employee Retirement Income Security Act of 1974 ............................................*Passim*

RICO, 18 U.S.C. § 1962(c) ...................................................................................*Passim*

Sherman Act § 1 (15 U.S.C. § 1) ..........................................................................*Passim*

Other Authorities

Fed. R. Civ. P. 9(b)................................................................................................*Passim*

Fed. R. Civ. P. 12(b)(6) .........................................................................................*Passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Viant, Inc. ("Viant") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery, et al., on behalf of themselves and similarly situated out-of-network behavioral health providers (collectively the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

The crux of Plaintiffs' Complaint is their allegation that the Defendants, Viant and Cigna Behavioral Health, Inc. ("Cigna"), engaged in various ways violative of state and federal law to improperly price and pay Plaintiffs for Intensive Outpatient Program treatment ("IOP") that Plaintiffs allegedly provided to patients with "health insurance policies" that were for which Cigna administered claims. Plaintiffs allege that they were always entitled to be paid at Usual, Customary and Reasonable Rates ("UCR"), and that, because their full billed charges were generally 100% of UCR, any payment less than what they billed was an underpayment not authorized by the health plans. They further allege that Viant was a participant with Cigna in a scheme to systematically underpay Plaintiffs and force them to attempt to collect from patients through balance-billing, resulting in damages alleged to be in the millions of dollars.[1]

However, each of Plaintiffs' state law causes of action is subject to dismissal because each arises under and is preempted by the Employee Retirement Income Security Act of 1974. ("ERISA"). In particular, while Plaintiffs fail to identify any of the specific "policies" at issue, at least some of the patients for whom Plaintiffs have submitted claims to Cigna for treatment (and which are presumably at issue in this case) are participants or beneficiaries in employee health benefit plans governed by ERISA—a fact which Plaintiffs have not disputed. Moreover, Plaintiffs'

---

[1]   Plaintiffs fail to note that this so-called scheme, or "grift" as they like to call it, is a legitimate, well-recognized and accepted cost-containment mechanism by which healthcare expenses can be managed, to the benefit of health plans and their participants. In fact, full-billed charges are arbitrarily established and inflated "sticker prices" that virtually no one ever pays.

own allegations make clear that they are relying on these ERISA plans as the very basis for their state law causes of action, and that each cause of action will necessarily require an interpretation of the ERISA plan terms.

But even if Plaintiffs' state law causes of action were not subject to ERISA preemption, Plaintiffs' vague approach to pleading cannot survive this Motion to Dismiss because the Complaint still fails to state any claim against Viant upon which relief can be granted. Indeed, while Plaintiffs' Complaint contains more than 415 paragraphs of allegations (including their prayers for relief), none of those allegations sets forth any specific conduct on the part of Viant that passes the requirements of Fed. R. Civ. P. 9(b), which applies to the state law claims, as well as to Plaintiffs' RICO claim. Moreover, Plaintiffs state law and RICO claims have other fatal flaws that render those claims subject to dismissal. Finally, Plaintiffs fail to plead sufficient facts to establish their claim under the Sherman Act, and as such, that claim must be dismissed along with Plaintiffs' other claims. Accordingly, and for the reasons set forth more fully below, this Motion should be granted, and Plaintiffs' Complaint should be dismissed with prejudice pursuant to Rules 9(b) and 12(b)(6). Viant also refers to, and by this reference, adopts the arguments raised by co-defendant Cigna Behavioral Health, Inc., in its separate Motion to Dismiss, filed this date.

<strong><u>BACKGROUND</u></strong>

## I.   <u>Procedural History</u>

Plaintiffs initiated this class action suit on April 2, 2020, in the San Francisco Division of this Court, against Viant and Cigna, seeking reimbursement for IOP treatment allegedly provided to Cigna's insureds under various tort and statutory theories.   In May of 2020, the matter was transferred to this Division by agreement of the parties; and on May 18, 2020, the Court ruled that this matter is related to *RJ, et al. v. Cigna Behavioral Health, Inc. et al.*, Case No. 5:20-2255-EJD.

## II.   <u>Plaintiffs' Allegations</u>

Plaintiffs allege that they treat patients suffering from mental health and/or substance abuse disorder.   [Complaint, ¶ 2]. They further allege that they provided IOP services to such patients, each of whom possessed active policies of insurance that [Cigna] sold, underwrote and/or administered.   [*Id.*]. Plaintiffs also allege that "prior to treatment, each of the Plaintiffs confirmed

with [Cigna] that the patient had active coverage and benefits for out of network IOP treatment services and the claims would be paid at a specified rate," and that "[f]or all of the claims at issue [. . . , Cigna] represented that the claims would be paid at a percentage of the Usual, Customary, and Reasonable rate ('UCR' rate)."  [*Id.* ¶ 3].  Plaintiffs allege that based on that representation, they agreed to treat Cigna's insureds and timely submitted accurate bills. [*Id.*]. Additionally, by their own admission, Plaintiffs are "out-of-network" providers and thus do not have a contractual relationship with either of the Defendants. [*Id.* ¶¶ 87, 94, 183].

Plaintiffs next proceed through a series of allegations attempting to explain the healthcare industry, UCR, and the manner in which Cigna calculates its available UCR rates.  [*Id.* ¶¶ 4–13]. They also describe the IOP services they provide to patients. [*Id.* ¶¶ 14–17]. Plaintiffs then distort what Viant and Cigna do, pursuant to the contractual relationship between them, claiming that it constitutes illegal health claim re-pricing. [*Id.* ¶¶ 18–61]. Plaintiffs also proceed through page after page of conclusory and repetitive allegations regarding what Cigna does, what Viant does, what Plaintiffs allegedly do to obtain payment, and why, in their view, Cigna and Viant engage in improper pricing.  In particular, Plaintiffs falsely represent how they are to be reimbursed, and then go on to paint all of this as part of an intentional scheme (the "grift") to harm out-of-network providers like Plaintiffs, all for Cigna's and Viant's monetary benefit.  [*Id.* ¶¶ 77–191].

Despite the foregoing, what Plaintiffs have failed to do is suggest a plausible theory explaining why Viant's and Cigna's above-board contractual arrangement to contain healthcare costs is an intentional scheme to defraud Plaintiffs. Equally significantly, Plaintiffs have failed to provide any specific facts regarding the who, what, when, where, or house of the alleged misrepresentations and fraudulent statements that supposedly led to their injuries, an essential element of their state law and RICO claims, and an absolute requirement of Fed. R. Civ. P. 9(b). They also fail, to show how Viant's and Cigna's legitimate business dealings, which resulted in the payment of every claim submitted [*id.* ¶ 79], constitute "racketeering" pursuant to RICO, or a restraint of trade, let alone a *per se* violation of the Sherman Act, when neither Plaintiffs, Viant, nor Cigna compete with each other.

