WILLIAM P. DONOVAN, JR. (SBN 155881)
**MCDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730

JOSHUA B. SIMON (admitted *pro hac vice*)
WARREN HASKEL (admitted *pro hac vice*)
DMITRIY TISHYEVICH (SBN 275766)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
340 Madison Avenue
New York, NY  10173-1922
Telephone:     +1 212 547 5400
Facsimile:     +1 212 547 5444

Attorneys for Defendant
CIGNA BEHAVIORAL HEALTH, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE CAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and all others similarly situated, | Case No.   5:20-cv-02251-EJD |
| Plaintiffs, | **CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)** |
| vs. | Date: August 6, 2020 |
| | Time: 9:00 a.m. |
| CIGNA BEHAVIORAL HEALTH, INC., a Minnesota corporation, and VIANT, INC., a Nevada corporation, | Courtroom: 4 – 5th Floor |
| | Judge: Hon. Edward J. Davila |
| Defendants. | |

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ................................................................................................................2

    I.      Plaintiffs' State-Law Claims Are Preempted By ERISA. ...............................2

          A.      Plaintiffs' Claims Are Completely Preempted. ................................2

          B.      Plaintiffs' State-Law Claims Are Conflict Preempted....................4

    II.     Plaintiffs' State-Law Claims Should Be Dismissed. .......................................5

          A.      The Contract and Promissory Estoppel Claims (Counts V and VI) Fail. ..........5

          B.      The Misrepresentation Claims (Counts II-III) Should Be Dismissed...............7

          C.      The Economic Loss Rule Bars the Misrepresentation and Promissory Estoppel Claims (Counts II-III and VI). ..........................9

          D.      The Cal. Bus. & Prof. Code § 17200 Claim (Count I) Fails............................10

          E.      The Civil Conspiracy Claim (Count IV) Should Be Dismissed. ....................10

    III.    Plaintiffs' RICO Claim Should Be Dismissed..............................................11

          A.      Plaintiffs Have Not Plausibly Alleged an Association-in-Fact Enterprise. ..........11

          B.      Plaintiffs Have Not Plausibly Alleged Predicate Acts....................................12

          C.      Plaintiffs Have Not Pled Proximate Cause. ...................................................13

    IV.    The Sherman Act Claim Should Be Dismissed. ...........................................13

          A.      Plaintiffs Lack Antitrust Standing. ................................................................13

          B.      Plaintiffs Have Not Pled a *Per Se* Horizontal Price-Fixing Violation.............14

          C.      OON Reimbursement Is Not a Product that Can Be Price-Fixed....................15

CONCLUSION.............................................................................................................15

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANT CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO: 5:20-CV-02251

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*,
  2020 WL 2121372 (C.D. Cal. May 4, 2020) ..................................................5

*ABC Servs. Grp., Inc. v. United HealthCare Servs., Inc.*,
  2019 WL 4137624 (C.D. Cal. June 14, 2019) ..............................................10

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ....................................................................................2, 3

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ..................................................................................10

*Ariz. v. Maricopa Cty. Med. Soc.*,
  457 U.S. 332 (1982) ....................................................................................15

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
  2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) ..................................................9

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
  2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) ...............................................6

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*,
  321 F. App'x 563 (9th Cir. 2008) ................................................................4

*Deitz v. Comcast Corp.*,
  2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ................................................8

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ....................................................................8

*Enloe Med. Ctr. v. Principal Life Ins. Co.*,
  2011 WL 6396517 (E.D. Cal. Dec. 20, 2011) ................................................6

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ....................................................................10

*Flowers v. Wells Fargo Bank, N.A.*,
  2011 WL 2748650 (N.D. Cal. July 13, 2011) ................................................8

*Franco v. Conn. Gen. Life Ins. Co.*,
  818 F. Supp. 2d 792 (D.N.J. 2011), *aff'd in relevant part*, 647 F. App'x 76 (3d
  Cir. 2016) ..................................................................................................15

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Gardner v. Starkist Co.*,
 418 F. Supp. 3d 443 (N.D. Cal. 2019) .......................................................................... 12

*Gomez v. Guthy-Renker, LLC*,
 2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................................................... 12

*Hoang v. Vinh Phat Supermarket, Inc.*,
 2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ............................................................... 13

*In re Aetna UCR Litig.*,
 2015 WL 3970168 (D.N.J. June 30, 2015) .................................................................... 15

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ............................................................... 11

*In re WellPoint Out-of-Network UCR Rates Litig.*,
 903 F. Supp. 2d 880 (C.D. Cal. 2012) .......................................................................... 14

*In re Wells Fargo Ins. Mktg. & Sales Pracs. Litig.*,
 2018 WL 4945541 (C.D. Cal. June 18, 2018) ............................................................... 11

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 10

*Lewis v. Rodan & Fields, LLC*,
 2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ................................................................ 12

*Marin General Hospital v. Modesto & Empire Traction Co.*,
 581 F.3d 941 (9th Cir. 2009) .......................................................................................... 3

*Neubronner v. Milken*,
 6 F.3d 666 (9th Cir. 1993) ............................................................................................ 13

*Odom v. Microsoft Corp.*,
 486 F.3d 541 (9th Cir. 2007) ........................................................................................ 11

*Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*,
 185 F.3d 957 (9th Cir. 1999) ........................................................................................ 14

*Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*,
 228 Cal. App. 4th 644 (2014) ..................................................................................... 5, 6

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
 12 Cal. App. 5th 200 (2017) ....................................................................................... 5, 6

*Regents of the Univ. of Cal. v. Principal Fin. Grp.*,
 412 F. Supp. 2d 1037 (N.D. Cal. 2006) .......................................................................... 6

