UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA BEHAVIORAL HEALTH, INC., et al., <br><br> Defendants. | Case No. 5:20-cv-02251-EJD <br><br> **ORDER DENYING MOTION TO CONSOLIDATE** <br><br> Re: Dkt. No. 63 |

This case is one of three related cases pending before the Court in which a Cigna entity is alleged to have reneged on its agreement to reimburse mental health provider claims at the usual, customary, and reasonable ("UCR") rates. Cigna Behavioral Health, Inc. ("Cigna") moves to consolidate this case, hereinafter referred to as "*Pacific Recovery*," with *Summit Estate, Inc. v. Cigna Health and Life Insurance Co.*, No. 20cv4697 EJD ("*Summit*"), pursuant to Federal Rule of Civil Procedure 42(a). Dkt. No. 63. Plaintiffs in the *Pacific Recovery* case, Pacific Recovery Solutions, Miriam Hamideh, Bridging the Gaps, Inc., and Summit Estate Inc. ("Plaintiffs") filed an opposition. Dkt. No. 65. Cigna filed a reply. Dkt. No. 68. The motion is scheduled for hearing on February 11, 2021. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b) and General Order 72. For the reasons stated below, the Court will deny Cigna's motion.

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
1

# I. BACKGROUND[1]

## A. *Summit*, Case No. 20cv4697

Summit Estate, Inc. ("Summit") initiated the *Summit* action against Cigna Health and Life Insurance Company ("Cigna Health and Life") in July of 2020. This lawsuit encompasses only the claims and patients that were the subject of a prior lawsuit entitled *Summit Estate v. Cigna*, No. 17cv3871 LHK, that the parties agreed to dismiss, subject to a tolling agreement, so that they could engage in efforts to reprocess medical insurance coverage claims for substance abuse treatment for ten patients. Compl. ¶¶ 4-5. The Complaint alleges that within the past two years, Summit took steps to verify available benefits for substance abuse for the patients and was advised through telephone communications that Cigna Health and Life would pay for treatment at the UCR rates. *Id.* ¶ 6. In reasonable reliance on Cigna Health and Life's representations and agreements, Summit provided services to the ten patients. *Id.* ¶ 7. Cigna Health and Life breached their agreements by refusing to pay Summit at the UCR rates and paying instead a different and significantly lower amount for treatment. *Id.* ¶ 8. Summit further alleges that at the time benefits were verified, Cigna Health and Life was using and planning on using a third-party repricing company to make unreasonably low claim payments and/or to negotiate lower claim payments after the fact. *Id.* Based on the foregoing, Summit asserts claims for "Breach of Contract-Pre-Admission Oral Agreement"; intentional misrepresentation; negligent misrepresentation; fraudulent concealment; negligent failure to disclose; promissory estoppel; and breach of implied contract.

## B. *Pacific Recovery*, Case No. 20cv2251

Plaintiffs in *Pacific Recovery* are a group of four out-of-network behavioral health care providers that provide Intensive Outpatient Program treatment ("IOP") in the United States. Compl. at 4, ¶¶ 67-70. Pacific Recovery Solutions d/b/a Westwind Recovery ("Westwind"), is a California Limited Liability Company and a duly licensed behavioral health treatment provider

---

[1] The Background is a brief summary of the allegations in the *Summit* and *Pacific Recovery* operative complaints.

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
2

with a primary place of business in Los Angeles, CA. *Id*. ¶ 68. Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers ("PCI Westlake"), is a California corporation and a duly licensed behavioral health treatment provider with a primary place of business in Westlake Village, CA. *Id*. ¶ 69. Bridging the Gaps, Inc. ("BTG"), is Virginia corporation and a duly licensed behavioral health treatment provider with a primary place of business in Winchester, VA. *Id*. ¶ 70. Summit Estate Inc. d/b/a Summit Estate Outpatient, is a California corporation and duly licensed behavioral health treatment provider with a primary place of business in Saratoga, CA 95070. *Id*. ¶ 70. They seek to represent a class of similarly situated providers against Cigna, a Minnesota corporation with its principal place of business in Eden Prairie, MN, and Viant, Inc. ("Viant"), a third-party "repricer" incorporated in Nevada with its principle place of business in Naperville, IL. *Id*. ¶¶ 1, 18, 71-72.

Prior to providing treatment to patients insured by Cigna, Plaintiffs confirmed with Cigna during an initial Verification of Benefits ("VOB") call that the patient had active coverage and benefits for out of network IOP treatment services. *Id*. ¶¶ 3, 22, 30. For all the insurance claims at issue, Cigna represented that the claims would be paid at a percentage of the UCR rates, which Cigna would calculate by using either Cigna's "Maximum Reimbursable Charge" ("MRC") I or II methodologies. *Id*. ¶¶ 9-12. Alternatively, Cigna would arrive at the UCR rates "based on rates charged by similar providers in a similar geographic area." *Id*. ¶ 12. During the VOB call, none of the Plaintiffs were told by Cigna that their claims could be subject to third-party pricing by Viant. *Id*. ¶ 36. Rather, Plaintiffs specifically asked and were told that a patient's claims were not subject to third party repricing. *Id*. ¶¶ 233-34.

