1
2
3
4
5
6
7
8
9
10
11
12

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PACIFIC RECOVERY SOLUTIONS, et al.,

Plaintiffs,

v.

CIGNA BEHAVIORAL HEALTH, INC., et al.,

Defendants.

Case No. 5:20-cv-02251-EJD

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 39, 42

This case is one of three related cases pending before the Court in which a Cigna entity is alleged to have reneged on its agreement to reimburse mental health provider claims at the usual, customary, and reasonable ("UCR") rates.[1]  Presently before the Court are separate motions to dismiss brought by Defendants Cigna Behavioral Health, Inc. ("Cigna") and Viant, Inc. ("Viant"). Dkt. Nos. 39, 42.  Plaintiffs filed oppositions (Dkt. Nos. 50-51) and Defendants filed reply briefs (Dkt. Nos. 52-53).  The Court finds it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons discussed below, the Court will grant Defendants' motions to dismiss.

## I.   BACKGROUND[2]

Plaintiffs are a group of four out-of-network ("OON") behavioral health care providers that provide Intensive Outpatient Program treatment ("IOP") in the United States.  Compl. at 4, ¶¶ 67-

---

[1] The other cases are *Summit Estate, Inc. v. Cigna Health and Life Ins. Co.*, No. 20-cv-4697 EJD,  and *RJ v. Cigna Behavioral Health, Inc.*, No. 20-cv-2255 EJD.

[2] The Background is a brief summary of the allegations in the Corrected Class Action Complaint (hereinafter "Complaint").  *See* Dkt. No. 6.

1    70.  Pacific Recovery Solutions d/b/a Westwind Recovery ("Westwind"), is a California Limited

2    Liability Company and a duly licensed behavioral health treatment provider with a primary place

3    of business in Los Angeles, CA.  *Id*. ¶ 68.  Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a

4    PCI Westlake Centers ("PCI Westlake"), is a California corporation and a duly licensed behavioral

5    health treatment provider with a primary place of business in Westlake Village, CA.  *Id*. ¶ 69.

6    Bridging the Gaps, Inc. ("BTG"), is a Virginia corporation and duly licensed behavioral health

7    treatment provider with a primary place of business in Winchester, VA.  *Id*. ¶ 70.  Summit Estate

8    Inc. d/b/a Summit Estate Outpatient, is a California corporation and duly licensed behavioral

9    health treatment provider with a primary place of business in Saratoga, CA 95070.  *Id*.  They seek

10   to represent a class of similarly situated providers against Cigna, a Minnesota corporation with its

11   principal place of business in Eden Prairie, MN, and Viant, Inc. ("Viant"), a third-party "repricer"

12   incorporated in Nevada with its principal place of business in Naperville, IL.  *Id*. ¶¶ 1, 18, 71-72.

13          Prior to providing treatment to patients insured by Cigna, Plaintiffs confirmed with Cigna,

14   during an initial Verification of Benefits ("VOB") call that the patient had active coverage and

15   benefits for OON IOP treatment services.  *Id*. ¶¶ 3, 22, 30.  For all the insurance claims at issue,

16   Cigna represented that the claims would be paid at a "percentage of the" UCR rates[3], which Cigna

17   would calculate by using either Cigna's "Maximum Reimbursable Charge" ("MRC") I or II

18   methodologies.  *Id*. ¶¶ 3, 9-12.  Alternatively, Cigna would arrive at the UCR rates "based on rates

19   charged by similar providers in a similar geographic area."  *Id*. ¶ 12.  During the VOB call, none

20   of the Plaintiffs were told by Cigna that their claims could be subject to third-party pricing by

21   Viant.  *Id*. ¶ 36.  Rather, Plaintiffs specifically asked and were told that a patient's claims were not

22   subject to third party repricing.  *Id*. ¶¶ 233-34.

23   _____

24   [3] Elsewhere, Plaintiffs allege that Cigna promised it would "pay rates based upon UCR" (*id*. ¶ 18);
     communicated and represented that Plaintiffs would be reimbursed at the UCR (*id*. ¶¶ 22, 99); told

25   Plaintiffs that benefits were paid at UCR rates (*id*. ¶¶ 30, 137); verified that claims will be
     paid/reimbursed at UCR rates (*id*. ¶¶ 135, 146); represented that it would pay providers at the

26   UCR rate (*id*. ¶157); routinely represented that benefits were available at a UCR rate (*id*. ¶ 171);
     and represented that benefits were determined based on the UCR rate (*id*. ¶ 174).

27

28   Case No.: 5:20-cv-02251-EJD
     ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
                                        2

1    In reliance upon Cigna's representations, Plaintiffs agreed to treat Cigna's insured and

2    timely submitted bills on industry standard forms and in keeping with industry practices. *Id.* ¶¶ 3,

3    12, 138-40, 142. These claim forms indicated that Plaintiffs are assignees of the member benefits.

4    *Id.* ¶ 139. Pursuant to contract, patients were responsible for paying Plaintiffs the difference

5    between the amount Plaintiffs billed and the amount Cigna reimbursed. *Id.* ¶¶ 157, 161, 243.

6    Contrary to Cigna's representations, Cigna did not pay at the UCR rates. *Id.* ¶ 18. Instead,

7    Cigna engaged Viant to negotiate reduced reimbursements with IOP treatment providers. *Id.*

8    Cigna sent claims to Viant via an Electronic Data Interchange ("EDI"), which included a "repriced

9    rate" that represented the maximum that Viant was authorized to negotiate with providers. *Id.* ¶

10    112. After Viant received the EDI, it sent providers a proposed payment for claims at reduced

11    reimbursement rates. *Id.* ¶ 114. These reduced reimbursement rates are not derived from a

12    calculation of the UCR rates, notwithstanding Viant's representations to the contrary. *Id.* ¶¶ 18,

13    46, 116. Nor are they set based on the insured's plan terms or language. *Id.* ¶¶ 43-44. Rather,

14    Plaintiffs allege on information and belief that the reduced reimbursement rates represent the

15    lowest payment amount that a Viant representative convinced a provider to accept and are

16    "arbitrary, capricious[,] and unreasonably low." *Id.* ¶¶ 97, 117. At no point have Cigna and Viant

17    disclosed their pricing methodologies. *Id.* ¶¶ 175, 246. Viant only tells Plaintiffs that pricing is

18    determined by a "proprietary database." *Id.* ¶ 254-55.