1

**ARGUMENT**

2

**I.    Plaintiffs' State Law Claims Are Completely Preempted By ERISA, § 502.**

3          Section 502(a) of ERISA, 29 U.S.C. § 1132(a), sets forth the exclusive civil enforcement

4   remedies that may be available to Plaintiff as an assignee of ERISA beneficiaries. *See Misic v.*

5   *Building Service Employees Health & Welfare Plan*, 789 F.2d 1374, 1378 (9th Cir. 1986). Those

6   remedies include: (i) recovery of benefits or enforcement of benefit plan rights pursuant to §

7   502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);  (ii) "appropriate relief" for violations of ERISA § 409,

8   29 U.S.C. § 1109, pursuant to § 502(a)(2), 29 U.S.C. § 1132(a)(2); and (iii) "other appropriate

9   equitable relief" to address violations of ERISA pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3).

10         A state law claim that falls within the scope of ERISA, § 502's enforcement remedy is

11  "completely preempted." *Davilla v. Aetna Health*, 542 U.S. 200, 210, 221 (2007 "State law legal

12  duties are not independent of ERISA where interpretation of the terms of the benefit plan forms an

13  essential part of the claim, and legal liability can exist only because of the administration of ERISA-

14  regulated benefit plans." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,

15  2013 U.S. Dist. LEXIS 190703, *25 (C.D. Cal. Mar. 12, 2013). In addition, "if a state law claim is

16  identical to a right guaranteed by ERISA or merely duplicates rights and remedies available under

17  ERISA, then it is not independent of ERISA." *Yaralian v. Fastovsky*, 2016 U.S. Dist. LEXIS 17161,

18  *11–12 (C.D. Cal. Feb. 10, 2016).  Here, to the extent that Plaintiffs have valid assignments and

19  standing to sue under ERISA, their claims are completely preempted.

20         Plaintiffs' first cause of action for violation California's Unfair Competition Law, Cal. Bus.

21  & Prof. Code §§ 17200 *et seq.* (the "UCL"), is preempted because it is in effect a claim for denial

22  of ERISA benefits. Indeed, Plaintiff's UCL claim is that Viant "improperly underprice[d] out-of-

23  network IOP claims," made various misrepresentations to Plaintiffs regarding payment,

24  "prevent[ed] timely and full payment of IOP claims," and "prevent[ed] Plaintiffs […] from

25  appealing the underpayment," among other things. [*See* Complaint, ¶ 272]. As courts in this Circuit

26  have consistently recognized, injuries that derive solely from ERISA, such as a failure to pay

27  benefits, cannot be used as the injury-in-fact or economic loss for a UCL claim because those are

28  derivative claims subject to ERISA's exclusive remedies. *See Yaralian* at *19; *Cleghorn v. Blue*

*Shield of Cal.*, 408 F.3d 1222, 1227 (9th Cir. 2005). *See also Leonard v. Metlife Ins. Co.*, 2013 U.S. Dist. LEXIS 200342, *16 (C.D. Cal. Feb. 25, 2013). For these reasons, Plaintiffs' UCL claim, as well as each cause of action asserted by Plaintiffs, satisfies the two-prong test set forth in *Davila* for complete preemption.

Plaintiffs' second, third, and fourth causes of action — all of which are allegedly based on both state and federal common law and include Viant — attempt to allege claims of intentional misrepresentation/fraudulent inducement, negligent misrepresentation, and civil conspiracy; however, each of these claims is premised upon and includes allegations that Plaintiffs suffered damages arising from the underpayment of claims. [*See* Complaint, ¶¶ 294, 301, 314].  As such, these claims are also preempted by ERISA.

Plaintiffs' sixth cause of action for promissory estoppel is preempted for the same reason: any obligation to pay arises from the terms of the ERISA plans at issue. In their sixth cause of action, Plaintiffs assert a promissory estoppel claim against Cigna based on its alleged promises to pay UCR for IOP services, and against Viant based on its allegedly "clear promise that it had the authority to negotiate with Plaintiffs and that its 'offers' reflected the UCR for IOP services." [Complaint, ¶ 339]. Courts have held that ERISA completely preempts such promissory estoppel claims, which are nothing more than "claim[s] for accrued benefits under [an ERISA] Plan." *Yaralian*, 2016 U.S. Dist. LEXIS 17161 at *12. In light of the foregoing, all of Plaintiffs' state law causes of action are completely preempted by ERISA, § 502(a).

## II.   Plaintiffs' Claims Are Also Conflict Preempted By ERISA, § 514.

Section 514(a) of ERISA, the conflict preemption provision, states that ERISA shall supersede "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA, § 514, 29 U.S.C. §1144(a). A state law claim "relates to" an ERISA plan if it has either a "reference to" or "connection with" such a plan. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081–82 (9th Cir. 2009). "The Ninth Circuit has employed a "relationship test" in analyzing "connection with" preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, or between employer and employee." *Heldt v. Guardian Life Ins. Co. of Am.*,

2017 U.S. Dist. LEXIS 36490, *24–25 (S.D. Cal. Mar. 13, 2017). Put simply, "where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010).

Plaintiffs' state law causes of action, no matter the underlying theory, relate to ERISA-governed employee benefit plans and are therefore conflict preempted by ERISA, § 514. Specifically, each of Plaintiffs' claims relate to the right to receive benefits under the terms of ERISA plans.  Those claims also directly affect the relationship between ERISA entities, as Plaintiffs are seeking to enforce rights and obligations under the ERISA plans and to obtain benefits pursuant to those plans by virtue of assignments from plan participants. Accordingly, to the extent that Plaintiffs' state law causes of are not completely preempted by ERISA § 502(a), they are conflict preempted by § 514 and must be dismissed pursuant to Rule 12(b)(6).

**III.**   **Plaintiffs' State Law And RICO Claims Are Insufficiently Pled.**

**A.**   **Plaintiffs Consistently Fail To Satisfy The Strictures Of Fed. R. Civ. P. 9(b) With Respect To The Pleading Of Their Fraud-Based Claims.**

It is indisputable that several of the causes of action that Plaintiffs assert against Viant allege fraudulent conduct:  Count I.b. – Violation of California Business & Professions Code §§ 17200 *et seq.*; Count II – Intentional Misrepresentation/Fraudulent Inducement; Count III. – Negligent Misrepresentation; Count IV – Civil Conspiracy; and Count VII – Violations of RICO, 18 U.S.C. §1962(c). In some, the reference to fraud is explicit, *e.g.*, Count I.b, Complaint, ¶ 272 (b)–(e), (j)-(o);  Count II, Complaint, ¶¶ 281–84, 288; Count IV, Complaint, ¶¶ 308; and Count VII, Complaint, ¶¶ 357, 359–65.  In others, the allegations incorporate by reference Plaintiffs' allegations in prior portions of the Complaint that describe the purported "scheme" or "grift" – allegations which charge Cigna and Viant with fraud, *e.g.*, Complaint, ¶¶ 23 ("systematically concealed . . . through misrepresentations"); 30-31 ("systematic cover-up"); 36–37 ("no more than a con"); 45–46 ("never told"); 55–57 ("made false representations" and "fraudulently represented"); 97 ("Cigna employs Viant to deceive"); 103 ("Cigna and Viant systematically concealed and continue to conceal"); 116 ("This representation, as Viant and Cigna well know, is false"); 224 ("false representations"); 232

1   ("nationwide enterprise of graft deliberately hidden"); and 253 ("Plaintiffs have been told varied
2   and multiple lies by Viant").