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Romero v. HP, Inc.*,
2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ...................................................1, 7

*Stockton Mortg., Inc. v. Tope*,
233 Cal. App. 4th 437 (2014) ...................................................................9

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................8

*TML Recovery, LLC v. Humana Inc.*,
2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) .......................................................5

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001) ...................................................................8

*United States v. Blinder*,
10 F.3d 1468 (9th Cir. 1993) ...................................................................12

*Wise v. Verizon Commc'ns Inc.*,
600 F.3d 1180 (9th Cir. 2010) ...................................................................4

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................10

Cal. Health & Safety Code § 1371.8 ...................................................................10

Cal. Health & Safety Code § 1374.72 ...................................................................10

Cal. Ins. Code § 10144.5 ...................................................................10

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANT CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO: 5:20-CV-02251

1

### INTRODUCTION[1]

2       The core of all of Plaintiffs' claims is that Cigna underpaid their out-of-network ("OON")

3  claims by not paying them at full billed charges.  Plaintiffs now try to back away from that theory,

4  arguing that they "*do not* allege that Cigna is required to pay 100% of providers' charges" (Opp. at 1),

5  but there is no other way to read the Complaint.  (*See* Compl. ¶ 197 (alleging that Cigna paid Plaintiff

6  Westwind's claims at "11% of billed charges," and "Westwind has not been paid **the remaining 89%**

7  of the billed amounts owed to them."); *id.* ¶¶ 204, 211, 218 (similar for the other three Plaintiffs).)

8       Plaintiffs' backpedaling is not surprising:  as Cigna explained, this theory cannot be squared

9  with the benefit plans at issue, which do not undertake to pay OON claims at full billed charges.  (Br.

10  at 6, 9-11.)  Instead, the plans limit OON reimbursement by applying Maximum Reimbursable Charge

11  ("MRC") methodologies, MRC-1 or MRC-2.  (*Id.*)  But Plaintiffs have not alleged facts to show that

12  Cigna underpaid a single claim under either methodology by using Viant to negotiate discounts.

13       As to MRC-1, Plaintiffs effectively concede that the Complaint is deficient by seeking to

14  introduce a slew of new factual assertions about "FAIR Health Benchmark" pricing for MRC-1 claims

15  in their opposition.  This obviously is not allowed.  *Romero v. HP, Inc.*, 2017 WL 386237, at *6 (N.D.

16  Cal. Jan. 27, 2017) (it is "axiomatic that the complaint may not be amended by briefs in opposition to

17  a motion to dismiss").  And those new assertions do not help Plaintifffs in any event.  The **sole** specific

18  MRC-1 claim Plaintiffs identify as allegedly underpaid due to Cigna's use of Viant was the claim for

19  services provided by Summit Estate (a named Plaintiff here) to the son of R.J., the named plaintiff in

20  the related case of *R.J. v. Cigna Behavioral Health, et al.*, Case No. 5:20-cv-2255-EJD ("*R.J.*").  But

21  in fact, Summit Estate declined to accept Viant's negotiated amount for that R.J. claim, and Cigna

22  then increased the allowed amount to the MRC-1 level.  (*R.J.*, Reply in Supp. of Cigna's Mot. to

23  Dismiss, at 1-3.)  Thus, Plaintiffs across these two cases have not identified a **single MRC-1 claim**

24  that Cigna underpaid by using Viant.

25       As for claims under MRC-2 plans, Plaintiffs have thrown in the towel altogether.  MRC-2

26  _____

27  [1] Unless otherwise noted, all emphasis has been added, and all internal quotation marks, citations, and

28  ellipses have been omitted.  References to "Compl.," "Br.," and "Opp." are to Dkts. 6, 42, and 50.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 1 -

plans do not use the FAIR Health database; instead, as Plaintiffs allege, those plans use a fee schedule "similar to that used by *Medicare*," which "is then multiplied by a percentage (110%, 150% or 200%) selected by the plan sponsor to produce the MRC." (Compl. ¶ 11.) But Plaintiffs have not identified a single MRC-2 claim that Cigna underpaid by using this Medicare-approximating methodology, nor do they explain in their opposition how they could amend their Complaint to fix this shortcoming.

Plaintiffs' other arguments in opposition are unavailing. <u>First</u>, ERISA preempts their state-law claims, because Plaintiffs themselves admit that ERISA plans govern the scope of Cigna's payment obligations and that these state-law claims cannot be resolved without the Court having to interpret plan terms. <u>Second</u>, even if not preempted, the state-law claims should still be dismissed for multiple reasons raised in Cigna's opening brief, to which Plaintiffs have no real response.

<u>Third</u>, Plaintiffs do not seriously dispute that they failed to plead predicate acts to support their RICO claim—in fact, they admit they cannot allege a predicate act without discovery, which *Twombly* forbids—and they still have not identified any allegations to transform the Cigna-Viant business relationship into an unlawful racketeering enterprise.

<u>Fourth</u>, Plaintiffs have no answer to Cigna's arguments that their *per se* horizontal price-fixing Sherman Act claim fails as a matter of law (because Cigna and Viant are not competitors and thus cannot enter into a horizontal conspiracy); that Plaintiffs lack antitrust standing because their alleged injuries are derivative of Cigna members' (who are already pursuing the same claims in another lawsuit); and because OON reimbursement is not a product that can be price-fixed. Faced with all that, Plaintiffs try to rebrand their Sherman Act count as a claim either for "horizontal market division" or for Cigna and Viant allegedly "corrupt[ing] market conditions." (Opp. at 22-23.) Neither theory is in the Complaint, though, and the latter is also not a cognizable Sherman Act claim.