In reliance upon Cigna's representations, Plaintiffs agreed to treat Cigna's insured and timely submitted bills on industry standard forms and in keeping with industry practices. *Id*. ¶¶ 12, 140, 142. Pursuant to contract, patients were responsible for paying Plaintiffs the difference between the amount Plaintiffs billed and the amount Cigna reimbursed. *Id*. ¶¶ 157, 161, 243.

Contrary to Cigna's representations, Cigna did not pay at the UCR rates. *Id*. ¶ 18. Instead, Cigna engaged Viant to negotiate reduced reimbursements with IOP treatment providers. *Id*.

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
3

Cigna sent claims to Viant via an Electronic Data Interchange ("EDI"), which included a "repriced rate" that represented the maximum that Viant was authorized to negotiate with providers. *Id.* ¶ 112. After Viant received the EDI, it sent providers a proposed payment for claims at reduced reimbursement rates. *Id.* ¶ 114. These reduced reimbursement rates are not derived from a calculation of the UCR rates, notwithstanding Viant's representations to the contrary. *Id.* ¶¶ 18, 46, 116. Nor are they set based on the insured's plan terms or language. *Id.* ¶¶ 43-44. Rather, Plaintiffs allege on information and belief that the reduced reimbursement rates represent the lowest payment amount that a Viant representative convinced a provider to accept and are "arbitrary, capricious and unreasonably low." *Id.* ¶¶ 97, 117. At no point have Cigna or Viant disclosed their pricing methodologies. *Id.* ¶¶ 175, 246. Viant only tells Plaintiffs that pricing is determined by a "proprietary database." *Id.* ¶ 254-55.

At the time Viant made its offers to Plaintiffs, it also sent a "patient advocacy letter" ("PAD" letter) to the patient, claiming to represent the patient in a negotiation to reduce the billed amount. *Id.* ¶ 118. Viant, however, does not have patient authorization to negotiate billed charges on behalf of patients. *Id.* ¶ 235.

Cigna then paid the claims at issue at the reduced Viant rate, which often resulted in patients left to pay for more than ninety percent of their care. *Id.* ¶ 19. Cigna and Viant allegedly "collude[d] to illegally withhold these out-of-network benefits" to avoid paying tens, and sometimes hundreds, of thousands of dollars per patient and to drive out-of-network providers out of business. *Id.* ¶¶ 20, 41. The amounts that should have been paid to health care providers were allegedly unjustly retained and used to pay a "kick-back" to Viant. *Id.* ¶ 20.

Every claim at issue in *Pacific Recovery* is for IOP behavioral health treatment for which Cigna failed to pay at the UCR rates. *Id.* ¶¶ 21, 164. Coverage for the underlying medical treatment is not in dispute; only the amount to be paid for the covered treatment is in dispute. *Id.* ¶ 32. Plaintiffs do not have contractual relationships with Cigna or Viant. *Id.* ¶¶ 87, 94. Plaintiffs did not agree to the reduced rates arrived at by Viant. *Id.* ¶¶ 19, 152-53, 241. When Plaintiffs or patients contacted Cigna to dispute or challenge Viant's reimbursement rates, Cigna refused to

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
4

handle or process the claim. *Id*. ¶ 120. Plaintiffs ultimately had no choice but to "balance bill" their patients for the amounts that they were owed as a result of Cigna's underpayment. *Id*. ¶ 161. If Plaintiffs did not "balance bill," Cigna would assert that Plaintiffs waived patient responsibility and therefore, Cigna had no further obligation to pay any additional amounts on claims. *Id*. ¶ 247-48, 259. For all the claims at issue in *Pacific Recovery*, Plaintiffs' patients were unable to pay Cigna's shortfall. *Id*. ¶ 181.

Westwind has treated more than 10 patients for whom claims for payment of IOP services were repriced by Viant. *Id*. ¶ 194. Viant's repricing resulted in partial payments that, in sum, averaged only 11% of billed charges. *Id*. ¶ 197. Westwind has not been paid the remaining 89% of the billed amounts owed. *Id*. Westwind estimates that it has been underpaid by at least $177,317.45. *Id*. ¶ 198.