19    At the time Viant made its offers to Plaintiffs, it also sent a "patient advocacy letter"

20    ("PAD" letter) to the patient, claiming to represent the patient in a negotiation to reduce the billed

21    amount. *Id.* ¶ 118. Viant, however, does not have patient authorization to negotiate billed charges

22    on behalf of patients. *Id.* ¶ 235.

23    Cigna then paid the claims at issue at the reduced Viant rate, which often resulted in

24    patients being left to pay for more than ninety percent of their care. *Id.* ¶ 19. Cigna and Viant

25    allegedly "collude[d] to illegally withhold these [OON] benefits" to avoid paying tens, and

26    sometimes hundreds, of thousands of dollars per patient and to drive [OON] providers out of

27    business. *Id.* ¶¶ 20, 41. The amounts that should have been paid to health care providers were

28    Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

allegedly unjustly retained and used to pay a "kick-back" to Viant.  *Id*. ¶ 20.

Every claim at issue is for IOP behavioral health treatment for which Cigna failed to pay at the UCR rates.  *Id*. ¶¶ 21, 164.  Coverage for the underlying medical treatment is not in dispute; only the amount to be paid for the covered treatment is in dispute.  *Id*. ¶ 32.  Plaintiffs do not have contractual relationships with Cigna or Viant.  *Id*. ¶¶ 87, 94.  Plaintiffs did not agree to the reduced rates arrived at by Viant.  *Id*. ¶¶ 19, 152-53, 241.  When Plaintiffs or patients contacted Cigna to dispute or challenge Viant's reimbursement rates, Cigna refused to handle or process the claim. *Id*. ¶ 120.  Plaintiffs ultimately had no choice but to "balance bill" their patients for the amounts that they were owed as a result of Cigna's underpayment.  *Id*. ¶ 161.  If Plaintiffs did not "balance bill," Cigna would assert that Plaintiffs waived patient responsibility and therefore, Cigna had no further obligation to pay any additional amounts on claims.  *Id*. ¶ 247-48, 259.  For all the claims at issue, Plaintiffs' patients were unable to pay Cigna's shortfall.  *Id*. ¶ 181.

Westwind has treated more than 10 patients for whom claims for payment of IOP services were repriced by Viant.  *Id*. ¶ 194.  Prior to the admission of these patients, Westwind verified the patient had active coverage by contacting Cigna.  *Id*.  Cigna's representative stated that "the patient's benefits paid 70-90% of UCR for [OON] IOP services until the patients' out of pocket cost sharing responsibilities had been met."  *Id*.  "Once these amounts, which included the patient's deductible and con-insurance, were met, Cigna would pay claims at 100% of UCR."  *Id*. Further, Cigna told Westwind that Viant would not be involved in pricing the patient claims.  *Id*. ¶ 195.  Based upon theses representations, Westwind admitted the patients into IOP treatment.  *Id*. ¶ 194.  "In practically every instance, to assure payment at the maximum amount of 100% of UCR, all patients satisfied their out of pocket cost-sharing responsibilities soon upon admission to treatment, so all claims should have been paid at 100% of UCR."  *Id*.  "Westwind and Cigna understood that UCR rates were traditionally equivalent to 100% of Westwind's billed charges." *Id*. ¶ 196.  Viant's repricing resulted in partial payments that, in sum, averaged only 11% of billed

United States District Court
Northern District of California

1    charges.  *Id*. ¶ 197.[4]  Westwind has not been paid the remaining 89% of the billed amounts owed.

2    *Id*.  Westwind estimates that it has been underpaid by at least $177,317.45.  *Id*. ¶ 198.

3        PCI Westlake has treated more than 9 Cigna patients for whom claims for payment of IOP

4    services were repriced by Viant.  *Id*. ¶ 201.  PCI Westlake contacted Cigna prior to admission of

5    these patients and was given the same information as Westwind.  *Id*. ¶¶ 201-03.  Viant's pricing

6    resulted in partial payments that, in sum, averaged only 14% of billed charges.  *Id*. ¶ 204.  PCI

7    Westlake has not been paid the remaining 86% of the billed amounts owed.  *Id*.  PCI Westlake

8    estimates that it has been underpaid by at least $238,108.22.  *Id*. ¶ 205.

9        BTG has treated more than 21 patients for whom claims for payment of IOP services were

10    repriced by Viant.  *Id*. ¶ 208.  BTG contacted Cigna prior to admission of these patients and was

11    given the same information as the other Plaintiffs.  *Id*. ¶¶ 208-10.  Viant's pricing resulted in

12    partial payments that, in sum, averaged only 14% of billed charges.  *Id*. ¶ 211.  BTG has not been

13    paid the remaining 86% of the billed amounts owed.  *Id*.  BTG estimates that it has been underpaid

14    by at least $736,998.47.  *Id*. ¶ 212.

15        Summit Estate Inc. d/b/a Summit Estate Outpatient has treated more than 10 Cigna patients

16    for whom claims for payment of IOP services were repriced by Viant.  *Id*. ¶ 215.  Summit Estate

17    Inc. d/b/a Summit Estate Outpatient contacted Cigna prior to admission of these patients and was

18    given the same information as the other Plaintiffs.  *Id*. ¶¶ 215-17.  Viant's pricing resulted in

19    partial payments that, in sum, averaged only 15% of billed charges.  *Id*. ¶ 218.  Summit has not

20    been paid the remaining 85% of the billed amounts owed.  *Id*.  Summit Estate Inc. d/b/a Summit

21    Estate Outpatient estimates that it has been underpaid by at least $325,000.00.  *Id*. ¶ 219.[5]

22    _____

23    [4] Cigna interprets the Complaint as alleging that Cigna underpaid OON claims by not paying them
    at full billed charges.  Reply at 1.  Plaintiffs deny alleging that Cigna is required to pay 100% of

24    providers' charges and accuse Cigna of mischaracterizing the Complaint.  Opp'n to Cigna's Mot.
    at 1.  The allegations in the Complaint speak for themselves.  Plaintiffs repeatedly allege that

25    Plaintiffs and Cigna "understood that UCR rates were traditionally equivalent to 100% of
    [Plaintiffs'] billed charges."  *Id*. ¶¶ 196, 203, 210, 217.

26    [5] The Complaint alleges that Summit Estate Inc. d/b/a Summit Estate Outpatient has been

27    "overpaid" by at least $325,000.00.  *Id*.  ¶ 219.  The Court assumes that "overpaid" is a
    typographical error.