3       When all of these allegations are examined, one thing is apparent:  they are devoid of any
4   specific factual allegations that the meet the Rule 9(b) standard articulated by the Ninth Circuit.  Not
5   one individual on either end of a communication in which an alleged fraudulent statement was made
6   has been identified.  Not one date when such a communication was made has been provided.
7   Nowhere has the exact language used in such a communication been set out.  Yet, that is precisely
8   what Rule 9(b) requires – "[i]n alleging fraud or mistake, a party must state *with particularity* the
9   circumstances constituting fraud or mistake." (emphasis added).[2] As a result, all of these claims are
10  subject to dismissal with prejudice.

11      **B.     Plaintiffs Fail To State A Claim For Statutory Unfair Competition.**

12      In Count I.b. of their Complaint, Plaintiffs assert that Viant has violated the California
13  Business & Professions Code §§ 17200 *et seq*. ('UCL'). To assert a claim for violation of the UCL,
14  a plaintiff must allege facts to plausibly show that the defendant's business act or practice is "(1)
15  unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3)
16  fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp.
17  3d 1191, 1198 (N.D. Cal. 2016). A plaintiff asserting fraudulent business practices under the third
18  prong of the UCL must also satisfy the "heightened pleading requirement" of Fed. R. Civ. P. 9(b).
19  *Id*.

20      Plaintiffs' UCL claim should be dismissed because it fails to set forth with the required
21  specificity how Viant acted unlawfully, unfairly, or fraudulently, or otherwise participated in any
22  alleged misconduct that falls with the reach of the UCL. Absent from the Complaint are any
23  allegations identifying, with "reasonable particularity," the "facts supporting the statutory elements

24  _____

25  [2]   Plaintiffs, citing *People ex rel. Lockyer v. Pac. Gaming Techs.,* 82 Cal. App. 4th 699, 701 (2000),
26      a wholly inapposite case, attempt to justify their broad-brush pleading of fraud by arguing that
27      "if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck."  [*See* Complaint,
28      ¶ 287].  However, Rule 9(b) requires much more specificity than that.

1  of the violation." *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Therefore,

2  regardless of which prong Plaintiff is relying upon, its conclusory allegations are insufficient to state

3  a UCL claim against Viant under any theory.

4          "Unlawful" is defined as "an act or practice, committed pursuant to business activity, that is

5  at the same time forbidden by law." *ABC Servs. Grp., Inc. v. United Healthcare Servs.*,

6  2019 U.S. Dist. LEXIS 168445 (C.D. Cal. June 14, 2019), at *20.  To adequately allege a UCL

7  claim under the "unlawful" prong, a plaintiff must allege sufficient facts to establish an underlying

8  violation of a law. *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837

9  (2006). While Plaintiffs' Complaint cites multiple statutory provisions that Viant allegedly violated,

10  it fails to identify which of Viant's alleged acts or omissions violated which particular statutory

11  provisions or to otherwise set forth facts demonstrating how Viant's conduct violated such

12  provisions. Courts have previously found that allegations very similar to those asserted by Plaintiffs

13  in the instant case "are not sufficient to support a claim that Defendants engaged in practices

14  forbidden by law." *ABC Servs. Grp., Inc.*, 2019 U.S. Dist. LEXIS 168445 at *21. Without any facts

15  to plausibly establish a statutory violation, Plaintiffs' UCL claim cannot survive under the

16  "unlawful" prong.

17          As to the "unfair" prong, courts have noted that the term "unfair" is not clearly defined in

18  the UCL, and that California courts have articulated three possible tests for determining if an alleged

19  practice is "unfair." *Id.* at *21–22. But like the plaintiff-assignee in that case, Plaintiffs have alleged

20  no facts that would allow this Court to perform any of one those tests. In fact, Plaintiffs do not even

21  allege any specific unfair behavior. Thus, to the extent Plaintiffs are relying on an "unfair" theory

22  of liability, Plaintiffs' UCL claim should be dismissed, as it fails to explain how Defendants acted

23  unfairly. *See Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 U.S.

24  Dist. LEXIS 162863, *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 U.S. Dist.

25  LEXIS 168445 at *22–23. Moreover, to the extent Plaintiffs are proceeding under the "fraudulent"

26  prong of the UCL, Viant has already shown that Plaintiffs' Complaint provides none of the details

27  required under Rule 9(b) to assert such a claim. *See Moss*, 197 F. Supp. 3d at 1198.

28

Perhaps more importantly, Plaintiffs do not plead sufficient facts to demonstrate that they even have standing to assert a UCL claim under any one of the three prongs. "In addition to pleading facts sufficient to show that the defendant's acts constituted an unlawful, unfair, or fraudulent business practice" under § 17200, a plaintiff asserting a UCL cause of action must "also plead facts sufficient to establish he or she has standing to bring an action under the UCL as amended by Proposition 64," which requires a showing that the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1253, 1257 (2009). While Plaintiffs allege, pursuant to UCL § 17203, that they are entitled to restitution based on "the UCR […] and the alleged underpayment they received for IOP services provided,"[3] and that Viant should disgorge monies it received from Cigna, this claim does nothing more than simply restate the legal elements necessary to establish standing under the UCL. [*See* Complaint, ¶¶ 275–76]. Plaintiffs' Complaint is bereft of any facts to support these conclusory assertions or to otherwise establish Plaintiff's standing, and as such, its UCL claim fails.

Finally, because the UCL only provides for equitable relief, a plaintiff alleging a UCL cause of action must establish "that there is no adequate remedy at law available." *See Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 U.S. Dist. LEXIS 167462, *34–36, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017). To satisfy this requirement, the complaint "must set forth facts to show the [alleged] breach cannot be adequately compensated for in damages; failing this, it does not state a cause of action." *Id.* at 35. Plaintiffs contend that their legal remedies are inadequate; however, given the other causes of action that clearly allege causes of action that provide legal remedies, this assertion is baseless. Accordingly, Plaintiffs' UCL claim against Viant must be dismissed.