For these reasons, and for additional reasons below and in Cigna's opening brief, all of Plaintiffs' claims should be dismissed.

## ARGUMENT

### I.    Plaintiffs' State-Law Claims Are Preempted By ERISA.

#### A.    Plaintiffs' Claims Are Completely Preempted.

Plaintiffs' state-law claims are completely preempted because both prongs of the *Aetna Health*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Inc. v. Davila*, 542 U.S. 200 (2004), test are met.  Plaintiffs do not dispute that they "could have brought [their] claim[s] under ERISA § 502(a)(1)(B)," thus satisfying the first *Davila* prong, *id.* at 210, because they have alleged they are "assignees of the member benefits" (Compl. ¶ 139) and the core of their lawsuit is that they were entitled to be paid at MRC-1 or MRC-2 under the plans—that is, plan benefits—but were paid less as a result of Cigna using Viant.  (Br. at 5-8.)

There also can be no dispute that there is no other independent legal duty implicated by Cigna's alleged actions, the second *Davila* prong, because Plaintiffs **concede** that the terms of the plans—not any extra-plan promises—dictate Cigna's payment obligations.  (Opp. at 8 ("Cigna states that the plan terms control its obligation to pay Plaintiffs . . . ***Plaintiffs do not dispute this***.").)  Plaintiffs' reliance on *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) is thus misplaced—because as Cigna pointed out, in *Marin* the hospital had already received "the money owed . . . under the ERISA plan"; it then sought more money based on the insurer's alleged separate promise to pay "90% of the patient's medical expenses."  *Id.* at 943, 947-48; Br. at 7.  Here, Plaintiffs have not alleged that Cigna promised to pay their claims at a specific amount separate and apart from the plan; they allege that Cigna promised to pay at plan-specified MRC levels (allegedly 70-90% or 100% of the UCR, depending on whether the patient met their deductible, Compl. ¶ 194[2]).

Plaintiffs' own allegations further confirm that there is no independent legal duty to pay—because to determine what UCR means, the Court will need to determine (at a minimum) if the plan is MRC-1 or MRC-2, and what percentage of the MRC the plan sponsor agreed to pay for OON claims. (Br. at 7-8.)  Plaintiffs' retort that they "do not ask this Court to evaluate 'UCR' as a plan term" (Opp. at 6) makes no sense; this Court ***cannot possibly*** determine if Cigna in fact paid a claim at below UCR levels without first interpreting what UCR means under the plan for that claim.  To the extent Plaintiffs have valid assignments (as they allege they do), both *Davila* prongs are met.[3]

---

[2] The fact that the amount of member cost-share (like deductibles) will also vary between different plans is another reason why Plaintiffs' claims are conflict-preempted.  *See infra* Sec. I.B; Br. at 8-9.

[3] None of the cases that Plaintiffs cite are relevant, as they all involve claims where there was no

DEFENDANT CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO: 5:20-CV-02251

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**B.    Plaintiffs' State-Law Claims Are Conflict Preempted.**

2

Plaintiffs' arguments against conflict preemption are likewise unavailing.  <u>First</u>, Plaintiffs'

3

argument that conflict preemption cannot be addressed at the Rule 12(b)(6) stage (Opp. at 5) is wrong

4

because courts routinely rule on preemption on the pleadings.  (*See* Br. at 8-9 (citing *Cal. Spine &*

5

*Neurosurgery Inst. V. JP Morgan Chase & Co*, 2019 WL 7050113, at *4 (N.D. Cal. Dec. 23, 2019)

6

and *Crosby v. Cal. Physicians' Serv.*, 279 F. Supp. 3d 1074, 1082-83 (C.D. Cal. 2018), both of which

7

dismissed on preemption grounds).)

8

<u>Second</u>, Plaintiffs' contention that their state-law claims "do not relate to ERISA" and can exist

9

outside of ERISA plans (Opp. at 6) is impossible to reconcile with their core theory that "every ***plan***

10

at issue in this litigation was obligated to pay" at "the UCR rate," and Cigna supposedly paid less than

11

plan-specified UCR amounts by using Viant.  (Compl. ¶¶ 80, 82.)  In fact, Plaintiffs concede that the

12

relief they want necessarily requires interpreting plan terms.  (Opp. at 7 ("When the Court ultimately

13

orders all HCPCS 0015 claims reprocessed . . . ***then plan terms will apply***.").)  Because the Court

14

cannot resolve Plaintiffs' state-law claims without reference to ERISA plans, conflict preemption here

15

is clear.  (Br. at 8-9; *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) ("where the

16

_____

17

allegation (unlike here) that providers had assignments from the members, where the claims did not

18

require interpreting any plan provisions, or where the court actually ***found*** preemption.  (Opp. at 4

19

(citing *Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564-

20

65 (9th Cir. 2008) (the complaint did "not mention an assignment"; claim was "completely

21

independent of the terms and meaning of an ERISA plan"; and any claim that plaintiff may have had

22

under the ERISA plan at issue had previously "been resolved or waived"); *Bay Area Surgical Mgmt.,*

23

*LLC v. Principal Life Ins. Co.*, 2012 WL 4058373, at *1, *3-4 (N.D. Cal. Sept. 14, 2012) (provider

24

alleged that insurer promised "to pay 60% of the billed price" for a procedure, without reference to

25

any plan terms); *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 849-50

26

(Ct. App. 2018) (finding implied contract claim based on Cigna's supposed history of paying claims

27

preempted, because those payments only existed as a result of Cigna's "obligat[ion] to reimburse *Plan*

28

*Members* for the cost of covered health care services") (emphasis in original).)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted.").)