PCI Westlake has treated more than 9 Cigna patients for whom claims for payment of IOP services were repriced by Viant. *Id.* ¶ 201. Viant's pricing resulted in partial payments that, in sum, averaged only 14% of billed charges. *Id*. ¶ 204. PCI Westlake has not been paid the remaining 86% of the billed amounts owed. *Id*. PCI Westlake estimates that it has been underpaid by at least $238,108.22. *Id*. ¶ 205.

BTG has treated more than 21 patients for whom claims for payment of IOP services were repriced by Viant. *Id*. ¶ 208. Viant's pricing resulted in partial payments that, in sum, averaged only 14% of billed charges. *Id*. ¶ 211. BTG has not been paid the remaining 86% of the billed amounts owed. *Id*. BTG estimates that it has been underpaid by at least $736,998.47. *Id*. ¶ 212.

Summit Estate Inc. d/b/a Summit Estate Outpatient has treated more than 10 Cigna patients for whom claims for payment of IOP services were repriced by Viant. *Id*. ¶ 215. Viant's pricing resulted in partial payments that, in sum, averaged only 15% of billed charges. *Id*. ¶ 218. Summit has not been paid the remaining 85% of the billed amounts owed. *Id*. Summit Estate Inc. d/b/a Summit Estate Outpatient estimates that it has been underpaid by at least $325,000.00. *Id*. ¶ 219.[2]

---

[2] The Complaint alleges that Summit Estate Inc. d/b/a Summit Estate Outpatient has been "overpaid" by at least $325,000.00. *Id*. ¶ 219. The Court assumes that "overpaid" is a

1    Based on the foregoing, Plaintiffs assert the following claims: (1) unfair and unlawful
2    business acts and practices in violation of California Business & Professions Code § 17200 against
3    Cigna (*id*. ¶¶ 261-69) and Viant (*id*. ¶¶ 270-78); (2) intentional misrepresentation and fraudulent
4    inducement against Cigna and Viant (*id*. ¶¶ 279-94); (3) negligent misrepresentation against Cigna
5    and Viant (*id*. ¶¶ 295-301); (4) civil conspiracy against Cigna and Viant (*id*. ¶¶ 302-14): (5) breach
6    of oral and/or implied contract against Cigna (*id*. ¶¶ 315-35); (6) promissory estoppel against
7    Cigna and Viant (*id*. ¶¶ 336- 49); (7) violations of the Racketeer Influenced and Corrupt
8    Organizations Act ("RICO") against Cigna and Viant (*id*. ¶¶ 350-95); and (8) violations of section
9    1 of the Sherman Act against Cigna and Viant (*id*. ¶396-415).

## II.   STANDARDS

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). District courts have broad discretion under this rule to consolidate cases pending in the same district. *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). In deciding whether consolidation is appropriate under Rule 42(a), the court must "weigh[ ] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). The party seeking consolidation bears the burden to show that consolidation is desirable. *See DMF, Inc. v. AMP Plus, Inc.*, 2019 WL 9077477, at *6 (C.D. Cal. Dec. 13, 2019).

## III.  DISCUSSION

The two suits share a common issue, *i.e.*, whether Cigna failed to abide by its agreement to pay at the UCR rates. The existence of common issues, however, does not compel consolidation. *Dodaro v. Standard Pac. Corp.*, 2009 WL 10673229, at *3 (C.D. Cal. Nov. 16, 2009). Beyond this common issue, the two cases involve significant differences in fact and law such that consolidation of the cases would be unduly prejudicial to plaintiff in *Summit*. First, although both

---

typographical error.
Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
6

1  cases involve a Summit entity[3] and a Cigna-affiliated entity, *Summit* is an individual action and
2  *Pacific Recovery* is a putative class action suit. In *Summit*, a single plaintiff healthcare provider,
3  Summit, seeks compensation for services rendered to ten patients. In *Pacific Recovery*, a group of
4  four healthcare providers collectively seek compensation for services rendered to at least sixty
5  patients and propose to represent an unknown number of "similarly situated out-of-network
6  behavioral health providers" that provide IOP in the United States. Dkt. No. 6 at 4. Thus, the two
7  suits clearly involve different provider plaintiffs and different patients. Moreover, Viant is a
8  named defendant in *Pacific Recovery*, but not in *Summit*. These differences alone suggest that
9  *Pacific Recovery* is likely to be far more expansive, expensive, and time-consuming than *Summit*,
10  which weighs against consolidation.

11  Second, the two suits involve different treatment. The *Summit* insurance claims are mainly
12  for Residential and Partial Hospitalization treatment, with only a small percentage of Intensive
13  Outpatient claims remaining because Cigna has already investigated, litigated and negotiated
14  certain Intensive Outpatient claims with Summit. Opp'n at 3. In contrast, the *Pacific Recovery*
15  insurance claims are exclusively for IOT. The differences in the parties and the services at issue
16  will impact the nature and scope of discovery such that consolidation is likely to lead to
17  inconvenience and delay for the relatively smaller *Summit* case rather than promote efficiencies.