28

United States District Court
Northern District of California

Based on the foregoing, Plaintiffs assert the following claims: (1) unfair and unlawful business acts and practices in violation of California Business & Professions Code § 17200 ("UCL") (*id.* ¶¶ 261-78); (2) intentional misrepresentation and fraudulent inducement (*id.* ¶¶ 279-94); (3) negligent misrepresentation (*id.* ¶¶ 295-301); (4) civil conspiracy (*id.* ¶¶ 302-14): (5) breach of oral and/or implied contract (*id.* ¶¶ 315-35); (6) promissory estoppel (*id.* ¶¶ 336- 49); (7) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")  (*id.* ¶¶ 350-95); and (8) violations of section 1 of the Sherman Act (*id.* ¶ 396-415).  All of the claims are asserted against both Defendants, with the exception of the breach of contract claim, which is asserted only against Cigna.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at  570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

In evaluating the complaint, the court must generally accept as true all "well-pleaded factual allegations."  *Iqbal*, 556 U.S. at 664.  The court must also construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Trust v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion.  The court, however, "does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."  *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016) (citing *Bell*

1    *Atl. Corp.*, 550 U.S. at 555-56); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

2    (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory,

3    unwarranted deductions of fact, or unreasonable inferences.").

4         Claims sounding in fraud are subject to a heightened pleading standard.  Fed. R. Civ. P.

5    9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

6    constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1104 (9th Cir.

7    2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule

8    9(b) pleading standard, even if fraud is not an element of the claim).  The allegations must be

9    "specific enough to give defendants notice of the particular misconduct which is alleged to

10   constitute the fraud charged so that they can defend against the charge and not just deny that they

11   have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

12        Dismissal "is proper only where there is no cognizable legal theory or an absence of

13   sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732

14   (9th Cir. 2001). If claims are dismissed, a court should grant leave to amend unless "the pleading

15   could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N.*

16   *Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III.   DISCUSSION

18        Cigna moves to dismiss the Complaint, asserting that (1) the state law claims are

19   preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) the state law

20   claims are subject to dismissal under Rule 12(b)(6) because Plaintiffs are not entitled to be paid

21   100% of billed charges; (3) Plaintiffs lack standing to assert a RICO claim, and moreover the

22   claim has not been pled with particularity as required by Federal Rule of Civil Procedure 9(b),

23   including the elements of an association-in-fact and pattern of racketeering; and (4) the Sherman

24   Act claim is subject to dismissal because Plaintiffs lack standing and have not pled sufficient facts

25   to plausibly allege a *per se* unlawful price-fixing conspiracy.  Viant's arguments are either

26   identical to or substantially overlap Cigna's arguments.

**A.      State-law Claims**

Plaintiffs' state law claims are based on a common core allegation: that Cigna misrepresented during the VOB calls that it would reimburse Plaintiffs for OON IOP services at UCR rates.

**1.      Complete Preemption Under Section 502**

Defendants contend that all of the state law claims should be dismissed because they are preempted by section 502(a) of ERISA, 29 U.S.C. § 1132(a).  The argument is unavailing because despite its preemptive force[6], section 502 is "a jurisdictional rather than a preemption doctrine." *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *13 (N.D. Cal. Oct. 10, 2017) (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009)).[7] The Supreme Court created the doctrine of complete preemption under § 502(a) of ERISA as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a).  *Marin Gen. Hosp.*, 581 F.3d at 945.  "If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)); *see also Yaralian v. Fastovsky,* 2016 WL 552675, at *3 (C.D. Cal. Feb. 10, 2016) ("Even where a complaint alleges only state law claims, if these claims are entirely encompassed by ERISA § 502(a), the complaint is converted into a federal claim for purposes of the well-pleaded complaint rule.").  Thus, complete preemption under §1132(a) provides a basis for federal question jurisdiction, not a basis for dismissing Plaintiffs' claims under Rule 12(b)(6).  *Summit Estate, Inc.*, 2017 WL 4517111, at

---

[6] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

[7] *See also Heldt v. Guardian Life Ins. Co. of Am.*, 2017 WL 980181, at *4 (S.D. Cal. Mar. 13, 2017) ("[C]omplete preemption under ERISA § 502 is more of a jurisdictional doctrine, as opposed to simply a preemption doctrine."); *Roohibour v. ILWU-PMA Welfare Plan et al.*, 2020 WL 472921, at *7 (C.D. Cal. Jan. 28, 2020) (granting motion to remand because state law claims were not preempted under section 502); *Orthopedic Specialists of S. Cal. v. ILWU-PMA Welfare Plan*, 2013 WL 4441948, at *3 (C.D. Cal. Feb. 28, 2013) (same).

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

8

United States District Court
Northern District of California

*13; *see also Pac. Recovery Solutions v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1028 (N.D. Cal. Aug. 25, 2020).

### 2.   Conflict Preemption Under Section 514

Defendants next contend that Plaintiffs' state law claims should be dismissed because they are conflict preempted under section 514(a) of ERISA, 29 U.S.C. § 1144(a).  This section provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[8] "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or reference to such a plan.'"  *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)).  Thus, there are two categories of state laws that section 1144(a) preempts.  First, ERISA preempts a state law if it has a "reference to" ERISA plans.  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943 (2016).  "In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient 'reference' exists to support preemption."  *Providence*, 385 F.3d at 1172.  Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans.  *Id*.  "In determining whether a claim has a 'connection with' an employee benefit plan, courts in this circuit use a relationship test.  Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant."  *Id*. (citing *Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 820–21 (9th Cir. 2001) and *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052-53 (9th Cir. 1999)).  The two categories of conflict preemption operate separately.  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019).  Further, "ERISA preemption is

---

[8] Complete preemption and conflict preemption are distinct and should not be conflated.  *Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*, 2012 WL 4058373, at *2 n.2 (N.D. Cal. Sept. 14, 2012).