## C.   Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or Fraudulent Inducement.

Under California law, "[f]raud is an intentional tort," and "it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and

---

[3]   Plaintiffs' allegation, as stated, would provide them with a double recovery; apparently, they omitted the all-important "difference between" UCR and what they received.

from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998). "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." *Orcilla v. Big Sur, Inc.,* 244 Cal. App. 4th 982, 1008 (2016). Indeed, even assuming that a claimant has relied on an "actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes. If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation cannot be alleged and a fraud cause of action cannot be sustained." *Id.*

In addition to the fatal infirmities in Count II of the Complaint previously pointed out in connection with Viant's discussion of the Plaintiffs' failure to satisfy the strictures of Rule 9(b), Plaintiffs' claim for intentional misrepresentation/fraudulent inducement proceeds from the premise that Viant and Cigna, rather than attempting to control healthcare costs for the health benefit plans contracted with Cigna, as well as their members, are engaged in a concerted effort to systematically underpay claims from Plaintiffs with the intent to "push[] more expensive, out-of-network providers out of business."  [*See* Complaint, ¶ 289]. Plaintiffs further allege that "Cigna and Viant knew they were deceiving the Plaintiffs," with the result that both would receive additional monies from the scheme, depriving Plaintiffs of funds to which they were allegedly entitled. [*Id.* ¶ 288]. However, other than these conclusory allegations, Plaintiffs can point to nothing that suggests that Viant made any representation that it knew to be false with the necessary intent. Thus, under the very cases cited in Plaintiffs' Complaint, at least three of the five elements needed to establish claims of fraudulent inducement or intentional misrepresentation are missing. Further, under the *Iqbal/Twombly* plausibility standard, Plaintiffs' claims in Count II must fall because they fail to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

More plausible, because it is consistent with the actual facts, are the legitimate concerns and efforts undertaken by Cigna, employing Viant, to reign in the costs associated with providers such as Plaintiffs.  As noted previously, Plaintiffs allege that they are entitled to be paid the full amount

1   they bill for every claim submitted because they claim that they never charge anything but UCR.

2   But in reality, this is never true; the whole concept of managed care is necessary to put a check on

3   the charges that providers submit, allowing health benefit plans and their members to receive

4   treatment at more reasonable costs. Indeed, the mechanism that Plaintiffs deride as "beyond 'useful

5   business practices'" is not such at all. Viant's involvement in that process, both with respect to

6   repricing and negotiation are not intended to, and in fact, do not defraud or intentionally

7   misrepresent anything. Instead, they are intended to implement the goal of ensuring that claims

8   submitted are properly priced, and where such action is warranted, negotiated to ensure that payment

9   is appropriate once Cigna so directs.[4] That Viant receives recompense for providing such services

10  is not the result of fraud or intended to encourage fraud; it is simply part of a legitimate business

11  arrangement. Plaintiffs' attempt to convert this arrangement into something nefarious through their

12  conclusory allegations should not be allowed.  Count II of the Complaint should be dismissed with

13  prejudice pursuant to Rules 9(b) and 12(b)(6).

14          **D.      Plaintiffs Fail To State A Claim For Negligent Misrepresentation.**

15          "The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing

16  material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent

17  to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the

18  misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th

19  182, 196 (2012). "Where the defendant makes false statements, honestly believing that they are true,

20  but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a

21  form of deceit.  If defendant's belief is both honest and reasonable, the misrepresentation is innocent

22  and there is no tort liability." *Diediker v. Peelle Financial Corp.*  60 Cal. App. 4th 288, 297 (1997).

23  Moreover, "[t]he law is well established that actionable misrepresentations must pertain to past or

24  existing material facts. Statements or predictions regarding future events are deemed to be mere

25  opinions which are not actionable." *Cansino v. Bank of Am.*,  224 Cal. App. 4th 1462, 1469 (2014).

26  _____

27  [4]    Thus, Plaintiffs received exactly the amounts to which they were entitled; no damages were

28      sustained.

1    Count III of the Complaint appears to be a "tag-along" claim limited to seven paragraphs. It

2    covers the same ground as Count II.  Plaintiffs simply assert that there were representations made;

3    that they were not true based on the alleged intent of Cigna and Viant not to live up to them; and

4    that it was Cigna's and Viant's intent that Plaintiffs would rely on the representations made. Again,

5    nothing is alleged that comes close to the requirements of Rule 9(b). Moreover, Plaintiffs' assertions

6    that Cigna did not intend to pay UCR for IOP services, and that Viant did not intend to negotiate in

7    an amount equivalent to the "actual" UCR rate (which Plaintiffs fail to identify), are unsupported,

8    conclusory allegations belied by the reality – that Cigna, with Viant's assistance when called upon,

9    was seeking to control costs for the health benefit plans with which Cigna contracted.  There is

10   nothing alleged by Plaintiffs to suggest that it is not plausible that, for purposes of this Motion, that

11   Viant did not reasonably believe that the statements made to Plaintiffs were true.  Also, the alleged

12   statements point only to future actions, which are not actionable.  Under the circumstances, Count

13   III of the Complaint is subject to dismissal with prejudice.

14     **E.  Plaintiffs Fail To State A Claim For Civil Conspiracy.**

15     Plaintiffs' attempt to hold Viant liable based on the theory of civil conspiracy is equally

16   without merit. Under California law, conspiracy is not an independent cause of action, but "a legal

17   doctrine that imposes liability on persons who, although not actually committing a tort themselves,

18   share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip.*

19   *Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The elements of a civil conspiracy

20   claim include: "(1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation

21   of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a

22   conspiracy." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009). In addition,

23   the conspiring defendants must "have actual knowledge that a tort is planned and concur in the

24   tortious scheme with knowledge of its unlawful purpose." *Gonzales v. Lloyds TSB Bank*, 532 F.

25   Supp. 2d 1200, 1208 (C.D. Cal. June 7, 2006). Plaintiffs' claims of civil conspiracy are nothing

26   more than cursory, boilerplate-type allegations cast in the form of factual assertions. As the other

27   claims that allege tortious activity are unsustainable, Plaintiffs' claim for civil conspiracy lacks an

28   essential element:  an underlying tort. Accordingly, Plaintiffs have failed to state a claim against

1   Viant for civil conspiracy, and Count IV of their Complaint should be dismissed.

2         **F.**      **Plaintiffs Fail To State A Claim For Promissory Estoppel.**

3         The elements for a claim of promissory estoppel are: "(1) a promise clear and unambiguous

4   in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both

5   reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."

6   *Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, 2013 U.S. Dist. LEXIS 53401,

7   *12 (C.D. Cal. Apr. 10, 2013). Plaintiffs' claim fails at the outset, because it does not allege any

8   promise whatsoever on the part of either Viant, much less a "clear and unambiguous" promise.