**II.    Plaintiffs' State-Law Claims Should Be Dismissed.**

**A.    The Contract and Promissory Estoppel Claims (Counts V and VI) Fail.**

Cigna showed that the claims for breach of oral/implied contract and promissory estoppel cannot stand because they are premised on Cigna plan terms (MRC-1 and MRC-2), which do not require paying Plaintiffs' OON claims at full billed charges.  (Br. at 9-11, 14.)  In response, Plaintiffs notably "do not dispute" that "plan terms control [Cigna's] obligation to pay."  (Opp. at 8.)  Instead, they argue that:  (1) these claims are enforceable separate from the plans because they are based on Cigna's "preadmission verification of benefits process"; and (2) those calls support Plaintiffs' theory that they should be paid at 100% of billed charges.  (*Id.* at 7.)  Neither argument works.

First, Plaintiffs have no response to most of the cases Cigna cited, which hold that insurance verification calls in fact do not create enforceable contracts.  *See, e.g.*, *TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (dismissing contract claims because "an insurer's verification is not the same as a promise to pay"); Br. at 11-12, 14 (collecting additional cases).  That includes *ABC Services Group, Inc. v. Health Net of California, Inc.*, which rejected an identical theory to what Plaintiffs are pursuing here—that a defendant made an enforceable promise by allegedly stating during a verification call that it would "pay Plaintiff at its usual and customary rates."  2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020).

Plaintiffs try to distinguish two of the many cases Cigna cited (Opp. at 8-9), but those cases are functionally indistinguishable.  *Compare Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 646, 649 (2014) (no contract where insurer allegedly told provider that it "would be paid" for services, which somehow allegedly led provider "to believe that it would be paid either its total billed charges or the [UCR] value of its charges") *and Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216-17 (2017) (no contract where insurer allegedly promised that provider "would be paid," which allegedly "led [provider] to believe that it would be paid a portion or percentage of its total billed charges, which charges correlated with [UCR]") *with* Compl. ¶¶ 201, 203 (Cigna representative allegedly stated that a Cigna member's plan "paid 70%-

- 5 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

90% of UCR," which somehow led Plaintiff Westlake to expect to receive "100% of [its] billed charges").  The key missing link here, just as in those two cases, is anything to bridge the gap between a defendant's alleged promise to pay a claim and the provider's entirely different expectation of what that payment amount would be.  *See Pac. Bay Recovery*, 12 Cal. App. 5th at 216 (dismissing for lack of allegations to show "what exactly Blue Shield agreed to pay.").

Finally, the only two cases Plaintiffs cite to argue that pre-authorization calls may form an enforceable promise are distinguishable.  (Opp. at 8, 11 (citing *Regents of the Univ. of Cal. v. Principal Fin. Grp*., 412 F. Supp. 2d 1037 (N.D. Cal. 2006) and *Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 WL 6396517 (E.D. Cal. Dec. 20, 2011)).)  Both cases involved disputes over whether the claim at issue would be covered at all, with the courts finding that an insurer's confirmation of benefits could show an intent to cover those procedures.  *See Regents*, 412 F. Supp. 2d at 1040 (defendants refused to cover claim based on the applicable plan's "criminal activities exclusion"); *Enloe*, 2011 WL 6396517 at *2 (dispute over whether certain "trauma activation" charges "constitute[d] a covered charge under the [relevant] health plan").  But as Plaintiffs allege, all claims at issue here "are ***payment*** disputes; none of these claims are ***coverage*** disputes."  (Compl. ¶ 32 (italicized in original).)  So neither *Regents* nor *Enloe* address the question at issue here:  whether, by allegedly promising to pay a claim at some percentage of the UCR, Cigna promised to pay that claim at 100% of billed charges.  And absent allegations that Cigna actually promised to pay a particular amount (*i.e.*, 100% of billed charges) during verification calls—allegations that are nowhere in the Complaint, and that Cigna does not believe Plaintiffs could allege given the way that Cigna's representatives conduct these calls— these claims fail.  *See Orthopedic Specialists*, 228 Cal. App. 4th at 649; *Pac. Bay Recovery*, 12 Cal. App. 5th at 216; *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing where provider alleged it ***expected*** to be paid at "fully billed charges," but did not allege "how much Defendants agreed to pay when authorizing treatments").

Second, Plaintiffs are wrong in continuing to insist that Cigna's alleged promise to pay UCR "meant, and was understood by the parties, to mean 100%" of their billed charges.  (Opp. at 7.)  For claims under MRC-1 plans, nothing in the Complaint supports this theory.  This much is clear from the fact that Plaintiffs assert for the first time in their opposition that the MRC-1 amount for their OON

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  claims, when compared against the "FAIR Health Benchmark," is supposedly "equal to 100% of

2  [their] billed charges." (Opp. at 2.) None of this is in the Complaint. It is "axiomatic that the

3  complaint may not be amended by briefs in opposition to a motion to dismiss," so these new assertions

4  "cannot serve to prevent dismissal." *Romero*, 2017 WL 386237, at *6. And even if Plaintiffs could

5  add these allegations in an amended complaint—and it is hard to see how they could, since the FAIR

6  Health website prohibits using these rates for "litigation" purposes[4]—that still would not matter, since

7  Plaintiffs' theory is not that Cigna miscalculated MRC-1 amounts as compared against the FAIR

8  Health "benchmark," but that Cigna supposedly underpaid their claims by using Viant's repricing

9  services.