18  Third, the two suits involve different time frames. In *Summit*, the insurance claims are for
19  treatment provided between September of 2014 and August of 2017. The complaint in *Pacific*
20  *Recovery* does not define a class period. Thus, *Summit* is confined to a relatively manageable
21  period of three years, whereas *Pacific Recovery* has no time limitation at all. A different time
22  period alone may not necessarily weigh against consolidation. *See Medina v. Mealing*, 2006 WL
23  8443382, at *2 (N.D. Cal. Feb. 2, 2006) (consolidating two cases with common questions of law

---

[3] In *Summit*, Summit Estate, Inc. is the plaintiff. In *Pacific Recovery*, Summit Estate Inc. d/b/a Summit Estate Outpatient is one of four plaintiffs. Summit Estate Inc. d/b/a Summit Estate Outpatient represents that the two entities "are, functionally, predecessor and successor entities and are distinct companies." Opp'n at 2. The management and ownership of the successor is different from the predecessor. *Id*. at 4. Further, the predecessor entity is not accredited by the Joint Commission, where as the successor is. *Id*. at 2.

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
7

1   and fact, even though the lawsuits each covered a different time period). Here, however, the
2   different time period for each case is one of several other differences between *Summit* and *Pacific*
3   *Recovery* that weigh against consolidation.

4   Fourth, although the two cases involve a number of the same legal claims, *Pacific*
5   *Recovery* includes much more expansive claims for violations of RICO, the Sherman Act, and
6   civil conspiracy. These additional claims may increase the scope of discovery and motion practice
7   in *Pacific Recovery* far beyond what is required for *Summit*. Cigna argues that the differences in
8   claims does not matter because they all rely on the same factual predicates, and further asserts that
9   the Court need find only one issue of law or fact in common to permit consolidation, citing *Power*
10  *Integrations, Inc. v. Chan-Woong Park*, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019). In
11  *Power Integrations*, however, the parties were identical and there was a substantial overlap of
12  underlying facts. Unlike *Power Integrations*, the two cases before this Court do not involve
13  identical parties or a substantial overlap of underlying facts mainly because *Pacific Recovery*
14  includes expansive claims against Viant that are not present in *Summit*. Cigna's reliance on
15  *Hutchens v. Alameda County Social Servs. Agency*, 2008 WL 927899, at *2 (N.D. Cal. Apr. 4,
16  2008) is also misplaced. In *Hutchens*, the motion to consolidate was unopposed.

17  The different procedural posture of each case also weighs against consolidation, even
18  though the two cases are at the pleading stage. This is because the parties in *Summit* were involved
19  in an earlier filed suit, engaged in settlement discussions, and then discovery, followed by
20  mediation.  Eventually the parties in *Summit* agreed to a dismissal without prejudice so that the
21  parties could attempt to negotiate a resolution. Previous versions of the *Summit* complaint have
22  already been subject to two motions to dismiss, and the operative *Summit* complaint now consists
23  of only those claims that survived. In contrast, the *Pacific Recovery* complaint is the subject
24  separate motions to dismiss by Cigna and Viant. Because *Summit* has progressed farther than
25  *Pacific Recovery*, consolidation is likely to produce  inconvenience, delay and expense to plaintiff
26  in the *Summit* case.

27  The Court recognizes that there is a potential for inconsistent judgments, particularly as to

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
8

the Summit entities' reimbursement claims for IOP treatment. Consolidation of *Summit* and *Pacific Recovery*, however, is not the answer because the Summit entities' reimbursement claims for IOP treatment represent only a small fraction of the total claims at issue in the two cases. Further, the insurance claims at issue in *Summit* are mainly for Residential and Partial Hospitalization treatment and therefore, may raise factual issues not present in *Pacific Recovery*. Thus, consolidation for all purposes is not appropriate. *See Hughes v. Experian Info. Sols., Inc.*, 2017 WL 975969, at *2 (N.D. Cal. Mar. 13, 2017) (declining to consolidate for all purposes where the merits of each plaintiff's case could potentially turn on case-specific facts).

## IV. CONCLUSION

The Cigna entities have not carried their burden of showing that consolidation of *Summit* and *Pacific Recovery* "will aid in the efficient and economic disposition of the case." *Klauber Bros., Inc. v. Forever 21 Retail, Inc.,* 2015 WL 12720307, at *2 (C.D. Cal. Apr. 9, 2015). The motion to consolidate the cases for all purposes is DENIED.

**IT IS SO ORDERED.**

Dated:  February 16, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-02251-EJD
ORDER DENYING MOTION TO CONSOLIDATE
9