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
9

United States District Court
Northern District of California

1    not limited to state statutes and rules; common law causes of action that 'relate to' ERISA plans

2    are also preempted." *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, 2018

3    WL 2357698, at *10 (N.D. Cal. May 24, 2018).

4        Here, the Complaint suggests that the state law claims are "related" to ERISA plans.

5    Although Plaintiffs do not explicitly allege that their patients' insurance plans are ERISA plans,

6    the Complaint refers to ERISA.  Compl. ¶¶ 119, 358.[9]  Plaintiffs allege that "[f]or every claim at

7    issue, the patients possessed active policies of insurance that Cigna sold, underwrote, and/or

8    administered"; that prior to treatment, Plaintiffs confirmed with Cigna that each of the Plaintiffs'

9    patients had active coverage and benefits for OON IOP treatment; and that Cigna represented that

10   the claims at issue would be paid at a percentage of the UCR rate.  *Id.* ¶¶ 2-3.  Plaintiffs allege that

11   the parties' understanding of the UCR rate was based on Cigna's "published definition."  *Id.* ¶

12   330; *see also id.* ¶¶ 10 n.2 (describing MRC I and II reimbursement calculations published on

13   Cigna's website), 11 n.3 (same).[10]  Plaintiffs allege that after providing patients' services, they

14   submitted claim forms to Cigna.  Plaintiffs indicated in the claim forms that they are assignees of

15   the patient's benefits.  All of these allegations suggest that Plaintiffs' state law claims depend on

16   ERISA plans and their terms.

17       Plaintiffs argue that they "do not ask this Court to evaluate 'UCR' as a plan term" (Opp'n

18   to Cigna's Mot. at 6); however, the allegations in the Complaint suggest otherwise, as discussed

19

20

21   [9] Plaintiffs argue that Cigna "has made no showing that every patient with an underpaid claim had
     an ERISA plan."  Opp'n to Viant's Mot. at 3.  Relatedly, Plaintiffs argue that a "conflict
22   preemption argument is entirely inappropriate at this stage of litigation."  *Id.* at 6.  However, the
     Complaint refers to ERISA. When the affirmative defense of preemption is "apparent on the face
23   of the complaint," the complaint may be dismissed for failure to state a claim.  *Baker v. Chin &
     Hensolt, Inc.*, 2010 WL 147954, at *8 (N.D. Cal. Jan. 12, 2010).

24   [10] Plaintiffs' Opposition explains how, in their view, the MRC-1 pricing methodology is tied to the
     FAIR Health database and that their bills submitted to Cigna are less than the FAIR Health
25   database benchmark amounts.  Opp'n to Cigna's Mot. at 1-3.  This explanation is not in the
     Complaint and will not be considered.  *See Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009
26   (N.D. Cal. 2015) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look
     beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a
27   defendant's motion to dismiss.") (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir.
     2003) (emphasis in original)).

28   Case No.: 5:20-cv-02251-EJD
     ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
                                         10

*United States District Court*
*Northern District of California*

above.  Moreover, Plaintiffs acknowledge in their Opposition brief that Cigna's plans dictate

Cigna's payment obligations.  *See* Opp'n to Cigna's Mot. at 6 ("When the Court ultimately orders

all [] claims reprocessed for ERISA and non-ERISA plans . . . then plan terms will apply.") and 8

("Cigna states that the plan terms control its obligation to pay Plaintiffs . . . Plaintiffs do not

dispute this.").  Plaintiffs' state law claims as currently pled are preempted.  *See Wise v. Verizon

Commc'ns, Inc.,* 600 F.3d 1180, 1191 (9th Cir. 2010) (holding that state law claims predicated on

"theories of fraud, misrepresentation, and negligence" are preempted because they "depend on the

existence of an ERISA-covered plan to demonstrate that [the plaintiff] suffered damages"); *Calif.

Spine and Neurosurgery Inst. v. Oxford Health Ins. Inc.*, 2019 WL 6171040, at *4 (N.D. Cal. Nov.

20, 2019) (dismissing claims for promissory estoppel and quantum meruit because they were

premised on an ERISA plan).

Notwithstanding the references to ERISA, Cigna's plans and plan terms, Plaintiffs argue

that they are entitled to pursue their state law claims, citing *Catholic Healthcare West-Bay Area v.

Seafarers Health & Benefits Plan*, 321 Fed. Appx. 563 (9th Cir. 2008).  In *Catholic Healthcare*,

the plaintiff's complaint did not mention an assignment.  *Id*. at 564.  Rather, the complaint

asserted claims based on a contract directly between the third-party healthcare provider and

ERISA plan and representations between the two parties.  *Id*.  In fact, the plaintiff health care

provider represented to the Ninth Circuit during oral argument that it was alleging "implied

contract formation and misrepresentations that are *completely independent* of the terms and

meaning of an ERISA plan" and "any claims it might have had under [defendant's] plan either had

been resolved or waived and should not be considered in determining the validity of its remaining

state law claims."  *Id*. at 565.  Accordingly, the Ninth Circuit concluded that the state law claims

were not preempted.  *Id*.

The instant action is distinguishable from *Catholic Healthcare*.  As discussed above,

Plaintiffs' Complaint refers to ERISA, as well as to patient plans and plan terms.  Plaintiffs

indicate that they are assignees of their patients' benefits.  These various allegations suggest that

Plaintiffs' state law claims are not "completely independent" of the terms and meaning of an

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

ERISA plan.  Moreover, unlike the plaintiff in *Catholic Healthcare*, Plaintiffs in the instant action have not represented that any claims Plaintiffs might have had under Cigna's plan(s) have been resolved or waived. If there were such an allegation in the Complaint, Plaintiffs' state law claims would clearly be independent of Cigna's plans and beyond the preemptive force of section 514(a). *See Port Medical Wellness, Inc. v. Connecticut Gen. Life Insur. Co*., 233 Cal. Rptr. 3d 830, 848 (Ct. App. 2018) (observing that section 514(a) preemption does not reach a claim against an ERISA plan if it is "based on an obligation between the plan and the provider separate from the welfare benefit plan itself and does not inquire into entitlement to benefits under the plan."); *Doctors Med. Ctr. of Modesto, Inc. v. The Guardian Life Ins. Co. of Am.*, 2009 WL 179681 (E.D. Cal. Jan. 26, 2009) (finding no preemption where provider alleged that insurance company had an "independent contractual obligation" to pay for health care services provided to the patient); *IV Solutions Inc. v. United Healthcare Services, Inc.*, 2012 WL 12887401, at *8-9 (C.D. Cal. Nov. 19, 2012) (finding no preemption where plaintiff claimed "amount[s] precisely because [they] are not owed under the patient[s'] ERISA plan[s]" but rather under the parties' independent agreement); *Schwartz v. Assoc. Emp'r Grp. Benefit Plan and Tr.*, 201 WL 453436, at *5 (D. Mont. Jan. 17, 2018) (finding no preemption where complaint did not discuss an ERISA plan and the plaintiff's claim was "based *solely* on her reliance on [defendant's] alleged representations that she would be reimbursed in full") (emphasis added).