9   Moreover, while Plaintiffs attempt to characterize routine verification and/or preauthorization

10   communications as "a promise to pay," courts have consistently rejected such arguments, holding

11   that "representations about the terms of certain insurance policies […] do not amount to a clear and

12   unambiguous promise by Defendants to pay for substance abuse treatment services" at the rate set

13   forth in those policies. *See Summit Estate*, 2017 U.S. Dist. LEXIS 167462 at *16–17; *see also Pac.*

14   *Bay Recovery*, 12 Cal. App. 5th at 204, 215 n.6.

15         Finally, even if Plaintiffs had alleged that Viant made a clear and unambiguous promise, its

16   claim would still fail because Plaintiffs have not pled facts to establish justifiable reliance. A "party

17   claiming estoppel must specifically plead all facts relied on to establish its elements," and "[o]ne

18   essential element is detrimental reliance by the promisee." *Smith v. City and County of San*

19   *Francisco,* 225 Cal. App. 3d 38, 48 (1990). Conclusory allegations by a plaintiff that it "reasonably

20   and justifiably relied" on alleged promises by a defendant will not suffice. *Id.* Plaintiffs nakedly

21   assert here that "there was a well-established course of conduct where Plaintiffs had been promised

22   reimbursement at the UCR rate and had received payment at the UCR rate; therefore, reliance was

23   reasonable." [Complaint, ¶ 343]. But they do not set forth a single fact to support these assertions.

24   *See Gateway Rehab*, 2013 U.S. Dist. LEXIS 53401 at *13–14. As a result, Plaintiffs fail to state a

25   claim for promissory estoppel, and their sixth cause of action must be dismissed with prejudice.

26         **G.**      **Plaintiffs Fail To State A Civil RICO Claim.**

27         Plaintiffs allege in Count VII that Defendants have engaged in conduct which violates 18

28   U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an

1   enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d

2   541, 547 (9th Cir. 2007) (en banc). For the reasons set forth below, Plaintiffs fail to allege sufficient

3   facts to establish a § 1962(c) violation on the part of Viant.

4       "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be

5   alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F.Supp.3d 1056, 1077 (N.D. Cal. 2018)

6   (citation omitted). Furthermore, "where RICO is asserted against multiple defendants, a plaintiff

7   must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network*

8   *"UCR" Rates Litig.*, 903 F.Supp.2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord*,

9   *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, *5 (N.D. Cal. Apr. 26, 2004). Plaintiffs have

10  failed to allege facts showing that Viant committed two predicate acts.

11      As an initial matter, Plaintiffs appear to allege that Defendants have engaged in a pattern of

12  racketeering activity through the commission of certain "Health Care Offenses," as defined by 18

13  U.S.C. § 24, and violations of a penal provision of ERISA, 18 U.S.C. § 1027. [*See* Complaint, ¶¶

14  354–59]. However, these offenses are not included in the statutory list of predicate acts (criminal

15  violations that can constitute "racketeering activity") found in 18 U.S.C. § 1961(1). Thus, these

16  allegations fail as a matter of law to provide a factual basis for the "racketeering activity" element

17  of Plaintiffs' RICO claim. *See Gens v. Colonia Savings, F.A.*, 2013 WL 1120503, *6 (N.D. Cal.

18  March 18, 2013) (granting motion to dismiss without leave to amend; criminal trespasses/home

19  invasions alleged as predicate acts not among offenses listed in 18 U.S.C. § 1961(1)).

20      Plaintiffs also attempt to allege mail fraud (18 U.S.C. § 1343) and wire fraud (18 U.S.C. §

21  1341) as the predicate acts to support their RICO claim. [*See* Complaint, ¶¶ 354, 377, 386]. Both

22  mail and wire fraud have four essential elements, which must be pleaded in conformity with Rule

23  9(b): "(1) a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were

24  material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific

25  intent to deceive or defraud." *United States v. Woody's Trucking, LLC*, 2018 WL 443454, * (D.

26  Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997–99 (9th Cir. 2003)). *See*

27  *also Sugarman v. Muddy Waters Capital LLC*, 2020 WL 633596, *4 (N.D. Cal. Feb. 3, 2020). As

28  to the fourth element, the Ninth Circuit recently clarified that, to be guilty of mail or wire fraud, "a

defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) (emphasis in original). Additionally, the mail and wire fraud statues both include an "interstate nexus" requirement; in the case of mail fraud, this element is satisfied by the use of the United States postal service. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). "A claim for wire fraud, however, requires that wire communication cross state lines." *Richardson v. Dallas R. Hall & Associates*, 1996 WL 308261, *2 (N.D. Cal. May 23, 1996). *See also United States v. Garrido*, 713 F.3d 985, 998 (9th Cir. 2013).

Here, Plaintiffs' conclusory allegations of mail and wire fraud fail at the outset because, as discussed above, Plaintiffs have failed to allege any fraud, by either Defendant, with the requisite particularity required under Rule 9(b). *See, e.g.*, *Urenia v. Pub. Storage*, 2014 WL 5781250, *6 (C.D. Cal. Nov. 6, 2014).[5] Plaintiffs' allegations of mail and wire fraud are also insufficient because Plaintiffs do not plead that any wire communications crossed state lines — a necessary to sustain a claim of wire fraud. Plaintiffs in this case have alleged only that (1) some communications to further the alleged scheme were transmitted by wire, and that (2) "interstate wire facilities" were used. [*See* Complaint, ¶¶ 55, 272, 360, 365, 382, 387–88]. But there is no allegation describing any particular communication sent by "wire" (fax, phone, or otherwise) that crossed a state line, which is fatal to Plaintiffs' claim. *See Saniefar v. Moore*, 2017 WL 5972747, *10 (E.D. Cal. Dec. 1, 2017) (claim dismissed where no allegation of interstate communication); *Richardson*, 1996 WL 308261, *2. Also absent from Plaintiffs' Complaint are any factual allegations demonstrating a specific intent to

---

[5] "In the context of civil RICO where the predicate acts are based on mail and wire fraud, the policies underlying Rule 9(b) are 'especially important in RICO cases because of the harm to a person's reputation that allegations of "racketeering" may do.' *In re Crazy Eddie Secs. Litig.,* 714 F. Supp. 1285, 1292–93 (E.D.N.Y.1989). The allegations of fraud must include the time, place, and specific content of the false representation. *See Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.,* 661 F.2d 776, 782 (9th Cir.1981).

1   deceive or defraud on the part of Viant. For these reasons, Plaintiffs fail to establish that Viant

2   engaged in any "pattern of racketeering activity," and as such, their RICO claim fails.