10      <u>Finally</u>, as noted on page 2, Plaintiffs have not identified a single MRC-2 claim that Cigna

11  underpaid by using Viant to negotiate a discount below the plan-specified Medicare-approximating

12  rate. Thus, even if Plaintiffs could show that Cigna's alleged promises to pay UCR during verification

13  calls could give rise to enforceable obligations (which they have not), Plaintiffs still have not identified

14  a single MRC-1 or MRC-2 claim that was actually underpaid under their theory.

15      **B.    The Misrepresentation Claims (Counts II-III) Should Be Dismissed.**

16      Cigna argued that these counts should be dismissed because Plaintiffs have not plausibly

17  alleged that Cigna falsely promised to pay all of their claims at 100% of billed charges, let alone with

18  specificity required by Rule 9(b). (Br. at 12-14.) Plaintiffs have no real answer to these arguments.

19      <u>First</u>, Plaintiffs now argue that they "*do not* allege that Cigna is required to pay 100% of

20  providers' charges." (Opp. at 1.) This is impossible to square with their allegations that each Plaintiff

21  expected all its claims be paid at 100% of billed charges. (Compl. ¶ 197 (alleging that Cigna paid

22  Westwind's claims at "11% of billed charges," and "Westwind has not been paid ***the remaining 89%***

23  of the billed amounts owed to them."); *id.* ¶¶ 204, 211, 218 (similar for other three named Plaintiffs).)

24  Plaintiffs plainly did assert this theory. They just have not supported it with well-pled facts.

25      <u>Second</u>, Plaintiffs argue that Cigna also falsely promised that: (1) their claims would be paid

26  at MRC; and (2) Viant would not be involved with pricing their claims. (Opp. at 9.) These fraud-

27

28  ────────────
    [4] Donovan Reply Decl., Ex. 1, at 1 (https://www.fairhealthconsumer.org/terms-of-use).

DEFENDANT CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO: 5:20-CV-02251

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

based theories require Plaintiffs to identify the "time, place, and specific content of the false representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004), as well as "the names of the persons who made the allegedly fraudulent representations." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011); Br. at 13 (citing *Edwards*). Plaintiffs' vague and general allegations that some unnamed "Cigna representative" supposedly told them that the members' claims would be covered at a percentage of the UCR and that "Viant would not be involved" (Compl. ¶¶ 195, 202, 209, 216) fall far short of these requirements.

Plaintiffs do not even argue otherwise; instead, they contend they "are not required to state the specific identity of the individual(s) making the fraudulent statements." (Opp. at 10 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).) *Swartz* is inapposite, though. It involved an alleged multi-defendant fraudulent conspiracy where it was ***undisputed*** that plaintiff had "satisfied his [Rule 9(b)] pleading burden with respect to [some of the] defendants," but where other defendants argued that the fraud allegations as to them were not specific enough. 476 F.3d at 764. This has nothing to do with Cigna's argument. The point is that where (as here) a plaintiff brings fraud-based claims against a corporation, the plaintiff must identify by name the corporate employees who made the allegedly false statements. Br. at 13; *Flowers*, 2011 WL 2748650, at *6; *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (Rule 9(b) not met where plaintiff alleged that corporate defendant falsified lab test results, but did not, among other things, "identify the SmithKline employees who performed the tests."). Plaintiffs indisputably have not done this.

Third, Plaintiffs claim that their negligent misrepresentation claim is not subject to Rule 9(b). (Opp. at 10.) "Most district courts within the Ninth Circuit have held, however, that a negligent-misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b)." *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006). Plaintiffs offer this Court no reason to depart from the majority rule.

Finally, holding Plaintiffs to their Rule 9(b) obligations is particularly important given the dubious nature of Plaintiffs' allegations. Plaintiffs here and in the companion *R.J.* case identified only ***one*** specific claim they argue was underpaid under their theory (*i.e.*, that Cigna promised to pay it at MRC but then improperly used Viant to pay it at a lower amount). But as Cigna explained in its reply

DEFENDANT CIGNA BEHAVIORAL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO: 5:20-CV-02251

1  for the *R.J.* action, Cigna actually paid that claim at the MRC amount (*R.J.* Reply at 1-3), so Plaintiffs

2  cannot plausibly allege that Cigna underpaid *any* claims in either of these cases.  And Plaintiffs'

3  contentions that Cigna's representatives supposedly promised each of the four named Plaintiffs that

4  none of their claims would be subject to Viant's negotiations likewise beggars belief, given that Cigna

5  routinely uses Viant to negotiate discounts in ordinary course, as disclosed on Cigna's website.  (Br.

6  at 18 n.11.)  If Plaintiffs persist in pursuing these hard-to-believe fraud theories, they must at the very

7  least plead them in accordance with Rule 9(b).  It is unlikely they will be able to do so.

8      **C.      The Economic Loss Rule Bars the Misrepresentation and Promissory Estoppel**

9           **Claims (Counts II-III and VI).**

10         The "economic loss rule" generally "bars tort claims for contract breaches."  (Br. at 15 (citation

11  omitted).)  Plaintiffs try to avoid this rule by contending that they are pleading their fraud and

12  promissory estoppel claims in the alternative, and that this rule only applies when there is a written

13  contract.  (Opp. at 12.)  This is unavailing.

14         <u>First</u>, there is no alternative pleading here.  Plaintiffs ***concede*** that Cigna plans—which are

15  written contracts—"control [Cigna's] obligation to pay Plaintiffs."  (*Id.* at 8.)  Regardless of whether

16  Plaintiffs' theory is that Cigna falsely promised to pay their claims at UCR, or that those claims should

17  be paid at UCR under a promissory estoppel theory, the inquiry still falls back to the plan—a

18  contract—and Plaintiffs cannot recover tort damages for this contract-based claim.  (Br. at 15-16.)