The state law claims are accordingly dismissed with leave to amend.  *Pac. Recovery Solutions v. United Behavioral Health*, 2020 WL 7439310, at *11 (N.D. Cal. Dec. 18, 2020) (granting leave to amend complaint to allege (1) facts identifying which, if any, of the insurance plans fall outside the scope of ERISA and why, and (2) facts that raise the inference that defendants are liable, based on defendant's alleged under-reimbursement of claims, for violations of the UCL, intentional misrepresentation and fraudulent inducement, negligent misrepresentation, civil conspiracy, breach of contract, or promissory estoppel).[11]

---

[11] Because the state law claims as currently pled are preempted, the Court finds it unnecessary at this time to address Defendants' alternative grounds for dismissal of these claims.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Civil RICO**

In the seventh claim, Plaintiffs allege Defendants violated 18 U.S.C. § 1962(c). Plaintiffs allege that Defendants have engaged in a pattern of racketeering activity by committing mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and "Federal Health offenses" as defined by 18 U.S.C. § 24 "that include violations of 18 U.S.C. §§ 1027, 1343, and 1345. Compl. ¶ 354.

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (qouting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted)); *see also Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). Defendants argue that the civil RICO claim should be dismissed because Plaintiffs lack standing and have not sufficiently alleged any of the elements of a RICO claim. The Court addresses each argument below.

**1.      Standing and Proximate Cause**

Viant argues that Plaintiffs do not have standing to assert a RICO violation. Relatedly, Cigna argues that the RICO claim must be dismissed for failure to plead proximate cause.

To establish RICO standing, a plaintiff must allege an injury to business or property proximately caused by the alleged RICO offense. *Gilbert v. Bank of Am.,* 2014 WL 12644028, at *4 (N.D. Cal. Sept. 23, 2014); *Pac. Recovery Solutions*, 481 F. Supp. 3d at 1025. To determine whether a plaintiff's injury has a sufficient causal nexus to the RICO offense, courts apply the same factors that are applied to determine whether a plaintiff has antitrust standing. *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999). "To determine whether an injury is 'too remote' to allow recovery under RICO and the antitrust laws, the Court applies the following three-factor 'remoteness' test: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to

Case No.: 5:20-cv-02251-EJD

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1   adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Id.*

2       Applying the first remoteness factor suggests Plaintiffs lack RICO standing because there

3   are more direct victims of the alleged wrongful conduct.  By Plaintiffs' own allegations, Plaintiffs'

4   patients are the direct victims.  *See e.g.*, Compl. ¶ 60 ("Cigna's unreasonably low payments leave

5   patients, who are recovering drug addicts and mentally ill persons, with liability for the cost of

6   care the[sic] reasonably believe is covered."), ¶ 370 ("The excessive balance bills that Plaintiffs

7   are forced to issue is a clear harm to the patients as they now owe large sums that were properly

8   Cigna' responsibility to pay."), ¶ 413 ("Cigna's members incurred liability for illegally inflated

9   out-of-pocket payments. . . .").  In contrast, Plaintiffs' alleged injury is indirect.  Plaintiffs allege

10  they "make every effort to recover unpaid amounts, first from Cigna, then from patients.  *Id.* ¶ 60.

11  If Plaintiffs are unable to recover unpaid amounts from either Cigna or patients, then Plaintiffs are

12  "left bearing the cost of the care they provide." *Id.* ¶ 60.  As such, Plaintiffs' injury appears to be

13  derivative of their patients' injuries.

14      The second and third remoteness factors also suggest Plaintiffs lack standing.  If, as

15  alleged, Defendants' conduct injured both patients and Plaintiffs, Plaintiffs' patients might pursue

16  payments directly from Defendants.  Indeed, at least one patient has sued Cigna based on the same

17  facts giving rise to this lawsuit.  *See SJ v. Cigna*, Case No. 20-cv-2255 EJD.  If both patients and

18  Plaintiffs were to pursue separate RICO claims in separate lawsuits based on the same underlying

19  conduct, it could be difficult for a court to ascertain and apportion damages among Plaintiffs and

20  their patients to prevent the risk of duplicative recoveries.

21      In the absence of additional allegations explaining why Plaintiffs' patients are unable to

22  vindicate the law on their own behalf, Plaintiffs' RICO claim is subject to dismissal for lack of

23  standing.  *Pac. Recovery Solutions*, 481 F. Supp. 3d at 1026.

24                    **2.    Association-In-Fact Enterprise**

25      To plead an association-in-fact enterprise, a plaintiff must allege three elements: (1) a

26  common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or

27  informal; and (3) evidence that the various associates function as a continuing unit.  *Eclectic*

28  Case No.: 5:20-cv-02251-EJD
    ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
    14

1    *Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v.*

2    *United States*, 556 U.S. 938, 946 (2009)).  Defendants contend that the Complaint fails to allege

3    an organization sharing a common purpose and instead describes only a "run-of-the-mill business

4    relationship where Cigna . . . contracted with Viant to negotiate discounts on certain claims (which

5    Viant does in its normal course of business as a 'repricer' (Compl. ¶ 30)."  Cigna's Mot. at 18.

6    The Court agrees.

7            Courts have uniformly held that a routine commercial dealing is insufficient to establish

8    RICO liability.  *See e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019)

9    ("characterizing routine commercial dealing as a RICO enterprise is not enough").  Plaintiffs rely

10   on *Odom* as well as other cases[12], in which the courts found seemingly routine contractual

11   relationships could form the basis of an association-in-fact enterprise.  Here, however, Plaintiffs

12   fail to plead with particularity sufficient facts to plausibly show that Cigna and Viant knowingly

13   formed an enterprise to fraudulently underpay claims at below the UCR rates.  In an attempt to

14   transform Defendants' commercial dealing into a RICO enterprise, Plaintiffs allege that

15   Defendants had "a common purpose to deceive" (Opp'n to Cigna's Mot. at 15-16) like the

16   plaintiffs in *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,

17   295 F. Supp. 3d 927, 981 (N.D. Cal. 2018).  In *Chrysler-Dodge-Jeep*, truck buyers brought a

18   products liability suit against manufacturers of trucks and their diesel engines, as well as

19   companies who supplied electronic diesel control units used to control emissions.  *Id*. at 941.  The

20   plaintiffs alleged that defendants engaged in a scheme involving the development and use of

21   hidden auxiliary emission control devices ("AECDs").  *Id*. at 977.  The complaint alleged that

22   defendants shared "a common purpose to 'deceive regulators into believing that the Class Vehicles

23   were eligible for coverage by a [Certificate of Conformity] and/or [a California Air Resources

24   Board-issued Executive Order] and compliant with emission standards'" in order to sell Class

25   _____

26   [12] *See In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*, 2018 WL 4945541, at *4 (C.D. Cal. June 18, 2018); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 942 (N.D. Cal. Apr. 25, 2013);

27   *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008); *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *12 (C.D. Cal. Mar. 12, 2013).