3          Plaintiffs attempt to plead the existence of an "association-in-fact" enterprise, consisting of

4   Cigna and Viant.  [*See* Complaint, ¶¶ 373–83].  To sustain a RICO claim where an "association-in-

5   fact" enterprise is concerned, Plaintiffs must allege three separate elements: "(i) a common purpose

6   of engaging in a course of conduct; (ii) evidence of an ongoing organization, formal or informal;

7   and (iii) evidence that the various associates function as a continuing unit." *Hopkins v. American*

8   *Home Mortgage Servicing, Inc.*, 2014 WL 580769, *4 (N.D. Cal. Feb. 13, 2014). The U.S. Supreme

9   Court has also recognized "the basic principle" that § 1962(c) "imposes a distinctiveness

10  requirement—that is, one must allege two distinct entities: a 'person' and an 'enterprise' that is not

11  simply the same 'person' referred to by a different name." *Bias v. Wells Fargo & Co.*, 942 F. Supp.

12  2d 915, 939 (N.D. Cal. 2013). In other words, liability under RICO "depends on showing that the

13  defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own*

14  affairs." *Bias*, 942 F.Supp.2d at 939 (emphasis in original).

15         "Where the alleged association-in-fact is formed through routine contracts for services, the

16  'common purpose' element is unmet because the entities are pursuing their own individual economic

17  interests, rather than a shared purpose." *Woodell v. Expedia Inc.*, 2019 WL 3287896, *8 (W.D.

18  Wash. July 22, 2019).[6] Here, all of Viant's actions are attributable to its performance of its service

19  contract with Cigna.  [*See* Complaint, ¶¶ 23, 38, 58, 82, 102, 122, 145, 150, 169, 237]. To the extent

20  that there was a "fraudulent common purpose" to systematically underpay for out-of-network

21  services, this purpose could not have been shared by Viant, which Plaintiffs allege (1) was not

22  informed of the terms of any subscriber agreement, and (2) could only agree to reimbursements

23  pursuant to strict pricing terms established by Cigna. [Complaint, ¶¶ 43-44, 48-49, 51, 122].  There

24

25  _____

26  [6]   *See Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x

27  99 (9th Cir. 2018); *see also Ellis v. J.P. Morgan Chase & Co.,* 2015 WL 78190, at *4 -*6 (N.D.

28  Cal. January 6, 2015)*, aff'd,* 752 Fed. App'x 380, 382 (9th Cir. 2018).

1    is simply no allegation which shows that Viant acted as a member of a racketeering "enterprise,"

2    rather than as a company conducting its own affairs.

3         "Despite the wide variety of approaches adopted by courts in interpreting the requirements

4    of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be

5    predicated on a relationship more substantial than a routine contract between a service provider and

6    its client."  *Gomez v. Guthy–Renker, LLC*, 2015 WL 427004, *11 (C.D. Cal. July 13, 2015) (listing

7    cases). The Complaint fails to allege that Viant did anything more than carry out the terms of its

8    service contract with Cigna.  On this showing, Plaintiffs' enterprise allegations fail as a matter of

9    law.  *Stitt*, 2015 WL 75237, at *5.

10        Finally, plaintiffs failed to allege two crucial elements to any RICO claim:  standing  and

11   proximate cause.  "In order to state a RICO claim, Plaintiffs must allege they suffered injury to their

12   'business or property' as a proximate result of the alleged racketeering activity."  *Gilbert v. Bank of*

13   *Am.*, 2014 WL 12644028, *4 (N.D. Cal. Sept. 23, 2014).  "Without a harm to a specific business or

14   property interest - a categorical inquiry typically determined by reference to state law - there is no

15   injury to business or property within the meaning of RICO."  *Diaz v. Gates*, 420 F.3d 897, 900 (9th

16   Cir. 2005) (en banc).  Plaintiffs have failed to allege any such injury, as they were paid appropriately.

17        "When a Court evaluates a RICO claim for proximate causation, the central question it must

18   ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steal Supply*

19   *Corp.*, 547 U.S. 451, 461 (2006).  "If Plaintiffs are unable to show that anyone relied on Defendants'

20   allegedly wrongful conduct, they cannot show that they were injured by reason of a RICO predicate

21   offense."  *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, *17 ( C.D.

22   Cal. July 19, 2013) (dismissing civil RICO claim premised on mail fraud brought by health care

23   subscribers and providers alleging underpayment of UCR rates).  Again, Plaintiffs have failed to

24   allege that they suffered any cognizable harm.

25        For all of the preceding reasons, Plaintiffs' civil RICO claims must be dismissed.

26   **H.    Plaintiffs Fail To State A Civil Claim Under The Sherman Act.**

27        Plaintiffs seek to assert the civil remedy provided by Section 4 of the Clayton Act (15 U.S.C.

28   § 15) for a violation of Section 1 of the Sherman Act (15 U.S.C. § 1).  "To establish a section 1

1    violation under the Sherman Act, a plaintiff must demonstrate . . . : (1) an agreement, conspiracy,

2    or combination among two or more persons or distinct business entities; (2) which is intended to

3    harm or unreasonably restrain competition; and (3) which actually causes injury to competition,

4    beyond the impact on the claimant, within a field of commerce in which the claimant is engaged

5    (*i.e.*, 'antitrust injury')."  *Hansen v. Marin Gen. Hosp.*, 2018 WL 4638606, *12 n.10 (N.D. Cal.

6    Sept. 24, 2018) (*quoting McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).

7    Following the Supreme Court's decision in *Twombly*, which itself involved a Section 1 claim, the

8    Ninth Circuit has clarified that to state a Section 1 claim a plaintiff must plead not simply ultimate

9    facts, but "evidentiary facts" which, if true, will prove each element of a Section 1 claim.  *Kendall*

10   *v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (emphasis supplied) (citations omitted).

11        Plaintiffs allege the conclusion (without any supporting facts) that Viant and Cigna engaged

12   in a "horizontal  price-fixing" conspiracy and do so in order to invoke the well-established doctrine

13   that such agreements are a *per se* violation of the Sherman Act.  [Complaint, ¶¶ 400, 402]. However,

14   Plaintiffs' allegations fail to support any reasonable inference that there existed a conspiracy among

15   competitors to fix the price of a given product in a given market.  Their claim of a *per se* violation

16   is thus without merit.  Moreover, their allegations similarly fail to establish a violation under a  "rule

17   of  reason analysis.  *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877, 885–

18   89 (2007).