19         <u>Second</u>, Plaintiffs' written-contracts argument misses the point.  California law does not

20  distinguish between written and oral contracts, as their elements are the same.  *Stockton Mortg., Inc.*

21  *v. Tope*, 233 Cal. App. 4th 437, 453 (2014).  In any event, there ***are*** written contracts here—again, the

22  plans.  Indeed, Plaintiffs acknowledge that in seeking payment from Cigna, they submitted "claim

23  forms" as "assignees of the member benefits" under those plans.  (Compl. ¶ 139.)  And while Plaintiffs

24  complain that the economic loss rule should not apply here because they never bargained with Cigna

25  for a written contract (Opp. at 12), they accepted plan terms when they chose to treat Cigna members.

26         <u>Finally</u>, Plaintiffs argue that Cigna's reliance on *Bristol SL Holdings, Inc. v. Cigna Health Life*

27  *Ins. Co.*, 2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) is "misleading" because that case did not "find

28  that economic loss rule applied."  (Opp. at 12.)  Plaintiffs misread *Bristol*.  2020 WL 2027955, at *4

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 9 -

("Because Cigna now raises this argument, *the Court finds the economic loss rule applies*.").

**D.      The Cal. Bus. & Prof. Code § 17200 Claim (Count I) Fails.**

Plaintiffs do not dispute that this claim should be dismissed as to Plaintiff Bridging the Gaps, Inc. ("BTG") because there is no California nexus between BTG and Cigna.  (Br. at 16.)  And the three remaining Plaintiffs fare no better.  <u>First</u>, Plaintiffs do not dispute that because their Section 17200 claim sounds in fraud, it is subject to Rule 9(b).  (Br. at 16-17; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).)  Plaintiffs argue that Cigna supposedly misrepresented that it would "us[e] the MRC methodology." (Opp. at 13.)  As with their misrepresentation counts, these allegations do not meet Rule 9(b) and they cannot support this fraud-based Section 17200 claim either.

<u>Second</u>, Plaintiffs have not satisfied the "unlawful" prong of this claim.  They contend they alleged violations of California Health & Safety Code Section 1371.8 and California's mental health parity laws.  (*Id.*)  But those laws—which prohibit a plan from rescinding authorization after a provider treats a member relying on that authorization, and which impose coverage requirements for certain mental impairments (Cal. Health & Safety Code §§ 1371.8, 1374.72; Cal. Ins. Code § 10144.5)—have nothing to do with Plaintiffs' theory of injury—Cigna's use of Viant.

<u>Third</u>, Plaintiffs do not dispute that they failed to plead facts that would allow this Court to apply any of the "three possible tests for defining 'unfair' [conduct]."  (Br. at 17 (quoting *ABC Servs. Grp., Inc. v. United HealthCare Servs., Inc.*, 2019 WL 4137624, at *8 (C.D. Cal. June 14, 2019)).) Plaintiffs thus have not pled a Section 17200 claim under the "unfair" prong.  2019 WL 4137624, at *8 (dismissing for lack of alleged "facts that would allow the Court to perform any of the three tests").

**E.      The Civil Conspiracy Claim (Count IV) Should Be Dismissed.**

Plaintiffs fail to address the threshold problem with this count:  it is not a stand-alone cause of action.  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  Plaintiffs' reliance on *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) is unavailing because there, the Supreme Court of California specifically held that "[c]onspiracy is not an independent tort" and "is not a cause of action."  *Id.* at 510-11, 514 ("[Conspiracy] must be activated by the commission of an actual tort.").  Because civil conspiracy is not a freestanding claim, and because all of Plaintiffs' other claims fail, this count should be dismissed.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

III.    **Plaintiffs' RICO Claim Should Be Dismissed.**

    **A.    Plaintiffs Have Not Plausibly Alleged an Association-in-Fact Enterprise.**

As court after court in the Ninth Circuit has made clear, Plaintiffs cannot convert their dissatisfaction with Cigna's routine business arrangement with Viant to negotiate their payment into a sprawling racketeering enterprise.  (*See* Br. at 14-15 (collecting cases).)  In response, Plaintiffs cite a handful of cases in which courts found that the defendant companies' relationships could not be plausibly explained outside a fraudulent purpose.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 543, 545 (9th Cir. 2007) (Microsoft and BestBuy formed a "comprehensive strategic alliance" for the allegedly fraudulent purpose of increasing MSN users by allowing Best Buy to scan customer personal and payment information and transmit it to Microsoft without customers' knowledge or permission, and at time misrepresenting to customers why the information was collected, whereupon Microsoft began charging those customers for unauthorized services); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 981 (N.D. Cal. 2018) (defendant, working together with car manufacturer, allegedly manufactured devices that turned vehicle emission controls off during emission testing to underreport emissions; those devices "plausibly had **only** a deceitful purpose—to cheat emissions tests" and thus were "not developed . . . as part of routine business dealings."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) (same); *In re Wells Fargo Ins. Mktg. & Sales Pracs. Litig.*, 2018 WL 4945541 (C.D. Cal. June 18, 2018) (bank and insurer allegedly partnered to enroll plaintiffs in unnecessary insurance policies and charged them for premiums, all without their knowledge).