28   Case No.: 5:20-cv-02251-EJD

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

15

United States District Court
Northern District of California

1   Vehicles.  *Id.* at 980.  The *Chrysler-Dodge-Jeep* court concluded that the "common purpose"

2   element was supported by specific factual allegations, "start[ing] with the hidden AECDs, which

3   were installed in the Class Vehicles and plausibly had only a deceitful purpose—to cheat

4   emissions."  *Id.*

5          Here, Plaintiffs' allegations of "common purpose" are not supported by specific factual

6   allegations comparable to those found in *Chrysler-Dodge-Jeep*.  As stated previously, the

7   Complaint describes a contract between Cigna and Viant, but the alleged terms of that contract do

8   not suggest a deceitful purpose.  That the alleged contract included financial incentives for both

9   parties is also not suggestive of a common purpose to deceive. And Plaintiffs' characterization of

10   Defendants contract as an "alliance" (Compl. at 7), "collusion" (*id.* ¶ 31), "cover-up" (*id.*), "con"

11   (*id.* ¶ 37), and "grift" (*id.* ¶ 195) does not transform Defendants' contract into a RICO enterprise

12   without pleading facts to support these characterizations. Plaintiffs allege that Defendants used a

13   secret, proprietary database and/or pricing method, but do not allege sufficient facts to support a

14   plausible inference that this database was used for a deceitful purpose. Unlike the hidden AECDs

15   in *Chrysler-Dodge-Jeep* that "plausibly had only a deceitful purpose," the alleged "secret"

16   database in this case plausibly has a legitimate purpose.  That Cigna allegedly failed to disclose

17   during VOB calls that it would engage Viant to negotiate reduced reimbursement might be

18   suggestive of Cigna's deceitful purpose, but not necessarily a common deceitful purpose.

19          Plaintiffs' RICO claim is, therefore, subject to dismissal for failure to allege an

20   association-in-fact.  *See LD v. United Behavioral Health*, 2020 WL 5074195, at *8 (N.D. Cal.

21   Aug. 26, 2020) (dismissing similar RICO claim against United Behavioral Health and Viant with

22   leave to amend); *see also Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015),

23   *aff'd*, 748 F. Appx 99, 101 (9th Cir. 2018) (dismissing RICO claim because, among other things,

24   the plaintiffs offered no factual allegations to render plausible their claim that the enterprise

25   members actually knew of the alleged fraudulent common purpose, or that they "formed" the

26   enterprise to participate in that purpose).

27

28   Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

### 3.   Racketeering Activity

The RICO claim is also subject to dismissal for the independent reason that the Complaint fails to allege predicate RICO acts.  "To state a claim under § 1962(c)," a plaintiff must also allege "a pattern . . . of racketeering activity." *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018) (citation omitted).  "Racketeering activity" is defined as "the commission of a predicate act that is one of an enumerated list of federal crimes." *Id*. at 1076.  "[W]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant."  *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord*, *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004).

### a.   "Federal Health Offenses"

The alleged commission of "Federal Health offenses per 18 U.S.C. § 24" (Compl. ¶ 354), as defined by 18 U.S.C. § 24, are not among the statutory list of predicate acts that can constitute racketeering under 18 U.S.C. § 1961(1), and Plaintiffs do not contend otherwise.  Instead, Plaintiffs' theory is that "laundering of monetary instruments" under section 1956 is listed as a predicate act in § 1961(1); that 18 U.S.C. §1956(c)(7)(F) criminalizes laundering the proceeds of a federal health care offense; and therefore, "Federal Health offenses" can constitute predicate acts of racketeering.  This money laundering theory does not appear anywhere in the Complaint, and therefore will not be considered.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (instructing that a deficient pleading cannot be cured by new allegations raised in a plaintiff's response to a motion to dismiss).

### b.   Mail Fraud and Wire Fraud

The remaining alleged predicate acts of mail fraud and wire fraud are among the statutory predicate acts listed in section 1961(1); however, the requisite elements of mail fraud and wire fraud are not pled with particularity as required by Rule 9(b).

United States District Court
Northern District of California

Mail fraud and wire fraud have four essential elements: "(1) a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific intent to deceive or defraud." *United States v. Woody's Trucking, LLC*, 2018 WL 443454, at *2 (D. Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997-99 (9th Cir. 2003)).  RICO fraud claims must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b).  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991).  To satisfy this standard, a plaintiff must allege "the who, what, when, where, and how" of the fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (requiring pleader of RICO fraud claim to allege the time, place and specific content of false representations as well as the identities of the parties to the misrepresentation); *Lancaster*, 940 F.2d at 405 (requiring pleader asserting RICO claim with predicate act of mail fraud to allege the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme).

Here, Plaintiffs' allegations of mail and wire fraud do not come close to complying with Rule 9(b).  The Complaint lacks any specifics as to the who, what, when, where, and how of any particular fraudulent communication.  The RICO claim is subject to dismissal based on these deficiencies alone.  *See, e.g.*, *Edwards*, 356 F.3d at 1065-66 (affirming dismissal of RICO fraud claim for failure to allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

Further, the Complaint fails to plead with particularity that any alleged misrepresentation was sent over the United States wires or mail (or were communicated by a different means).  Plaintiffs allege in only vague and conclusory terms that "Cigna and Viant have both made false representations regarding UCR and payment of claims through the United States mail and wire services."  Compl. ¶ 55; *see also id*. ¶¶ 365, 377, 382, 387-88.  Cigna allegedly made false representations in EOBs, which, in theory, could have been transmitted over interstate wires or mail.  *Id*. ¶ 362.  But Plaintiffs do not identify any particular EOB, much less identify any

United States District Court
Northern District of California

1  fraudulent statement within an EOB. These deficiencies are also fatal to Plaintiffs' RICO claim.

2  *Saniefar v. Moore*, 2017 WL 5972747, at *10 (E.D. Cal. Dec. 1, 2017) (claim dismissed where no

3  allegation of interstate communication).