19        Section 1 claims require the delineation of a relevant product and geographic market, and

20   typically  address  either  horizontal  (competitor)  or  vertical  (supplier-retailer)  agreements  that

21   restrain trade or injure competition within the relevant marketplace. *See In re Musical Instruments*

22   *& Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015); *Newcal Indus., Inc. v. Ikon Office*

23   *Solution*, 513 F.3d 1038, 1044–45 (9th Cir. 2008). However, Plaintiffs' allegations defining the

24   alleged antitrust conspiracy are confined to the barebones assertion that Cigna and Viant entered

25   into a "horizontal conspiracy" to "fix" the "price" paid *to* Plaintiffs "as UCR. [*See* Complaint, ¶¶

26   400–06]. These allegations lack the evidentiary detail necessary to state a cognizable, legally

27   sufficient antitrust claim.

28

1    "First and foremost, the relevant market must be a *product* market."  *Newcal Indus.,* 513

2    F.3d at 1045 (emphasis in original). Payments made by Cigna to Plaintiffs, at UCR or below rates,

3    are not "products" which Cigna, Viant, or anyone else produces for sale in a marketplace. *See FTC*

4    *v. Advocate Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016). Here, there is no allegation

5    that Plaintiffs purchased *any* "product" from either Cigna or Viant.

6         Plaintiffs also err in describing the putative conspiracy to underpay UCR as a conspiracy to

7    fix "prices." In antitrust parlance a price is something paid *for* a product; it is not a product itself.

8    *See Solyndra Residual Trust by and through Neilson v. Suntech Power Holdings Co., Ltd.*, 62 F.

9    Supp. 3d 1027, 1040–41 (N.D. Cal. 2014).  Because UCR rates are not the "price" of any "product,"

10   the "fixing" of UCR rates cannot be the premise of a "price-fixing" conspiracy.  *In re Aetna UCR*

11   *Litigation*, 2015 WL 3970168, *24 (D. N.J. June 30, 2015) (rejecting claim of a "price-fixing"

12   conspiracy, because "while labeling such conduct as an agreement to fix *price*, plaintiffs actually

13   fail to allege that the price of any product or service has been fixed or restrained." (emphasis in

14   original)).

15       Equally   significant,   Plaintiffs   completely   fail   to   define   a   geographic   market.   "The

16   geographic market extends to the area of effective competition where buyers can turn for alternative

17   sources of supply." *Tanaka v. Univ. of Southern Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). This

18   failure is problematic, given that one of the things Plaintiffs find fault with is Cigna and Viant's

19   purported failure to adjust UCR rates to the prices customary to an individual Plaintiff's geographic

20   location. [*See* Complaint, ¶¶ 39–40].  Without knowing what geographic region is at issue, there is

21   no way to determine who the other players in the relevant product market may be, the relevant

22   market price (within that region) for such product, and the level of market power the defendants

23   possess.  In addition, a plaintiff must allege that the defendant has 'market power' within that

24   market—otherwise the defendant's restraint on trade would not have a substantial anticompetitive

25   effect." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1029 (C.D.

26   Cal. 2012) (internal quotation marks in original).  The sole reference in the Complaint to "market

27   power" is the conclusory statement that "[b]ecause of the overwhelming market power that Cigna

28

1    and Viant maintain in the market, there is no way to avoid interaction with the conspiracy."

2    [Complaint, ¶ 405].  Plaintiffs provide no relevant market allegations to support this conclusion.

3        The absence of factual allegations about a relevant (product and geographic) market also

4    dooms Plaintiffs' allegation that any agreement between Cigna and Viant was a "horizontal"

5    conspiracy. A "horizontal" conspiracy to fix prices (a *per se* violation of the Sherman Act) involves

6    a conspiracy among *competitors* in the relevant marketplace; that is, it involves a conspiracy among

7    persons (with market power) who sell the same relevant product in the same geographic area. *Texaco*

8    *Inc. v. Dagher*, 547 U.S. 1, 7 (2006).  Plaintiffs present no factual allegations which even suggest

9    that Cigna and Viant are competitors, in regard to *any* product, in *any* geographic market. To the

10   contrary, the complaint alleges that Viant provides services to insurers (including Cigna), but does

11   not allege that Viant is itself a health insurer (like Cigna). [*See* Complaint, ¶¶ 18, 98]. No horizontal

12   conspiracy can be inferred from this Complaint.  *See Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d

13   1177, 1199–200 (S.D. Cal. 2002).[7]

14       Plaintiffs also fail to allege antitrust injury. Antitrust injury requires proof of "(1) unlawful

15   conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct

16   unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Glen Holly Entm't,*

17

18

19   _____

20   [7]  Indeed, the paucity of Plaintiffs' allegations makes it impossible to discern even a "vertical"

21   conspiracy to fix prices.  A "vertical" conspiracy occurs when firms operating at different levels

22   of a given product's distribution chain take a concerted action that produces anticompetitive

23   effects.  *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1998-99 (9th Cir. 2012).  Again,

24   however, it is necessary to first isolate a product and geographic market before the level of the

25   relevant market at which a firm operates can be determined.  Plaintiffs simply fail to plead

26   sufficient factual detail to permit a reasonable inference that Cigna and Viant were horizontally

27   or vertically affiliated in any relevant market, and thus fail to adequately plead a Section 1

28   violation.  *Disney Enter., Inc. v. Vidangel, Inc.*, 2017 WL 6883685 (C.D. Cal. Aug. 10, 2017).

1   *Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).[8]  Plaintiffs cannot show that they suffered

2   an antitrust injury, because they cannot show that they were either competitors or consumers of

3   products offered by United/Cigna/Viant in any relevant market, or otherwise participated in any

4   relevant market. There is no allegation that Plaintiffs purchased anything from Cigna and/or Viant

5   or competed with them in any way. Without a showing that Plaintiffs' injuries were the result of

6   transactions within a discrete marketplace, transactions in which Plaintiffs in some way participated,

7   Plaintiffs cannot show that any injury they suffered was "of the type the antitrust laws were intended

8   to prevent."  *See  Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*, 241 F.3d 696, 705 (9th

9   Cir. 2001); *Jacobsen v. Katzer*, 2006 WL 3000473, *3 (N.D. Cal. Oct. 20, 2006).

10          Finally, Plaintiffs have failed to allege antitrust standing under the § 4 of the Clayton Act,

11  15 U.S.C. § 15(a).  "The Supreme Court has interpreted that section narrowly, thereby constraining

12  the class of parties that have statutory standing to recover damages through antitrust suits." *Del.*

13  *Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir.2008) (citations

14  omitted).[9]

15          To determine whether an injury is "too remote" to allow recovery under the antitrust laws,

16  courts in the Ninth Circuit consider three factors: "(1) whether there are more direct victims of the

17  alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general;

18  (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to

19

20  _____

21  [8]   "In addition, the injured party must be a participant in the same market as the alleged malefactor.

22      In other words, the party alleging the injury must be either a consumer of the alleged violator's

23      goods or services or a competitor of the alleged violator in the restrained market." *Eastman v.*

24      *Quest Diagnostics Inc.*, 2016 WL 1640465, *6 (N.D. Cal. April 26, 2016).