That stands in stark contrast to Plaintiffs' theory that Cigna and Viant formed a RICO enterprise to underpay their OON claims.  As even the allegations in the Complaint show, Cigna retained Viant in an attempt to negotiate prices with OON providers to help plan sponsors control the high costs of medical services and to protect plan members like Plaintiffs' patients from receiving balance bills.  (*See* Compl. ¶ 197.)  And unlike the secret arrangements alleged in cases that Plaintiffs cite, Cigna's relationship with repricing vendors like Viant and its purpose were publicly disclosed.[5]

---

[5] *See* Dkt. 42-2, Donovan Decl., Ex. 1, at 6.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Plaintiffs try to confuse the issue by quoting Cigna's website about how it may use other third parties to "manage[] a particular type of medical service[s]." (Opp. at 14.) But as the website makes clear, that section discloses that Cigna may receive compensation from third-party vendors to offset costs related to managing ***in-network*** claims for specialty providers. (*See* Dkt. 42-2, Donovan Decl., Ex. 1, at 6.) Plaintiffs similarly misconstrue the next section, which on its face relates again to the provision of in-network healthcare services through a Cigna company. (*Id*.)

In contrast, and as is obvious from the portion of the website that Plaintiffs quote, "Cigna uses a specialized vendor to negotiate discounts for large out-of-network (OON) claims" and that "an administrative fee will be charged for providing the savings program." (*Id.*) This is exactly the arrangement that Plaintiffs challenge, and as even the materials that Plaintiffs reference, this arrangement is fully disclosed. There is nothing fraudulent about it.[6] *See Gomez v. Guthy-Renker, LLC,* 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (courts have "overwhelmingly rejected attempts to characterize routine commercial relationships" of this kind "as RICO enterprises."); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("characterizing routine commercial dealing as a RICO enterprise is not enough."); *Lewis v. Rodan & Fields, LLC,* 2019 WL 978768, at *4 (N.D. Cal. Feb. 28, 2019) (dismissing where supposed enterprise was not "anything other than an ordinary business relationship").

### B.    Plaintiffs Have Not Plausibly Alleged Predicate Acts.

Plaintiffs' opposition also confirms that their RICO claim fails for the independent reason that they have failed to allege predicate RICO acts. Plaintiffs claim that Cigna and Viant violated RICO by committing "federal health offenses," but RICO does not list this as a predicate act. Plaintiffs' only retort is to argue that a federal health offense can serve as the basis for the predicate act of money laundering. (Opp. at 18.) But Plaintiffs never alleged money laundering as a predicate act, and they

---

[6] Plaintiffs also now assert that a corporation itself can be a RICO enterprise. (Opp. at 15.) Not only did Plaintiffs fail to assert this in their complaint, they are wrong on the law. *See United States v. Blinder*, 10 F.3d 1468, 1473 (9th Cir. 1993) (***groups*** of corporations may form a RICO enterprise, not individual corporations).

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

also do not and cannot explain why the money laundering provision would be relevant to this case.

Plaintiffs fare no better in pleading mail or wire fraud.  In fact, Plaintiffs do not try in earnest to argue that they met Rule 9(b)'s particularity requirements, as they cannot point to the details of a single false statement.  Instead, Plaintiffs seek leave to conduct limited discovery in hopes of uncovering such details, as they argue the Ninth Circuit permitted in *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993).  (Opp. at 19.)  But the Supreme Court was clear in *Twombly* and *Iqbal* that a plaintiff cannot undertake such a fishing expedition.  *See Hoang v. Vinh Phat Supermarket, Inc.*, 2013 WL 4095042, at *15 (E.D. Cal. Aug. 13, 2013) (declining to permit exceptions to Rule 9(b)'s particularity requirement based on cases, like *Neubronner*, that preceded *Twombly* and *Iqbal*).

In any event, *Neubronner* is inapposite:  that case dealt with insider trading claims, where the plaintiff would presumably not have access to the details of the fraud.  *See* 6 F.3d at 670-71.  Here, however, Plaintiffs claim that Cigna and Viant engaged in fraud when Cigna paid less than what they were allegedly owed based on a relationship that Cigna publicly discloses on its website.  This information is not uniquely within Cigna's possession, and if Plaintiffs believe that Cigna's representations amounted to mail or wire fraud, there is no reason why they cannot spell out the who, what, when, and how of that alleged fraud.  Plaintiffs cannot meet the standards of Rule 9(b) because they cannot plausibly plead fraud here, not because they are missing any discoverable fact.

### C.   Plaintiffs Have Not Pled Proximate Cause.

The proximate cause inquiries under RICO and the Sherman Act overlap.  (Br. at 22.)  Plaintiffs do not have Sherman Act standing (Sec. IV.A), so their RICO claim fails for that reason as well.

### IV.   The Sherman Act Claim Should Be Dismissed.

Cigna raised three deficiencies in Plaintiffs' antitrust claims:  Plaintiffs lack antitrust standing, Plaintiffs have not pled a *per se* violation, and OON reimbursements are not products that can be price-fixed.  (Br. at 22-25.)  Plaintiffs have no answer to any of this.

### A.   Plaintiffs Lack Antitrust Standing.

Plaintiffs spend three pages on antitrust standing (Opp. at 20-22) yet fail to respond to any of Cigna's arguments.  <u>First</u>, they do not address the fact that Plaintiffs' alleged injury here is "entirely derivative of the injury" allegedly suffered by Cigna plan members, whose OON claims—under

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Plaintiffs' theory—Cigna underpaid by using Viant.  (Br. at 23 (quoting *In re WellPoint Out-of-*

2    *Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 892 (C.D. Cal. 2012)).)  All that Plaintiffs muster in

3    response is that there is "no risk of duplicative recovery as Plaintiffs are the only entities entitled to

4    bring these claims."  (Opp. at 22.)  This is not true, since Plaintiffs' patients are ***already pursuing***

5    these same claims in the companion *R.J.* case.  This case is indistinguishable from *WellPoint*.