4          Plaintiffs counter that Rule 9(b) only requires that the elements of mail fraud or wire fraud

5  be pled with particularity, and not the circumstances of the mailed or wired communication, citing

6  *Sebastian Int'l., Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635 (C. D. Cal. 2001).  In *Sebastian,* the

7  plaintiff alleged that the defendants received and sold diverted authentic products, as well as

8  distributed and sold counterfeit products.  The parties disputed which facts or elements were

9  required to be pled with particularity under Rule 9(b).  *Id*.  The plaintiff argued that Rule 9(b)

10  "merely require[d] that the elements of mail fraud or wire fraud be pled with specificity", whereas

11  the defendant argued that Rule 9(b) "required a plaintiff to plead the specific falsity in the mailed

12  or wired communications."  *Id*.  The *Sebastian* court concluded that both parties were right,

13  depending on the circumstances of the fraud alleged, explaining:

> [t]he mail and wire fraud statutes encompass two types of fraud: those
> in which misrepresentations [are] made, and those in which no
> misrepresentations are made.  [citations]  In a case of mail or wire
> fraud that does not involve a misrepresentation of fact, the
> 'circumstances' [referencing the language of 9(b) ] . . . would consist
> of four elements: (1) a scheme to defraud; (2) intent to defraud; (3)
> reasonable foreseeability that the mails (or wires) would be used; and
> (4) use of the mails (or wires) in furtherance of the scheme.

19  *Id*. (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Services Co.*, 48 F.3d 1066, 1070 n.6 (9th

20  Cir. 1995)).  The *Sebastian* court also quoted from a Seventh Circuit decision to further explain

21  the two types of fraud:

> We recognize, of course, that a given mailing or wire communication
> need not be fraudulent on its face in order to constitute an act of mail
> or wire fraud; even innocuous communications can qualify for this
> purpose so long as they are incident to an essential part of the
> [fraudulent] scheme.  [citations]  But in this case the plaintiffs rely on
> the mailings and wire communications themselves as the acts of
> fraud.

26  *Sebastian*, 128 F. Supp. 2d at 635 (quoting *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1330 (7th

27  Cir. 1994)).  The *Sebastian* court ultimately held that the plaintiff was not required to plead with

28  Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   particularity the circumstances of the mailed or wired communication because the plaintiff was not

2   relying on mailings and wirings as the acts of fraud; the mailings and wirings were only "incident

3   to an essential part of the scheme" to receive and sell diverted authentic products, and to distribute

4   and sell counterfeit products. *Id*. at 636.

5       Plaintiffs in the instant case analogize to *Sebastian* and argue that they similarly are not

6   relying on any mailings or wirings as the acts of fraud for the RICO claim. Plaintiffs instead argue

7   that the RICO scheme in this case "is the creation and use of Outpatient Repricing (OPR) tied to a

8   target price that is not made known to plan sponsors, insured, beneficiaries, and healthcare

9   providers and then paying claims at or below the target price while *representing* to the world that

10  the MRC methodology" was used. Opp'n to Cigna's Mot. at 18 (emphasis added). Even

11  accepting this characterization of the RICO claim, however, Plaintiff's RICO scheme necessarily

12  hinges on an allegedly fraudulent "*represent[ation]* to the world that the MRC methodology" was

13  used. Because this case involves an alleged misrepresentation, Plaintiffs must plead the

14  circumstances constituting the fraud with particularity. Fed. R. Civ. P. 9(b). And if this alleged

15  misrepresentation (or any others Plaintiffs intend to rely on for their RICO claim) was made

16  through the mail or over the wire, then Plaintiffs must plead with particularity the circumstances

17  of the mailed or wired communication. *Sebastian*, 128 F. Supp. 2d at 635-36.

18      More fundamentally, the Complaint also lacks sufficient factual allegations to support a

19  reasonable inference that Defendants acted with specific intent to deceive or defraud. The Ninth

20  Circuit recently clarified that to be guilty of mail or wire fraud, "a defendant must act with the

21  intent not only to make false statements or utilize other forms of deception, but also to deprive a

22  victim of money or property by means of those deceptions. In other words, a defendant must

23  intend to deceive and cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020)

24  (emphasis in original). The Complaint in this case lacks sufficient facts to support a reasonable

25  inference that Cigna, and especially Viant, acted with the requisite intent to deceive and cheat.

26      Plaintiffs request leave to conduct limited discovery in the event the Court dismisses the RICO

27  claim, citing *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993). The request is denied. Although in

28  Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    some cases, discovery may be appropriate where evidence of fraud is exclusively in the defendant's

2    possession, that is not the situation Plaintiffs face.  In *Neubronner*, the Ninth Circuit stated, "surely we

3    cannot expect a private plaintiff in an insider trading case to plead with the specificity Rule 9(b)

4    requires without allowing some limited opportunity for discovery."  *Id*. at 671.  This is not an insider

5    trading case.  Moreover, the who, what, when, and how of the misrepresentations Defendants allegedly

6    made are not exclusively within Defendants' knowledge.

7            The RICO claim is dismissed.

8            **C.        Sherman Act Claim**

9            The Complaint includes a claim for violation of Section 1 of the Sherman Act, 15 U.S.C. §

10   1.  To establish a claim under Section 1 of the Sherman Act, Plaintiffs must have standing and

11   show: "1) that there was a contract, combination, or conspiracy; 2) that the agreement

12   unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis;

13   and 3) that the restraint affected interstate commerce."  *Pac. Recovery Solutions v. United*

14   *Behavioral Health*, 2020 WL 7439310, at *4 (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,

15   236 F.3d 1148, 1155 (9th Cir. 2001)).

16           Defendants argue that the Sherman Act claim should be dismissed because Plaintiffs lack

17   antitrust standing and fail to plead sufficient facts to plausibly allege an antitrust violation.  These

18   arguments are addressed below.

19                   **1.        Antitrust Standing**

20           Antitrust standing, which is distinct from Article III standing, "is a jurisdictional

21   prerequisite to a Section 1 claim under both the rule of reason and the *per se* rule."  *In re*

22   *Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 900 (C.D. Cal. 2012).

23   The Supreme Court has identified the following factors for determining whether a plaintiff who

24   has borne an injury has antitrust standing: "(1) the nature of the plaintiff's alleged injury; that is,

25   whether it was the type the antitrust laws were intended to forestall; (2) the directness of the

26   injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the

27   complexity in apportioning damages.  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996)

28   Case No.: 5:20-cv-02251-EJD
     ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1    (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

2    519, 535 (1983)).

3            Here, Plaintiffs fail to plead sufficient facts to establish several of the factors stated above.

4    The second factor—directness of the injury—is not satisfied because, as discussed above

5    regarding RICO standing, Plaintiffs' injury in this case is derivative of their patients' injury.  In *In*

6    *re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d at 902, insurance

7    subscribers and healthcare providers alleged that Wellpoint and others artificially reduced and set

8    UCR schedules using the Ingenix Database.  *Id.* at 882.  The *Wellpoint* court dismissed the

9    healthcare providers' antitrust claim for lack of standing because "there exist[ed] more direct

10   victims in the form of the Subscribers [patients]" and because the plaintiffs' injury "is entirely

11   derivative of the injury inflicted on the Subscribers."  *Id.*  The same holds true in this case:

12   Plaintiffs' patients are the more direct victims.  Plaintiffs' injuries arise, if at all, only to the extent

13   that their patients do not pay the amounts that Cigna does not reimburse.