25  [9]   As this suggests, the antitrust standing requirement addresses the same issues as the RICO

26      standing requirement, and (like RICO standing) precludes suit by a plaintiff whose injury is too

27      remote from the alleged antitrust violation.  *Steamfitters Local Union No. 420 Welfare Fund v.*

28      *Philip Morris, Inc.*, 171 F.3d 912, 921 (3d Cir. 1999).

1   defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules

2   apportioning damages to obviate the risk of multiple recoveries." *Ass'n. of Wash. Publ. Hosp. Dists.*

3   *v. Philip Morris Inc.*, 241 F.3d at 701; *see also NorthBay Healthcare Group v. Kaiser Foundation*

4   *Health Plan, Inc.*, 2018 WL 4096399, *6 (N.D. Cal. August 28, 2018).

5          These principles have previously been applied by the Central District of California, in a case

6   involving claims of underpayment of UCR rates, to the conclusion that medical providers lack

7   antitrust standing to assert such claims:

8          Applying this three-factor test, it is plain that the Provider and Association Plaintiffs
           cannot establish antitrust standing. First, there exist more direct victims in the form
9          of the Subscribers. Without the under-reimbursements to the Subscribers, the
           Providers would not have encountered difficulty in collecting a usual, customary,
10         and reasonable rate for services rendered to their Subscriber-patients. In other words,
           there is no "direct link" between the harm the Provider Plaintiffs suffered and
11         Defendants' alleged misconduct, which is entirely derivate of the injury inflicted on
           the Subscribers. . . .  In sum, because the harm suffered by the Provider and
12         Association Plaintiffs merely flows from the misfortunes visited upon the
           Subscribers by WellPoint and the Insurer Conspirators' acts, the proximate cause
13         requirement is not met.

14                                          * * * * *

15         Second, ascertaining the Provider and Association Plaintiffs' damages attributable to
           WellPoint's wrongful conduct would entail considerable speculation regarding how
16         the Subscribers would have behaved had WellPoint accurately disclosed its ONS
           reimbursement metrics, including whether a subscriber would have selected a
17         different ONS provider or an in-network provider, or would have agreed to pay the
           balance had they been informed of the lower ONS reimbursement figures upfront.
18         Finally, the potential for duplicative recovery weighs against standing given that the
           Subscriber Plaintiffs' causes of action for breach of contract and nonpayment of
19         benefits under ERISA section 1132(a)(1)(B) seek recovery for the same under-
           reimbursements.

20         *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 902 (C.D.

21   Cal. 2012).  The same analysis applies here.  Neither Cigna nor Viant has any contract *with Plaintiffs*

22   under which UCR payments are owed.  Complaint, ¶¶ 6, 21, 87, 183.  Rather, whether Cigna is

23   obligated to pay UCR is determined by the terms of the subscribers 'policies.[10]  Thus, any

24

25   _____

26   [10]  This analysis of course assumes that the policies are the relevant "product" for purposes of

27         determining antitrust standing.  As discussed *supra*, the complaint fails to even suggest the

28         existence of any other discernible "product."

1   underpayment which Plaintiffs may receive is an injury entirely derivative of the more direct injury

2   (the putative breach of contractual or ERISA obligations) to the subscribers.  Moreover, the same

3   uncertainty that existed in *In re Wellpoint* regarding what subscribers would have done had they

4   been advised in advance of the specific UCR rates Cigna would pay (seek a different provider, agree

5   to nonetheless pay the balance, *etc.*) exists here.  Finally,  the subscribers in this case are not only

6   capable of asserting breach of contract and ERISA claims based upon this alleged underpayment of

7   UCR rates, but they have in fact have done so, in a separate lawsuit currently pending in this Court.[11]

8   Plaintiffs lack antitrust standing.

9           For all of the preceding reasons, Plaintiffs' Sherman Act claim must be dismissed.

10                                                   **CONCLUSION**

11          For the foregoing reasons, Defendant Viant, Inc. respectfully requests that this Court grant

12   its Motion and dismiss Plaintiff's Complaint in its entirety.

13   DATED:  June 4, 2020

14

15                               By: _____

16                                   Moe Keshavarzi
                                     David Dworsky
17                                   Sheppard Mullin
                                     333 South Hope Street, 43rd Floor
18                                   Los Angeles, CA  90071
                                     Telephone: (213) 620-1780
19                                   Fax:  (213) 620-1398

20                                   and

21                                   Errol J. King, Jr. (*pro hac vice application pending*)
                                     Phelps Dunbar LLP
22                                   II City Plaza
                                     400 Convention Street, Suite 1100
23                                   Baton Rouge, Louisiana 70802
                                     Telephone:  (225) 376-0207
24                                   Fax:  (225) 381-9197
                                     Attorneys for Defendant, Viant, Inc.

25   _____

26   [11]  *R.J., as the representative of her beneficiary son, and on behalf of all others similarly situated*

27         *v. Cigna Behavioral Health, Inc.*, Civil Action No. 5:20-cv-02255-NC in the United States

28         District Court for the Northern District of California.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 333 South Hope Street, 43rd Floor, Los Angeles, CA 90071-1422.

On June 4, 2020, I served true copies of the following document(s) described as **VIANT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Matthew M. Lavin, Esq.<br>Wendy A. Mitchell, Esq.<br>**NAPÓLI SHKOLNIK PLLC**<br>5757 W. Century Park East Blvd.<br>Suite 680<br>Los Angeles, CA  90045<br>Tel:  (212) 397-1000<br>Fax:  (212) 843-7603 | William P. Donovan, Jr, Esq.<br>**MCDERMOTT WILL & EMERY LLP**<br>2049 Century Park East, Suite 3200<br>Los Angeles, CA  90067-3206<br>Tel:  (310 )277 4110<br>Fax:  (310) 277 4730<br>Email:  wdonovan@mwe.com |
| Attorneys for Plaintiff and Putative Class RJ | Attorneys for Defendant<br>CIGNA BEHAVIORAL HEALTH, INC. |

Joshua B. Simon, Esq.
Warren Haskel, Esq.
Dmitriy Tishyevich, Esq.
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY  10173-1922
Tel:  (212) 547 5400
Fax:  (212) 547 5444
Email:  jsimon@mwe.com
        whaskel@mwe.com
        dtishyevich@mwe.com

Attorneys for Defendant
CIGNA BEHAVIORAL HEALTH, INC.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**BY OVERNIGHT DELIVERY:**  I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

1

1    I declare under penalty of perjury under the laws of the United States of America
2    that the foregoing is true and correct and that I am employed in the office of a member of
     the bar of this Court at whose direction the service was made.

3        Executed on June 4, 2020, at Los Angeles, California.

4

5    _____
                                    Cynthia I. Coblentz
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28