6         <u>Second</u>, Plaintiffs similarly have no answer to Cigna's argument that ascertaining their alleged

7    damages would require "considerable speculation regarding how the [members] would have behaved"

8    if, before seeing an OON provider, they were told that Cigna may use Viant to negotiate a discount.

9    (Br. at 23 (quoting *WellPoint*, 903 F. Supp. 2d at 902-03).)  The need for the Court to speculate whether

10   the member "would have selected a different [OON] provider or an in-network provider" or would

11   have done something else altogether further means that Plaintiffs lack antitrust standing.  (*Id.*)

12        <u>Third</u>, Plaintiffs appeal to the "more relaxed" standing requirements for injunctive relief (Opp.

13   at 22), but as Plaintiffs' own case says, a derivative injury cannot support an injunction either.  *Or.*

14   *Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999)

15   (union plans' claims against tobacco companies for the cost of their employees-members' medical

16   expenses were "entirely derivative of the injuries suffered by smokers," and plans thus could not

17   "establish standing for equitable relief").

18        <u>Last</u>, Plaintiffs now argue that Defendants' actions supposedly "corrupted the market" and

19   "forced many substance abuse treatment providers out of business" (Opp. at 21), but none of this is in

20   the Complaint and in any event does not change the derivative nature of Plaintiffs' alleged injuries.

21        **B.     Plaintiffs Have Not Pled a *Per Se* Horizontal Price-Fixing Violation.**

22        Cigna's argument here is straightforward:  the Supreme Court has held that only horizontal

23   price-fixing agreements are *per se* illegal; Cigna and Viant are not horizontal competitors; therefore,

24   Plaintiffs have not stated (and cannot possibly state) a *per se* price-fixing claim.  (Br. at 23-24.)

25        Plaintiffs flail in response.  Plaintiffs contend that they have "alleged a horizontal market

26   division," which they argue is a "*per se* antitrust violation."  (Opp. at 22-23.)  But the Complaint

27   alleges no such theory (which is very different from price-fixing), Plaintiffs do not explain with whom

28   Cigna supposedly carved up the market, and as Cigna already pointed out (Br. at 24), Plaintiffs have

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

not even identified the relevant market here in any event.

Plaintiffs also argue that "antitrust law is concerned with influences that corrupt market conditions" and that Defendants' supposed corruption of market conditions *ipso facto* establishes an antitrust violation. (Opp. at 23.) That is not how antitrust law works, and there is no such thing as a free-wheeling corruption-of-market-conditions claim under the Sherman Act. The only Sherman Act claim that Plaintiffs alleged in the Complaint is for horizontal price-fixing. (Compl. ¶¶ 396-415.) And as Cigna showed, Plaintiffs have not properly pled that claim.

### C.    OON Reimbursement Is Not a Product that Can Be Price-Fixed.

Plaintiffs have no response to Cigna's argument that OON reimbursement is not a product that can be price-fixed. (Br. at 23-24 (citing *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 832 (D.N.J. 2011), *aff'd in relevant part*, 647 F. App'x 76 (3d Cir. 2016); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *24 (D.N.J. June 30, 2015)).) Indeed, Plaintiffs do not address *Franco* or *Aetna UCR* at all. Instead, they contend that price-fixing "can apply" to "rates for medical services." (Opp. at 24 (citing *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332 (1982)).) That misses the point. In *Maricopa County*, doctors indisputably fixed the price of certain medical services by adopting "fee schedules [that] limit[ed] the amount that the member doctors may recover" for those services. 457 U.S. at 340. Thus, for example, the amount that a patient would pay for a lab test was subject to a specific maximum price in accordance with that fee schedule. *See id.* at 340. Plaintiffs have not alleged anything of the kind here, and they cannot; instead, their theory is that as a result of Cigna's use of Viant, Plaintiffs receive less in OON reimbursement than they would have otherwise. That is not price-fixing: unlike the per-service amount that a patient pays for (say) a lab test, OON reimbursement is ***not*** a "discrete product available for purchase and sale apart from the rest of a subscriber's insurance policy, at its own price." *Franco*, 818 F. Supp. 2d at 832.

### <u>CONCLUSION</u>

For these reasons, and those in Cigna's opening brief, Plaintiffs' claims should be dismissed.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

2       Dated: July 9, 2020                    Respectfully submitted,

3

4                                              By:    */s/ William P. Donovan, Jr.*
                                               WILLIAM P. DONOVAN, JR. (SBN 155881)
5                                              **MCDERMOTT WILL & EMERY LLP**
                                               wdonovan@mwe.com
6                                              2049 Century Park East, Suite 3200
                                               Los Angeles, CA  90067-3206
7                                              Telephone:      +1 310 277 4110
                                               Facsimile:      +1 310 277 4730
8
                                               JOSHUA B. SIMON (admitted *pro hac vice*)
9                                              WARREN HASKEL (admitted *pro hac vice*)
                                               DMITRIY TISHYEVICH (SBN 275766)
10                                             **MCDERMOTT WILL & EMERY LLP**
                                               jsimon@mwe.com
11                                             whaskel@mwe.com
                                               dtishyevich@mwe.com
12                                             340 Madison Avenue
                                               New York, NY  10173-1922
13                                             Telephone:      +1 212 547 5400
                                               Facsimile:      +1 212 547 5444
14
                                               Attorneys for Defendant
15                                             CIGNA BEHAVIORAL HEALTH, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 16 -