14           The third factor—speculative measure of the harm—is also not met.  In *Wellpoint*, the

15   court observed that ascertaining damages would entail considerable speculation regarding how the

16   subscribers would have behaved had WellPoint disclosed its OON "reimbursement metrics,"

17   including whether the subscribers would have selected a different OON provider or would have

18   agreed to pay the balance owing for the servicers rendered.  *Id.* at 902-03.  Similarly, ascertaining

19   Plaintiffs' damages in this case would entail speculation as to how Plaintiffs' patients would have

20   behaved had Cigna told them their insurance claims would be subject to repricing.

21           The fourth factor—risk of duplicative recovery—also weighs against finding antitrust

22   standing.  As discussed previously, if both Plaintiffs and their patients (*i.e.*, the Cigna subscribers)

23   were to sue Defendants for the same services, there is risk of duplicative recoveries.  Here, the risk

24   of duplicative recovery is more than theoretical because at least one Cigna subscriber has brought

25   a separate suit.  *RJ v. Cigna Behavioral Health, Inc.*, No. 20-cv-2255 EJD.

26           Accordingly, Plaintiffs fail to allege sufficient facts to establish antitrust standing.

27

28   Case No.: 5:20-cv-02251-EJD
     ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

## 2.      Elements of a Section 1 Claim

Even if Plaintiffs had alleged sufficient facts to support standing, their antitrust claim is nevertheless subject to dismissal because Plaintiffs have not alleged sufficient facts to plausibly allege an antitrust violation.  First, the allegation of "horizontal price fixing" is not plausible.[13] Horizontal agreements are "agreements made among competitors."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).  Cigna and Viant are not competitors. Rather, Plaintiffs allege that Viant negotiates rates with providers on behalf of Cigna.

Plaintiffs counter that they are alleging a conspiracy among buyers, not sellers, citing *Kamakahi v. Am. Soc. for Reprod. Med.*, 2013 WL 176706, at *7 (N.D. Cal. Mar. 29, 2013). Plaintiffs' theory is that Defendants formed an oligopsony as health care buyers.  Although Plaintiffs are correct that courts recognize both buyer-side and seller-side antitrust conspiracies (*see id.*), Plaintiffs' allegations do not plausibly support a buyer-side conspiracy because, as stated previously, Defendants are not competitors.  Therefore, Plaintiffs' reliance on *Kamakahi* is misplaced.

Second, Plaintiffs have not plausibly alleged a product or service capable of being price-fixed.  In *Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 832 (D. N.J. 2011) *aff'd in relevant part*, 647 F. Appx. 76 (3d Cir. 2016), the plaintiffs sought to bring a price-fixing claim based upon an alleged agreement among Cigna and other companies to cap reimbursements for OON providers.  The *Franco* court concluded that the plaintiffs' antitrust claim was implausible because there was no indication in the plaintiffs' complaint that coverage for OON services "is a distinct product available for purchase and sale apart from the rest of a subscriber's insurance policy, at its own price."  *Id.*  Moreover, the *Franco* court observed that the alleged price-fixing necessarily presupposed that OON coverage offered by one insurance company could be interchangeable with OON coverage offered by another insurance company, and that such a presupposition was "simply implausible, as preferred provider networks are not uniform across

---

[13] Plaintiffs allege only a *per se* violation of Section 1, therefore the Court need not consider a rule-of-reason theory of antitrust liability.

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
23

competing carriers, and thus a provider who is [OON] for one carrier may not be for another carrier." *Id*. at 932-33.

As in *Franco*, Plaintiffs allege that Cigna and Viant conspired to fix the price of coverage for OON providers' IOP services, and Plaintiffs do not allege that insurance benefits for OON providers' IOP services are available for purchase as a distinct product or service, at their own price, such that they can be subject to price-fixing. "The [b]enefits paid by [Cigna] to [its] insured pursuant to a health benefits plan do not express the price of any discrete good or service. They represent one aspect of the product sold." *Franco*, 818 F. Supp. 2d at 834. Plaintiffs' antitrust claim thus fails because as a matter of law, insurance benefits for OON providers' IOP services are not products that can be price-fixed. *Id*.; *see also In re Aetna UCR Litig.*, 2015 WL 3970168, at * 24 (D.N.J. June 30, 2015) (dismissing antitrust claim because, among other things, plaintiff did not allege that the premium charged for their patients' health insurance plan was fixed; rather plaintiff alleged a cost to the seller was fraudulently restrained, which resulted in a product that was worth less than anticipated).

Plaintiffs do not address *Franco* or *Aetna UCR* and instead argue that price-fixing "can apply" to "rates for medical services." Opp'n to Cigna's Mot. at 24. That is not the point. The problem with Plaintiffs' claim is that insurance benefits for OON servicers are not a discrete product available for purchase and sale separate and apart from the rest of a subscriber's insurance policy.

Further, the antitrust claim is subject to dismissal for the independent reason that the Complaint fails to allege a "relevant market" for the allegedly price-fixed product. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). For purposes of antitrust law, "the term 'relevant market' encompasses notions of geography as well as product use, quality, and description. The geographic market extends to the []'area of effective competition' . . . where buyers can turn for alternative sources of supply. The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Id*. The Complaint in this case does not refer to any geographic area.

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

24

1
2
3
4
5

Finally, the Complaint lacks sufficient facts to plausibly allege that Defendants have the requisite "market power" to support an antitrust claim.  *See In re WellPoint Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1029 (C.D. Cal. Aug. 11, 2011) ("a plaintiff must allege that the defendant has 'market power' within that market—otherwise the defendant's restraint on trade would not have a substantial anticompetitive effect.").

6

## IV.    CONCLUSION

7
8
9
10
11

For the reasons discussed above, Defendants' motions to dismiss are GRANTED with leave to amend, except as to the antitrust claim, which is dismissed with prejudice.  Because Defendants are not competitors, the pleading deficiencies in the antitrust claim cannot "possibly be cured by the allegation of other facts."  *Cook, Perkiss & Lieh*, 911 F.2d at 247. The amended complaint is due April 19, 2021.

12

**IT IS SO ORDERED.**

13

Dated:  March 29, 2021

14
15

EDWARD J. DAVILA
United States District Judge

16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Case No.: 5:20-cv-02251-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
25